EXHIBIT 1

# COVER LETTER

**TO:**    Registration Section
Division of Corporations

**SUBJECT:** KAPLAN & CO. SECURITIES, LLC
(Name of Resulting Florida Limited Company)

The enclosed Certificate of Conversion, Articles of Organization, and fees are submitted to convert an "Other Business Entity" into a "Florida Limited Liability Company" in accordance with s. 608.439, F.S.

Please return all correspondence concerning this matter to:

## MICHAEL I. KOTLER, ESQUIRE
(Contact Person)

## SCHWARTZ, GOLD, COHEN, ZAKARIN & KOTLER, P.A.
(Firm/Company)

## 54 SW BOCA RATON BLVD
(Address)

## BOCA RATON, FLORIDA  33432
(City, State and Zip Code)

For further information concerning this matter, please call:

## MICHAEL I. KOTLER, ESQUIRE at ( 561 ) 361-9600
(Name of Contact Person)         (Area Code and Daytime Telephone Number)

Enclosed is a check for the following amount:

☐ $150.00 Filing Fees
($25 for Conversion
& $125 for Articles
of Organization)

☑ $155.00 Filing Fees
and Certificate of
Status

☐ $180.00 Filing Fees
and Certified Copy

☐ $185.00 Filing Fees,
Certified Copy, and
Certificate of Status

**STREET ADDRESS:**
Registration Section
Division of Corporations
Clifton Building
2661 Executive Center Circle
Tallahassee, FL 32301

**MAILING ADDRESS:**
Registration Section
Division of Corporations
P. O. Box 6327
Tallahassee, FL 32314

FILED
06 NOV 27 AM 11:50
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

**Certificate of Conversion**
For
**"Other Business Entity"**
Into
**Florida Limited Liability Company**

This Certificate of Conversion **and attached Articles of Organization** are submitted to convert the following **"Other Business Entity"** into a **Florida Limited Liability Company** in accordance with s.608.439, Florida Statutes.

1. The name of the "Other Business Entity" immediately prior to the filing of this Certificate of Conversion is:

KAPLAN & CO. SECURITIES, INC ~ P94 -66134

(Enter Name of Other Business Entity)

2. The "Other Business Entity" is a CORPORATION
   (Enter entity type. Example: corporation, limited partnership, sole proprietorship, general partnership, common law or business trust, etc.)

first organized, formed or incorporated under the laws of FLORIDA
(Enter state, or if a non-U.S. entity, the name of the country)

on 9/08/1994
   (Enter date "Other Business Entity" was first organized, formed or incorporated)

3. If the jurisdiction of the "Other Business Entity" was changed, the state or country under the laws of which it is now organized, formed or incorporated:

4. The name of the Florida Limited Liability Company as set forth in the **attached Articles of Organization:**

KAPLAN & CO. SECURITIES, LLC

(Enter Name of Florida Limited Liability Company)

Page 1 of 2

5. If not effective on the date of filing, enter the effective date: **December 31, 2006**
**(The effective date:  1) cannot be prior to nor more than 90 days after the date this**
**document is filed by the Florida Department of State; <u>AND</u> 2) must be the same as the**
**effective date listed in the attached Articles of Organization, if an effective date is**
**listed therein.)**

Signed this ___10___ day of ___November___ 20_06___.

Signature of Authorized Person: _____

Printed Name: **JED KAPLAN** ___ Title: **MANAGING MEMBER**

**FILED
06 NOV 27  AM11:50
SECRETARY OF STATE
TALLAHASSEE. FLORIDA**

**Fees:**

| | |
|---|---|
| Certificate of Conversion: | $25.00 |
| Fees for Florida Articles of Organization: | $125.00 |
| Certified Copy: | $30.00 (Optional) |
| Certificate of Status: | $5.00 (Optional) |

**Page 2 of 2**

## ARTICLES OF ORGANIZATION

## OF

## *KAPLAN & CO. SECURITIES, LLC*

### ARTICLE I

### NAME

The name of this limited liability company is:

### *KAPLAN & CO. SECURITIES, LLC*

### ARTICLE II

The mailing address and street address of the principal office of the Limited Liability Company is:

150 East Palmetto Park Road, Suite 450, Boca Raton, Florida 33432

### ARTICLE III

### REGISTERED AGENT, REGISTERED OFFICE & REGISTERED AGENT'S SIGNATURE

The name and Florida street address of the registered agent are:

Jed Kaplan
150 East Palmetto Park Road, Suite 450
Boca Raton, Florida 33432

### ACKNOWLEDGMENT:

*Having been named to accept service of process for the above-stated limited liability company, at place designated in this certificate, I hereby accept to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 608, F.S.*

Jed Kaplan, Registered Agent

FILED
06 NOV 27 AM 11:50
SECRETARY OF STATE
TALLAHASSEE FLORIDA

## ARTICLE IV

## MEMBERS AND MANAGEMENT

Check if applicable:

**X** The Limited Liability Company is to be managed by one manager or more managers and is therefore, a manager - managed company.

____The Limited Liability Company is to be managed by members and is therefore, a member - managed company.

This limited liability company shall have the following members:

**NAME**

Jed Kaplan

**ADDRESS**

150 East Palmetto Rd, Suite 450

Boca Raton, Florida 33432

## ARTICLE V

## PURPOSE

This limited liability company is organized for the following purposes:

1.    To engage in any activity or business permitted under the laws of the United States and the State of Florida.

## ARTICLE VI

## CONTRIBUTIONS

The total amount of cash contributed to the limited liability company and the members contributing the cash shall be reflected in the records of the Limited Liability Company.

The members of the limited liability company have agreed to make the following additional contributions, which contributions, if any, shall be made upon the following terms and conditions:

None, provided that future contributions can be made as determined from time to time by the members.

## ARTICLE VII

## ADMISSION OF ADDITIONAL MEMBERS

The members of the limited liability company may admit additional members provided however that any such admission shall require the affirmative written consent of all members of the limited liability company.

## ARTICLE VIII

## VOTING

All members of the limited liability company shall be entitled to vote on matters relating to the limited liability company.

Each member's vote shall be weighted as follows:

| NAME | PERCENTAGE |
|------|------------|
| Jed Kaplan | 100% |

## ARTICLE IX

## TERM OF EXISTENCE

This limited liability company shall have an existence commencing on the date of receipt of these Articles of Organization by the Secretary of State of Florida and shall continue perpetually.

In the event of the death, retirement, resignation, expulsion, bankruptcy or dissolution of a

member or the occurrence of any other event which terminates the continued membership of a member the remaining members shall have the right to continue the business of this limited liability company.

## ARTICLE X

### AMENDMENT

This limited liability company reserves the right to amend or repeal any provisions contained in these Articles of Organization, or any amendment hereto, in the manner provided by law.

(In accordance with section 608.408(3), Florida Statutes, the execution of this document constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

_____

Jed Kaplan, Member

FILED
06 NOV 27 AM 11: 50
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

## MINUTES OF MEETING OF SHAREHOLDERS & DIRECTORS OF
## KAPLAN & CO. SECURITIES, INC.

The undersigned, being the sole shareholder and director of Kaplan & Co. Securities, Inc., hereby waives notice of a Meeting of the Shareholders and Directors of the Corporation and takes the following action pursuant to Florida Statute Section 607.0821:

IT IS RESOLVED, that the Corporation approves the conversion of the Corporation into a Florida Limited Liability Company pursuant to Florida Statute Section 608.439, and the Corporation and its Directors and Officers are authorized to take any and all action necessary to effectuate the conversion; and

RESOLVED, that the Articles of Organization of Kaplan & Co. Securities, LLC, have been reviewed and approved by the Board of Directors and Shareholders of the Corporation and the Directors and Shareholders authorize the filing of the Articles of Organization of Kaplan & Co. Securities, LLC.

The foregoing has been approved by the undersigned on the ___ day of November 2006.

JED KAPLAN, Sole Shareholder and Director

06 NOV 27 AM 11: 50
SECRETARY OF STATE
TALLAHASSEE, FLORIDA
FILED

U:\MARLA\Kaplan-Jed\Inc Conversion\Minutes of Inc

# EXHIBIT 2

# COVER LETTER

**TO:**   Registration Section
Division of Corporations

**SUBJECT:** KAPLAN & CO. SECURITIES, LLC
_____
(Name of Limited Liability Company)

The enclosed Articles of Amendment and fee(s) are submitted for filing.

Please return all correspondence concerning this matter to the following:

## MICHAEL I. KOTLER, ESQUIRE
_____
(Name of Person)

## SCHWARTZ, GOLD, COHEN, ZAKARIN & KOTLER, P.A.
_____
(Firm/Company)

## 54 SW BOCA RATON BLVD
_____
(Address)

## BOCA RATON, FLORIDA  33432
_____
(City/State and Zip Code)

For further information concerning this matter, please call:

## MICHAEL I. KOTLER, ESQUIRE at ( 561 ) 361-9600
_____
(Name of Person)                                    (Area Code & Daytime Telephone Number)

Enclosed is a check for the following amount:

☐ $25.00 Filing Fee     ☑ $30.00 Filing Fee & Certificate of Status     ☐ $55.00 Filing Fee & Certified Copy (additional copy is enclosed)     ☐ $60.00 Filing Fee, Certificate of Status & Certified Copy (additional copy is enclosed)

**MAILING ADDRESS:**
Registration Section
Division of Corporations
P.O. Box 6327
Tallahassee, FL 32314

**STREET/COURIER ADDRESS:**
Registration Section
Division of Corporations
Clifton Building
2661 Executive Center Circle
Tallahassee, FL 32301

# ARTICLES OF AMENDMENT
## TO
## ARTICLES OF ORGANIZATION
## OF

FILED

07 JAN -3 PM 12: 48

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

### KAPLAN & CO SECURITIES, LLC

(Present Name)
(A Florida Limited Liability Company)

**FIRST:** The Articles of Organization were filed on **11/27/2006** and assigned
document number **L06000113641** .

**SECOND:** This amendment is submitted to amend the following:

THE NAME OF THE LIMITED LIABILITY COMPANY SHALL BE AS FOLLOWS:

## LF ROTHSCHILD, LLC

Dated **JANUARY 2** , **2007** .

Signature of a member or authorized representative of a member

## JED KAPLAN

Typed or printed name of signee

**Filing Fee: $25.00**

EXHIBIT 3

Lawrence S. Powell and Delano N. Sta.Ana... Admin. Proc. Rel. No. 34-51017 January 14...    Page 1 of 6

Case 1:07-cv-00381-AK Document 1-12   Filed 07/05/2007   Page 14 of 61

Home | Previous Page



**U.S. Securities and Exchange Commission**

## UNITED STATES OF AMERICA
## Before the
## SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 51017 / January 11, 2005**

**INVESTMENT ADVISERS ACT OF 1940**
**Release No. 2342 / January 11, 2005**

**INVESTMENT COMPANY ACT OF 1940**
**Release No. 26722 / January 11, 2005**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-11794**

| | |
|---|---|
| In the Matter of<br><br>LAWRENCE S. POWELL AND<br>DELANO N. STA.ANA,<br><br>Respondents. | CORRECTED<br><br>ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTION 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTIONS 9 (b) AND 9(f) OF THE INVESTMENT COMPANY ACT OF 1940 |

### I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Section 203(f) of the Investment Advisers Act of 1940 ("Advisers Act"), and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Investment Company Act") against Lawrence S. Powell and Delano N. Sta.Ana ("Respondents").

### II.

In anticipation of the institution of these proceedings, Respondents have each submitted an Offer of Settlement ("Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which

the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, Respondents consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Section 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Order"), as set forth below.

## III.

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

### Summary

1. Over the course of three and a half years, Respondents engaged in a course of business that operated as a fraud and deceit in connection with the market timing and late trading of mutual fund shares on behalf of institutional customers. Respondents engaged in this misconduct, from early 2000 through approximately September 2003, while they established and co-headed the (now defunct) institutional mutual fund group of Kaplan & Co. Securities, Inc. ("Kaplan & Co.").

### Respondents

2. Respondents were registered representatives associated with Kaplan & Co., a Florida-based broker-dealer and an investment adviser registered with the Commission, from approximately January 2000 through October 2003. Respondent Powell, 40 years old, is a resident of Palm Beach Gardens, Florida. Respondent Sta.Ana, 31 years old, is a resident of Boca Raton, Florida.

### Other Relevant Entities

3. Kaplan & Co., located in Boca Raton, Florida, has been registered with the Commission as a broker-dealer since September 15, 1995 and as an investment adviser since March 21, 2003. As a broker-dealer, Kaplan & Co. assisted institutional investors, mainly hedge funds, in purchasing and redeeming shares of third party mutual funds.

### Respondents' Misconduct

### Market Timing

4. From 2000 through approximately September 2003 (the "relevant period"), Respondents advised their customers that establishing multiple brokerage accounts would enhance the customers' ability to circumvent mutual fund restrictions concerning excessive trading. Kaplan & Co. routinely opened multiple accounts on behalf of its timing customers so that when a mutual fund prohibited further transactions by a specific customer's account due to market timing abuses, the customer could still continue to market time the fund through a different, already established, account. This

Lawrence S. Powell and Delano N. Sta. Ana, Admin. Proc. Rel. No. 34-51017 / January 1,    Page 3 of 6

Case 1:07-cv-06625-AKH   Document 1-2   Filed 07/06/2007   Page 16 of 61

allowed Kaplan & Co.'s customers to use new accounts to continue their market timing activities after existing accounts had been banned for market timing because the mutual funds did not recognize the transactions as originating from banned customers.

5. During the relevant period, Respondents used multiple registered representative numbers ("rep numbers") to further evade detection by the mutual funds and fraudulently conceal the identities of the Kaplan & Co. registered representatives from mutual funds. In many cases, mutual funds would identify a specific Kaplan & Co. rep number as a known market timer and ban further transactions effected by the registered representative associated with that rep number. Since most mutual funds monitored registered representatives' transactions by their rep numbers, rather than by their names, Respondents used multiple rep numbers to fraudulently hide the identities of the Kaplan & Co. registered representatives from the mutual funds.

6. During the relevant period, Respondents also fraudulently used multiple branch codes to hide the identity of the Kaplan & Co. Florida branch as the originating branch of the transactions. Kaplan & Co. used two different branch codes to place trades through one clearing firm. Respondents devised this plan after mutual funds began to routinely recognize Kaplan & Co.'s Florida branch code and block trades originating from that branch. Respondents used Kaplan & Co.'s New York branch office to establish a second branch code, which was not immediately recognizable to the mutual funds. This strategy was implemented and the new branch code was utilized even though no market timing trades were actually effected from Kaplan & Co.'s New York branch. By using a new branch code, Kaplan & Co.'s customers could continue market timing in funds from which they and Kaplan & Co.'s Florida branch had previously been banned.

7. From 2000 through approximately September 2003, Respondents facilitated fraudulent market timing activities by their customers by establishing relationships with multiple clearing firms. Opening accounts at multiple clearing firms enabled Respondents' customers to further conceal their market timing activities from the mutual funds. Customers could hide their identities from the mutual funds by using the new clearing firm identifiers and account numbers associated with each new clearing firm. The use of additional clearing firms allowed Respondents' customers, once identified by a mutual fund as a market timer, to switch to a different clearing firm to continue market timing undetected. It also allowed the customers to simultaneously use accounts from multiple clearing firms to facilitate their market timing activities.

**Late Trading**

8. From 2000 through approximately September 2003, Respondents engaged in a fraudulent scheme to late trade mutual fund shares on behalf of their market timing customers. Respondents effected mutual fund trades for orders they received after 4:00 p.m. ET, allowing their customers to receive the same-day net asset value ("NAV") pricing on those trades (as though the orders were received prior to the close of the stock market at 4:00 p.m. ET, the time as of which the funds calculated their NAV). This system allowed Kaplan & Co.'s customers to capitalize on news events or market changes occurring after the 4:00 p.m. ET close of the stock market.

Lawrence S. Powell and Delano N. Sta.Ana, Admin. Proc. Rel. No. 34-51017 / January 17... Page 4 of 6

Case 1:07-cv-06207-AKH   Document 1-2   Filed 07/06/2007   Page 17 of 84

Generally, Respondents' customers sent Kaplan & Co. a list of their proposed trades before 2:30 p.m. each day. These proposed trades reflected only tentative trading instructions. Kaplan & Co. did not execute the proposed trades until the customer subsequently approved the order, orally or via e-mail or facsimile. These approvals were almost uniformly received after 4:00 p.m. ET. Respondents were aware that their customers were taking advantage of post-4:00 p.m. market news in determining whether to effect transactions.

9. During the relevant time period, Respondents also engaged in the "next-day busting" of orders. On numerous occasions, the mutual fund group effected trades for customers and then called or e-mailed the clearing firm the following morning requesting that they contact the mutual fund and cancel or "bust" the trade. In some instances, the mutual fund group falsely told the clearing firm that the order had been "erroneously entered," when in fact, the timing customer had simply changed its mind about placing the order.

**Conclusions**

10. As a result of the conduct described above, Respondents willfully violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit the use of any device, scheme, or artifice to defraud in connection with the purchase or sale of securities.

11. As a result of the conduct described above, Respondents willfully aided and abetted and caused Kaplan & Co.'s violations of Section 15(c)(1) of the Exchange Act, which prohibits a broker-dealer from using interstate facilities or the mails to effect or induce transactions in securities by means of any manipulative, deceptive or other fraudulent device or contrivance.

12. As a result of the conduct described above, Respondents willfully aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 promulgated under Section 22(c) of the Investment Company Act, which provides that "[n]o registered investment company issuing any redeemable security, no person designated in such issuer's prospectus as authorized to consummate transactions in any such security, and no principal underwriter of, or dealer in any such security shall sell, redeem, or repurchase any such security except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security."

**Respondents' Cooperation**

In determining to accept the Offers, the Commission considered Respondents' cooperation with the Commission staff.

**IV.**

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents Powell and Sta.Ana's Offers.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act,

Section 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act, it is hereby ORDERED that:

A. Respondents Powell and Sta.Ana cease and desist from committing or causing any violations and any future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B. Respondents Powell and Sta.Ana cease and desist from causing any violations and any future violations of Section 15(c)(1) of the Exchange Act;

C. Respondents Powell and Sta.Ana cease and desist from causing any violations of Section Rule 22c-1 of the Investment Company Act;

D. Respondents Powell and Sta.Ana be, and hereby are barred from association with any broker, dealer or investment adviser, and are prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter;

E. Any reapplication for association by either of the Respondents will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against the Respondents, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission Order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission Order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission Order;

F. IT IS FURTHER ORDERED that Respondents shall each, within 180 days of the entry of this order, pay disgorgement and prejudgment interest in the amount of $255,000 into the United States Treasury, provided that each Respondent pay at least $85,000 of his $255,000 within 90 days of the entry of this Order. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Alexandria, Stop 0-3, VA 22312; and (D) submitted under cover letter that identifies Powell and Sta.Ana, respectively, as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131; and

G. IT IS FURTHER ORDERED that Respondents shall each, within 180 days of the entry of this Order, pay a civil money penalty in the amount of $120,000 to the United States Treasury, provided that each Respondent pay at least $40,000 of his $120,000 within 90 days of the entry of this

Order. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Powell and Sta.Ana, respectively, as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

By the Commission.

Jonathan G. Katz
Secretary

### Endnotes

[1] The findings herein are made pursuant to Respondents' Offers and are not binding on any other person or entity in this or any other proceeding.

*http://www.sec.gov/litigation/admin/34-51017.htm*

EXHIBIT 4



Home | Previous Page

## U.S. Securities and Exchange Commission

# TWO FORMER REGISTERED REPRESENTATIVES OF A BOCA RATON BROKER-DEALER/INVESTMENT ADVISER SETTLE SEC CHARGES IN CONNECTION WITH FRAUDULENT MUTUAL FUND MARKET TIMING AND LATE TRADING ACTIVITIES

**FOR IMMEDIATE RELEASE**
**2005-4**

*Washington, D.C., Jan. 11, 2005* — The Securities and Exchange Commission today announced a settled administrative proceeding against Respondents Lawrence S. Powell and Delano N. Sta.Ana in connection with their participation in a scheme to defraud mutual fund shareholders through improper market timing and late trading. Powell and Sta.Ana were formerly associated as registered representatives at Kaplan & Co. Securities, Inc., a Boca Raton-based broker-dealer and investment adviser. The Commission ordered Powell and Sta.Ana to pay $750,000, split equally, consisting of $510,000 in disgorgement, $240,000 in penalties, and other remedial measures. Powell and Sta.Ana consented to entry of the Commission's Order without admitting or denying the findings.

The Commission's Order finds that Powell and Sta.Ana engaged in a course of business that operated as a fraud and deceit through the use of various devices to hide the identities of their customers from mutual funds to allow fraudulent market timing (short-term trading to exploit pricing inefficiencies) in those mutual funds. The Order also finds that Powell and Sta.Ana engaged in a fraudulent scheme to late trade mutual fund shares on behalf of their market timing customers.

David Nelson, Regional Director of the Commission's Southeast Regional Office in Miami said that "this case underscores the Commission's intention to punish those who use their role in securities transactions to violate or help others violate laws against late trading and fraudulent market timing." Glenn Gordon, Associate Regional Director in Miami, said that the action "sanctions Powell and Sta.Ana for their serious misconduct, but takes into account the cooperation that they have provided during the Commission's investigation."

The Commission's Order makes the following factual findings.

- Respondents used multiple registered representative numbers to evade detection by the mutual funds and fraudulently conceal the identities of Kaplan & Co. registered representatives from mutual funds.

- Respondents used multiple branch codes to hide the identity of the Kaplan & Co. Florida branch as the originating branch of the

transactions. Respondents used Kaplan & Co.'s New York branch office to establish a second branch code, which was not readily recognizable by the mutual funds. This strategy was implemented and the new branch code was utilized even though no market timing trades were actually effected from Kaplan & Co.'s New York branch. By using a new branch code, Kaplan & Co.'s customers could continue market timing funds that had banned them and Kaplan & Co.'s Florida branch.

- Respondents facilitated fraudulent market timing activities by establishing relationships with multiple clearing firms. Respondents further concealed their customers' market timing activities from the mutual funds by opening accounts at multiple clearing firms. Customers were able to hide their identities from the mutual funds by using the new clearing firm identifiers and account numbers associated with each new clearing firm. This tactic allowed Respondents' customers, once identified by a mutual fund as market timers, to switch to a different clearing firm and continue market timing undetected.

- Respondents effected mutual fund trades for orders received after 4:00 p.m. ET, allowing their customers to receive the same-day net asset value pricing on those trades (as though those orders were received prior to the 4:00 p.m. ET stock market close). This system allowed Kaplan & Co.'s customers to capitalize on news events or market changes occurring after the 4:00 p.m. ET stock market close.

- Respondents also engaged in the "next-day busting" of orders. On numerous occasions, Respondents' mutual fund group effected trades for customers and then contacted the clearing firm the following morning to take steps to cancel or "bust" the trade. In some instances, the mutual fund group falsely told the clearing firm that the order had been "erroneously entered," when in fact, the timing customer had simply changed its mind about placing the order.

The Commission's Order finds that Powell and Sta.Ana willfully violated Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b-5 thereunder, and willfully aided and abetted and caused Kaplan & Co.'s violations of Section 15(c)(1) of the Exchange Act and Rule 22c-1 promulgated under Section 22(c) of the Investment Company Act, and requires Powell and Sta.Ana to cease and desist from violating these provisions. The Order also bars Powell and Sta.Ana from association with any broker, dealer or investment adviser.

In accepting the settlement, the Commission considered Powell and Sta.Ana's cooperation in this investigation. The Commission's investigation of Powell and Sta.Ana and this enforcement action have been coordinated with the New York Attorney General's Office.

The Commission's investigation is continuing.

For further information contact:

David Nelson, Regional Director (305) 982-6332

Glenn S. Gordon, Associate Regional Director (305) 982-6360

➤ Additional materials: <u>Administrative Proceeding Release No. 34-51017</u>

*http://www.sec.gov/news/press/2005-4.htm*

# EXHIBIT 5

## Press Releases

Office of the New York State Attorney General

Department of Law
120 Broadway
New York, NY 10271

Department of Law
The State Capitol
Albany, NY 12224

For More Information:
(518) 473-5525

For Immediate Release
January 11, 2005

KAPLAN BROKERS PLEAD GUILTY TO LATE TRADING

### AG, SEC Continue Coordination of Mutual Fund Industry Probe

Attorney General Eliot Spitzer said today that two executives of a Florida-based investment company have pleaded guilty to state criminal charges in connection with the ongoing investigation of illegal trading practices in the mutual fund industry.

In a related development, the Securities & Exchange Commission (SEC) announced a civil action against the pair.

According to the attorney general's criminal charges and the SEC findings, the two employees of Kaplan & Company Securities engaged in illegal late trading of mutual funds on behalf of Kaplan and specific hedge fund clients.

Delano N. Sta. Ana and Lawrence S. Powell, two brokers at Kaplan, pleaded guilty in State Supreme Court to a violation of New York's Martin Act, General Business Law Section 352-c(6), a Class E felony, which is punishable by a maximum term of one to four years in state prison.

The SEC also issued an administrative order finding that Sta. Ana and Powell committed securities fraud. In partial settlement of that action, the two men have agreed to pay a fine of $750,000, split equally. The order also bars the two from the securities industry.

According to the charges, Sta. Ana and Powell placed mutual fund orders after 4 pm EST, but obtained prices that had been set as of 4 pm. This allowed Kaplan customers to capitalize on news events and market changes occurring after the close of the stock market.

Kaplan is a privately-held financial services firm based in Boca Raton, Florida. One of its clients was the hedge fund, Canary Capital Partners.

Attorney General Spitzer thanked the SEC's Southeast Regional Office for its cooperation in the matter.

The case is being prosecuted by Assistant Attorney General John C. Henry of the Investor Protection and Securities Bureau under the supervision of Harold Wilson of the Criminal Prosecutions Bureau.

The SEC investigation was led by Southeast Regional Director David Nelson, with Glenn Gordon, Eric Busto, Gary Miller and Elisha Anagnostis.

Since Spitzer announced a settlement relating to illegal trading practices with Canary in September 2003, the

investigation into the mutual funds industry has resulted in agreements that will provide $1.17 billion in restitution to investors, $821 million in civil penalties, and $925 million in anticipated reductions in mutual fund fees over five years, totaling over $2.9 billion in value. There have been four other criminal convictions and charges are pending against four other persons. The investigation is continuing.

- Powell Complaint
- Sta. Ana Complaint

# EXHIBIT 6

FOCUS - 46 of 97 DOCUMENTS

Copyright 2005 The Miami Herald
All Rights Reserved

# The Miami Herald

### Found on Miami ▪ com

The Miami Herald

**January** 12, 2005 Wednesday FINAL EDITION

**SECTION:** BUSINESS; Pg. 3C

**LENGTH:** 303 words

**HEADLINE:** KAPLAN BROKERS PLEAD GUILTY TO FRAUD

**BYLINE:** From Herald Staff and Wire Reports

**BODY:**

Two former brokers of **Kaplan & Co.** Securities of Boca Raton have pleaded guilty to New York state securities fraud charges that stemmed from an investigation of illegal after-hours trading of mutual funds, state Attorney General Eliot Spitzer said Tuesday.

The Securities and Exchange Commission separately announced a $750,000 civil settlement against the registered representatives, Delano Sta.Ana, 29, and Lawrence Powell, 40.

They pleaded guilty to felony securities fraud under New York's Martin Act and each face one to four years in prison. They did not admit or deny the SEC's findings, however.

The pair have agreed to pay a total of $750,000, split evenly, as a partial settlement, Spitzer said. The firm was not involved in the settlement.

One of Kaplan's clients was Canary Capital Partners, the hedge fund operator at the center of Spitzer's investigation of mutual funds.

According to e-mails released by Spitzer in 2000, Kaplan made a proposal to market-time Bank of America's Nations Large Cap Index Fund. The trades would range from $5 million to $10 million. They'd be limited to one a month. The SEC said the two brokers engaged in illegal after-hours trading and hid the identities of their customers, in order to allow market timing.

Late trading involves favored customers receiving the market-closing price for orders placed after the stock market closes for the day at 4 p.m.

Market timing involves quick in-and-out trades and, while not illegal, is believed to hurt the value of other mutual fund investors.

A year ago, Canary Capital LLC agreed to pay $40 million to settle Spitzer's charges that the hedge fund had engaged in market-timing and illegal late-trading of mutual funds. Steve Kobre, one of the lawyers for both, declined to

Page 3

KAPLAN BROKERS PLEAD GUILTY TO FRAUD The Miami Herald January 12, 2005 Wednesday FINAL
EDITION

comment.

**LOAD-DATE:** September 6, 2005

FOCUS - 49 of 97 DOCUMENTS

Copyright 2005 Knight Ridder/Tribune Business News
Copyright 2005 The Palm Beach Post, Florida
The Palm Beach Post, Florida

January 12, 2005, Wednesday

KR-ACC-NO: PM-BROKERS-20050112

LENGTH: 569 words

HEADLINE: Two former Boca Raton, Fla., brokers settle with SEC, plead guilty in New York

BYLINE: By David Sedore

BODY:

Two former Boca Raton investment brokers agreed on Tuesday to pay $ 750,000 to settle civil charges by the Securities and Exchange Commission that they defrauded mutual fund investors through abusive trading tactics.

On the same day, the two men -- Lawrence Powell, 40, of Palm Beach Gardens and Delano N. Sta. Ana, 31, of Boca Raton -- pleaded guilty in a New York state court to criminal charges brought by New York Attorney General Eliot Spitzer involving the same issues of harming mutual fund investors through improper market timing and after-hours trading.

Powell and Sta. Ana had headed the Boca office of **Kaplan & Co.** Securities, where they traded mutual fund shares mainly for institutional investors, including hedge funds.

Under the SEC settlement, the two men are barred from working in the brokerage and investment advisory business. On the criminal charges, the men face prison terms of one to four years plus additional fines. A sentencing date has not been set.

"This is very significant," said Glenn Gordon, the SEC's deputy regional director in Miami. "Most of the cases we've seen in the past year have been against the mutual funds themselves. This case goes after the brokers. They were integral parts of the transactions."

According to the SEC, Powell and Sta. Ana would take trading orders before the 4 p.m. close of trading each day, then execute them after trading hours based on news that would affect a mutual fund's trading price.

Powell and Sta. Ana used a sophisticated scheme involving multiple accounts, multiple broker numbers and branch office codes to conceal their trading activity.

Their customers included Canary Capital Partners, a New Jersey hedge fund firm whose alleged trading abuses prompted Spitzer's broad late-trading investigation more than a year ago. Canary settled with Spitzer's office in September 2003. Since then, Spitzer's probe has yielded $ 821 million in civil penalties against mutual fund companies, agreements to return $ 1.17 billion to investors, and to cut fund fees $ 925 million over five years.

"We are continuing to investigate all participants to the transactions," Nelson said of the former Boca brokers. Spitzer's investigation is also ongoing, a spokesman said.

Two former Boca Raton, Fla., brokers settle with SEC, plead guilty in New York The Palm Beach Post, Florida January 12, 2005, Wednesday

The $ 750,000 in fines and penalties the two men must pay the SEC includes $ 510,000 in illegal profit that Powell and Sta. Ana pocketed. That's not all they made from the scheme, Nelson said, but it's a substantial portion.

"The gentlemen are glad to get this matter behind them," said William Nortman, the Fort Lauderdale attorney representing Powell and Sta. Ana. "Hopefully, they'll get the optimum result when it's all over."

Ira Lee Sorkin, a New York lawyer who represents **Kaplan & Co.**, said the firm and principal Jed Kaplan cooperated in the SEC investigation and received no indication they will face charges from the SEC or Spitzer.

Sorkin said the two brokers operated "behind closed doors" in another part of Kaplan's Boca Raton office and didn't inform Kaplan about their activities.

Once the allegations against them surfaced, "they were suspended immediately and eventually terminated," Sorkin said.

-----

To see more of The Palm Beach Post -- including its homes, jobs, cars and other classified listings -- or to subscribe to the newspaper, go to http://www.palmbeachpost.com.

**JOURNAL-CODE:** PM

**LOAD-DATE:** January 12, 2005

FOCUS - 51 of 97 DOCUMENTS

Copyright 2005 St. Louis Post-Dispatch, Inc.
St. Louis Post-Dispatch (Missouri)

**January** 12, 2005 Wednesday
FIVE STAR LATE LIFT EDITION

**SECTION:** BUSINESS; Pg. C02

**LENGTH:** 204 words

**HEADLINE:** Former Kaplan brokers plead guilty in fund case

**BYLINE:** Bloomberg News

**BODY:**

Two former **Kaplan & Co.** securities brokers pleaded guilty Tuesday to criminal charges in connection with New York Attorney General Eliot Spitzer's investigation of improper-trading practices in the mutual fund industry.

Delano N. Sta.

Ana, 31, and Lawrence Powell, 40, both formerly at Florida-based Kaplan, pleaded guilty to violating New York state's general business law and face a maximum of four years in prison, Spitzer said in a statement.

The two brokers also settled civil allegations filed by the Securities and Exchange Commission.

Criminal complaints against the two men allege they engaged in late trading on behalf of Kaplan and hedge fund clients after the 4 p.m. deadline, a key element of the mutual fund investigation.

The men obtained prices that had been set at 4 p.m., allowing customers to "capitalize on news events and market changes occurring after the close of the stock market," Spitzer said.

State and federal regulators have spent more than a year examining allegations of improper trading in the $7.6 trillion fund industry. Firms including Putnam Investments and Alliance Capital Management Holding LP, as well as executives implicated in the inquiry have paid more than $3 billion in penalties.

mdl

**NOTES:** MORNING BRIEFING

**LOAD-DATE:** January 12, 2005

FOCUS - 60 of 97 DOCUMENTS

Copyright 2005 Associated Press
All Rights Reserved

The Associated Press

**January** 11, 2005, Tuesday, BC cycle

**SECTION:** Business News

**LENGTH:** 605 words

**HEADLINE:** NY prosecutor says pair pleads guilty in mutual fund probe

**BYLINE:** By MICHAEL GORMLEY, Associated Press Writer

**DATELINE:** ALBANY, N.Y.

**BODY:**

Two executives of **Kaplan & Co.** Securities of Florida have pleaded guilty to state securities fraud charges that stemmed from an investigation of illegal after-hours trading of mutual funds, New York Attorney General Eliot Spitzer said Tuesday.

The U.S. Securities and Exchange Commission separately announced a $750,000 civil settlement against the brokers, Delano Sta. Ana, 29, and Lawrence Powell, 40. They pleaded to felony securities fraud under New York's Martin Act and each face one to four years in prison.

Kaplan is based in Boca Raton, Fla., and is a privately held financial services firm. One of its clients was Canary Capital Partners, a hedge fund operator.

The two men are accused of illegal late trading of mutual funds for Kaplan and specific hedge fund clients.

The brokers' Florida-based attorney, William Nortman, said his clients are pleased to have reached the resolution with the SEC and Spitzer. He said his clients will continue to cooperate and there has been no agreement on sentencing.

The SEC said the brokers settled an administrative action in connection with their role in a scheme to defraud mutual fund shareholders through late trading.

Late trading is illegal and involves favored customers receiving the market-closing price for fund shares for orders placed after the stock market closes for the day at 4 p.m. Eastern time. This allows them to profit on market-moving news that develops overnight and during the next day.

Other investors who place late orders to buy the funds would have to pay the next day's closing price, losing out on gains that had accrued since the close of business the previous day.

The settlement includes $510,000 in disgorgement of profits and $240,000 in penalties and remedial measures. Powell and Sta.Ana consented to the order without admitting the findings, according to the SEC.

The SEC said the brokers used multiple registration and branch codes to conceal their identity.

NY prosecutor says pair pleads guilty in mutual fund probe The Associated Press January 11, 2005, Tuesday, BC cycle

David Nelson of the SEC's Miami regional office said "this case underscores the commission's intention to punish those who use their role in securities transactions to violate or help others violate laws against late trading and fraudulent market timing."

The civil action "sanctions Powell and Sta.Ana for their serious misconduct, but takes into account the cooperation that they have provided during the Commission's investigation," said the SEC's Glenn Gordon, associate regional director in Miami.

The case is the latest to stem from Spitzer's investigation of hedge fund Canary Capital Partners, which broke open widespread fraud in the mutual fund industry.

A year ago, Canary Capital LLC agreed to pay $40 million to settle Spitzer's charges that the hedge fund had engaged in market-timing and illegal late-trading of mutual funds. Market timing involves quick in-and-out trades and while not illegal is believed to hurt the fund value for other mutual fund investors.

In November, Fremont Investment Advisors has agreed to pay $2.1 million in restitution and $2 million in civil penalties to end federal and state mutual fund timing cases. The San Francisco-based company was accused by the SEC and Spitzer of allowing market timing and late trading of its mutual funds to benefit a few select clients at the expense of most investors, Spitzer said.

Former Bank of America broker Theodore Sihpol III, 36, has also been charged by Spitzer in a 40-count indictment with stealing more than $1 million from each of six mutual funds.

---

On the Net:

Attorney General's Office http://www.oag.state.ny.us

**LOAD-DATE:** January 12, 2005

FOCUS - 66 of 97 DOCUMENTS

Copyright 2005 Factiva, a Dow Jones and Reuters Company
All Rights Reserved



(c) 2005 Dow Jones & Company, Inc.



Dow Jones News Service

January 11, 2005 Tuesday  10:22 PM GMT

**LENGTH:** 671 words

**HEADLINE:** UPDATE:Ex-Boca Raton Brokers Settle Market-Timing Charges

**BODY:**

(Updated to include comment from SEC in seventh paragraph and from Kaplan's lawyer in 13th and 14th paragraphs.)

By Judith Burns
Of DOW JONES NEWSWIRES

WASHINGTON (Dow Jones)--Two former Boca Raton, Fla., brokers will pay $750,000 to settle charges they defrauded mutual fund investors through improper market timing and late trading by hedge fund clients, the Securities and Exchange Commission announced Tuesday.

Lawrence Powell and Delano Sta.Ana, formerly with **Kaplan & Co.** Securities, a brokerage and investment advisory firm, settled without admitting or denying the SEC's claims.

The SEC said the brokers used multiple accounts to shield their identity from mutual funds and engage in abusive trading, including market timing. Market timing, in which participants quickly buy and sell mutual fund shares, isn't illegal but most funds seek to discourage it because it can raise costs and lower performance for long-term fund investors.

The former **Kaplan & Co.** brokers also pleaded guilty to criminal charges in State Supreme Court in New York, New York Attorney General Eliot Spitzer announced.

Kaplan's clients included hedge funds such as Canary Capital Partners, the New Jersey hedge fund whose alleged trading abuses prompted Spitzer to begin a sweeping investigation in 2003.

Spitzer said Tuesday that the probe has so far resulted in agreements to return $1.2 billion to investors, pay more than $800 million in fines and reduce mutual fund fees by an anticipated $925 million over five years, or nearly $3 billion in all.

UPDATE:Ex-Boca Raton Brokers Settle Market-Timing Charges Dow Jones News Service January 11, 2005 Tuesday

While investigations initially targeted mutual funds that allowed abuses to occur, "now we're beginning to bring cases against the brokers for facilitating the trading," said David Nelson, regional director of the SEC's Miami office.

The SEC said the former Kaplan brokers took part in abusive mutual-fund trading for hedge fund clients for more than three years, starting early in 2000. To evade detection, regulators said the brokers routinely opened multiple accounts for their clients and hid behind identification codes for other brokers and Kaplan branches.

In addition to market timing, the SEC said the brokers would place tentative orders with fund companies during the day, but not confirm them until after the market closed at 4 p.m. Eastern time. That late trading allowed hedge fund customers to take advantage of news issued after the closing bell, regulators said. On other occasions, the brokers would cancel trades the following day, falsely telling Kaplan's clearing firm they had been entered in error, when a hedge fund client "had simply changed its mind about placing the order," according to the SEC.

Powell, 40, of Palm Beach Gardens, and Sta.Ana, 31, of Boca Raton, will be barred from the brokerage and investment advisory business under the settlement and split the $750,000 payment, which consists of $240,000 in fines and $510,000 of ill-gotten gains.

Powell and Sta.Ana cooperated in the investigation, which is "continuing," the SEC said.

"The gentlemen are glad to get this matter behind them," said their attorney, William Nortman, of Fort Lauderdale, Fla. "Hopefully, they'll get the optimum result when it's all over."

Ira Lee Sorkin, a New York lawyer who represents **Kaplan & Co.,** said the firm and principal Jed Kaplan cooperated fully in the investigation and received no indication they will face charges by Spitzer or the SEC.

Sorkin said the brokers "operated behind closed doors" in another part of Kaplan's Boca Raton branch office and didn't inform Kaplan about their activities. Once the allegations came to light, Sorkin said, "they were suspended immediately and eventually terminated."

The criminal charges could carry prison terms of up to four years, plus additional financial penalties. Spitzer hasn't sought to impose fines beyond what is called for in the SEC agreement, but it will be left to the court to decide if the plea agreement is sufficient.

- By Judith Burns, Dow Jones Newswires, 202-862-6692; judith.burns@dowjones.com [ 01-11-05 1722ET ]

**NOTES:**
PUBLISHER: Dow Jones & Company Inc.

**LOAD-DATE:** January 12, 2005

 **The New York Times**                    **Business**                    Great Getav

NYTimes: Home - Site Index - Archive - Help                                    Welcome, kristasirola - Memb

Go to a Section  `Go`          Quotes: `Go`                              Site Search:

NYTimes.com > **Business**

ARTICLE TOC

# 2 Brokers Plead in Funds Case

**By THE ASSOCIATED PRESS**
Published: January 12, 2005

**A**LBANY, Jan. 11 (AP) - Two executives of Kaplan & Company Securities of Florida pleaded guilty to New York State securities fraud charges that stemmed from an investigation of illegal after-hours trading of mutual funds, the New York attorney general, Eliot Spitzer, said Tuesday.

They pleaded guilty to felony securities fraud under the Martin Act, a New York law, and they each face one to four years in prison.

Advertisement

The Securities and Exchange Commission separately announced a $750,000 civil settlement against the brokers, Delano N. Sta. Ana and Lawrence S. Powell.

The settlement includes $510,000 in disgorgement of profits and $240,000 in penalties and remedial measures.

Kaplan is based in Boca Raton, Fla.

E-Mail This
Printer-Frie
Most E-Mai
Reprints &

**Most**

1. State of the Matches Mo
2. Rome Journ Welcomes T but Not Too
3. New Poll Fir Americans /
4. Study Says Forget Patie
5. Chef Sues C Property (the

Go to Complet

The New Yor

MODEL
Buy

OUR ADVERT

**RELATED ARTICLES**
- COMPANY NEWS; KNIGHT EQUITY TO PAY $79 MILLION IN FRAUD SETTLEMENT  (December 17, 2004)
- 3 Years After Enron, Resistance to New Rules Grows  (December 17, 2004) $
- COMPANY NEWS; MARSH & MCLENNAN COMPLETES NEW CREDIT AGREEMENT  (December 16, 2004)
- MARKET PLACE; Time Warner Settles 2 Cases Over AOL Unit  (December 16, 2004) $
  Find more results for Frauds and Swindling and Securities and Commodities Violations



**TOP BUSINESS ARTICLES**

- State of the Art: The iPhone Matches Most of Its Hype
- Waiting for the Latest in Wizardry
- In Food Safety Crackdown, China Closes 180 Plants
- 2 Oil Firms Are Defiant in Venezuela
  Go to Business

Copyright 2005 The New York Times Company | Home | Privacy Policy | Search | Corrections | RSS | Help | Back to Top

**South Florida Business Journal - January 11, 2005**
http://southflorida.bizjournals.com/southflorida/stories/2005/01/10/daily27.html

# South Florida
# BUSINESS JOURNAL

# SEC fines 2 in Boca Raton

South Florida Business Journal - January 11, 2005 by Jim Freer

The Securities and Exchange Commission has ordered two former brokers at Kaplan & Co. Securities in Boca Raton to pay a fine of $750,000, split evenly, for their "participation in a scheme to defraud mutual fund shareholders through improper market timing and late trading."

The fines are part of the SEC's settlement of an administrative proceeding against Lawrence S. Powell and Delano N. Sta.Ana.

The SEC ordered the former brokers to pay $510,000 in disgorgement and $240,000 in penalties and other remedial measures.

Powell and Sta.Ana consented the SEC's order without admitting or denying the charges. The order barred both men from associating with any broker-dealer or investment adviser.

"This case underscores the commission's intention to punish those who use their role in securities transactions to violate or help others violate laws against late trading and fraudulent market timing," said David Nelson, director of the SEC's southeast regional office in Miami.

The SEC's order said Powell and Sta.Ana hid identities of some of their customers from mutual funds to allow short-term trading to exploit pricing inefficiencies in those funds.

The order said the two brokers used branch codes from Kaplan & Co.'s offices in Boca Raton and New York City to carry out their market timing operation.

In accepting the settlement, the SEC said it considered the cooperation of Powell and Sta.Ana. But, the commission said its investigation continues.

| Contact the Editor | Need Assistance? | More Latest News → |
| --- | --- | --- |

| Subscribe or renew online |
| --- |

*All contents of this site © American City Business Journals Inc. All rights reserved.*

# consumeraffairs.com
### *knowledge is power!*



Advertisement

## Kaplan Brokers Plead Guilty to Late Trading

*January 11, 2005*

Two executives of a Florida-based investment company have pleaded guilty to state criminal charges in connection with the ongoing investigation of illegal trading practices in the mutual fund industry, New York Attorney General Eliot Spitzer announced.

In a related development, the Securities & Exchange Commission (SEC) announced a civil action against the pair.

According to the attorney general's criminal charges and the SEC findings, the two employees of Kaplan & Company Securities engaged in illegal late trading of mutual funds on behalf of Kaplan and specific hedge fund clients.

Delano N. Sta. Ana and Lawrence S. Powell, two brokers at Kaplan, pleaded guilty in State Supreme Court to a violation of New York's Martin Act, General Business Law Section 352-c(6), a Class E felony, which is punishable by a maximum term of one to four years in state prison.

The SEC also issued an administrative order finding that Sta. Ana and Powell committed securities fraud. In partial settlement of that action, the two men have agreed to pay a fine of $750,000, split equally. The order also bars the two from the securities industry.

**Mutual Fund Market Timing**



• Prudential to Pay $600 Million for Market Timing
• Waddell & Reed Settles Market Timing Case
• Court Overturns Key Mutual Fund Investor Protection
• SEC Missed Mutual Fund Abuses, GAO Finds
• Mutual Fund Firms Fined $21 Million
• Merrill Lynch to Pay $10 Million
• Kaplan Brokers Plead Guilty to Late Trading
• PBHG Agrees to Refund $120 Million
• Fremont Investment Advisors Settles
• INVESCO Settles Market Timing Charges with Colorado
• Spitzer Spoils Bank of America's Party

According to the charges, Sta. Ana and Powell placed mutual
fund orders after 4 pm EST, but obtained prices that had been set
as of 4 pm. This allowed Kaplan customers to capitalize on news
events and market changes occurring after the close of the stock
market.

Kaplan is a privately-held financial services firm based in Boca
Raton, Florida. One of its clients was the hedge fund, Canary
Capital Partners.

Since Spitzer announced a settlement relating to illegal trading
practices with Canary in September 2003, the investigation into
the mutual funds industry has resulted in agreements that will
provide $1.17 billion in restitution to investors, $821 million in
civil penalties, and $925 million in anticipated reductions in
mutual fund fees over five years, totaling over $2.9 billion in
value. There have been four other criminal convictions and
charges are pending against four other persons. The investigation
is continuing.

### Report Your Experience
If you've had a bad experience with a consumer product or service, we'd like to
hear about it. All complaints are reviewed by class action attorneys and are
considered for publication on our site. Knowledge is power! Help spread the
word. File your consumer report now.

0
diggs        **347**

**digg it**    reddit

bookmark this on del.icio.us      be the first to bookmark this page!

Back to the top |
Home | Rogues Gallery | Good Guys | Complaint Form | News | Recalls | Se
Consumer Resources | Small Claims Guide | Lemon Law | Newsletter |
Advertise With Us | Testimonials | Newsroom | RSS Feeds | Radio | Jo

Advertisement

**Terms of Use** Your use of this site constitutes acceptance of the Terms of Use

**Advertisements** on this site are placed and controlled by outside advertising networks. ConsumerAffairs.Com does not evalua
FAQ for more information.

**Company Response Welcome** If complaints about your company appear on our site, we welcome your response. Please see

**For more information**, see the FAQ and privacy policy. The information on this Web site is general in nature and is not intend
ConsumerAffairs.Com Inc. makes no representation as to the accuracy of the information herein provided and assumes no liabl

Copyright © 2003-2007 ConsumerAffairs.Com Inc.  All Rights Reserved.

# FINANCIAL CRIME NEWS
# NEWS STORIES January 2005 Page 2

## CALIFORNIA GIVES NOTICE TO REVOKE MORTGAGE LICENSES OF DREAMLIFE FINANCIAL

**By Stephanie Ayres**

**11 January 2005**
**Sacramento, California**

The California Department of Corporations (DOC) announced on January 3 that it intends to revoke the lender/broker licenses of mortgage company DreamLife Financial of Turlock, California for the company's alleged failure to provide accurate information on its main license application.

The controversial mortgage company, with seven offices in the San Joaquin Valley region, was closed down in December after the reported arrest on December 20 of its managers, Tony Daniloo and his wife, Nansi Masihi Daniloo, on 41 counts of felony grand theft over allegations that the Daniloos were involved in the diversion of some $5 million of funds from escrow accounts maintained by DreamLife in the course of processing mortgage loan refinancings.

Local press reports describe the seizure of Daniloo property including documents, computer records, and luxury automobiles-- a Lamborghini, two Mercedes cars, and a search for expensive jewelry believed to have been purchased by the couple. The Daniloos had pledged some $5.5 million in contributions to California State University toward construction of an arena and to Emanuel Medical Center toward construction of a new hospital wing. These organizations reportedly turned down the donations after local press reports emerged about accusations of financial wrongdoing by the Daniloos.

Articles in the newspaper "Modesto Bee" cite unsealed federal investigators' affidavits and a civil case filed by First American Title Insurance Company that the Daniloos allegedly siphoned large amounts of money out of DreamLife escrow accounts for personal use, used the proceeds of new loans received to cover loans that were short. They were also accused of forging documents to conceal these activities, and to cause lenders to issue loans to borrowers who wouldn't otherwise qualify.

The First American Title Insurance case reportedly claims that one of the plaintiff's own employees colluded with the Daniloos to create documents showing that old mortgage loans had been paid off when in fact they had not. A December 22 article in the "Modesto Bee" says First American Title terminated the employee who allegedly participated in the scheme and cites 15 instances from the civil case where homeowner mortgages have gone into default because of these activities.

According to the December 22 "Modesto Bee" report, court documents in the criminal case say that Tony Daniloo was suspected of having diverted some $350,000 of client escrow funds in mortgage refinancings while employed by Residential Credit Corporation in the San Francisco Bay area in 2000 and 2001, and that the $350,000 has never been recovered.

In announcing its intent to revoke the seven active mortgage licenses held by DreamLife, the DOC said the company failed to report Daniloo's involvement as an officer of the company. It said that Donald Benjamin, the individual identified as the owner and principal, had not been involved with DreamLife since October 2004.

Return to main page

## THREE SENTENCED IN LARGE HONG KONG PYRAMID SCHEME

**By Stephanie Ayres**

**12 January, 2005**
**Hong Kong, China**

A Hong Kong-based pyramid scheme which promised returns up to 3,000% and had attracted some 15,000 participants ended in prison sentences of 18 months to over three years for its principal, Malaysian Tam Lam-chuan, and two Hong Kong associates, Kwok Chi-kwai and Chan Kei-suen. The trio was convicted on December 17 and sentenced the first week of January. Another defendant in the case, director Shee Yip-shing, was acquitted.

The scheme was called Promail International and was operated using a mail-order company as a front for promoting a pyramid, including one called "Plan D" which promised that for an initial fee 188 Hong Kong dollars (HK$) and monthly payments of HK$3,500, participants could gain a return of HK$141,000 after 14 months.

Return to main page

## CONVICTED ART THIEF TO STAND TRIAL IN FRANCE

**By Stephanie Ayres**

**12 January 2005**
**Strasbourg, France**

A confessed art thief who worked as a wine waiter at restaurants around Europe and was responsible for stealing over 230 art objects from museums in seven countries goes on trial this week in France for thefts of at least 20 works of art in that country., Defendant Stephane Breitwieser was extradited to France in July 2004 from Switzerland where he was serving a four-year sentence on his conviction for art thefts in that country. He was originally arrested in November 2001 outside a museum in Lucerne, Switzerland with a stolen museum piece in his possession.

Breitwieser's thefts were not like the flamboyant grabs of the gangs who have staged recent daring raids in Scandinavian museums, but more like..shoplifting. Allegedly accompanied on his museum visits by girlfriend Anne-Catherine Kleinkaus, who is also a defendant in the Strasbourg case, Breitwieser simply picked up objects he had targeted for theft and walked out of museums in France, Switzerland, Belgium, Germany, Austria, and the Netherlands with the items concealed in his backpack or under his coat.

The thefts were hardly haphazard. Breitwieser's thefts were allegedly motivated by a "passion for art" raised to the level of a compulsion. He stored his stolen treasures at his mother's house in the eastern French town of Eschentzwiller. According to a December report in the French newspaper "Le Figaro," when Breitwieser's mother heard of her son's arrest in Switzerland, she panicked and took an axe and hammer to the stolen art objects, allegedly including famous paintings by Watteau, Bruegel, and Boucher. These and almost 200 other pieces of art were dumped into a canal along the Rhine River, later to be fished out of the same canal by French police over the course of a month after strollers reported seeing reflections of strange-looking objects in the canal in Strasbourg.

Breitwieser's mother, Mireille Stengel, is also a defendant in the French case along with her son and Kleinkaus. According to the December 31 "Le Figaro" article, all three have offered psychiatric excuses for their behavior. Breitwieser was compelled to collect art to follow in the footsteps of his father, who left the family and took along his prized collections of ancient weapons, which the young Breitwieser had fondly cleaned and cared for. His mother acted out of a sense of betrayal, whiel the girlfriend had a "passive" and "submissive" nature which apparently precluded her from stopping her friend from his thefts or from not going along with him while he committed them

<u>Return to main page</u>

## CALIFORNIA, SEC TARGET REAL ESTATE INVESTMENT SCHEME

**By Stephanie Ayres**

**13 January 2005**
**Sacramento, California**

The California Department of Corporations (DOC) announced on December 22 that it issued a Desist and Refrain Order to Sunshine Real Estate Development Inc., described as a Nevada corporation operating from the Los Angeles area. Also named in the Order were Sunshine principals Jules Bernard Fleder and Roger Sherman, who have allegedly been offering unregistered "joint venture agreements" to investors.

Sunshine claims that investors would be financing the development of a real estate subdivision called Highland Forest in Greenwood County, South Carolina. The "joint venture" partnership would acquire, develop, and maintain the property on behalf of investors until it is sold. The DOC order says that Sunshine did not buy or develop property as promised and failed to return money to investors who had requested it.

The DOC action came a couple of weeks after the filing of a complaint in federal court in Texas by the SEC which named Fleder and Sherman as defendants in a separate but similar scheme to market allegedly sham real estate development investments to Texans. The SEC alleged that Fleder was the key figure of the scheme which promised investors that their money would be used to buy property and develop subdivisions in Texas, Virginia, and South Carolina.

The investments, called Tyler Real Estate LLC, Smith Mountain Lake LLC, and Prairie Lake Estates LP, were reportedly created by Californians Fleder, Sherman, and attorney Bernard Ware and sold by Jack A. Brown of Tyler, Texas, who raised about $6 million. The investors expected their investments to be secured by the real estate the entities were supposedly

buying.

The SEC alleged that the defendants purchased no real estate with the investment money raised (except a personal residence for Fleder), but rather diverted some $3.5 million for extravagant personal spending and used about $350,000 for ponzi payments.

The defendants also allegedly failed to disclose Fleder's role in the offering and the October 2002 Cease and Desist Order issued against him by the Texas State Securities Board over his promotion of Sunshine Real Estate Development Inc in Texas. An SEC statement of December 17 says that Sherman, Ware, and Brown consented to a preliminary injunction on December 13. Fleder's whereabouts were unknown.


Return to main page

## MANHATTAN JEWELRY STORE PLEADS GUILTY IN STATE TAX CASE

**By Stephanie Ayres**

**13 January 2005**
**New York, New York**

A Madison Avenue jewelry store, Fred Leighton Limited, has pleaded guilty to failure to collect city and state sales taxes and has paid $1 million of late taxes, penalties, interest, and fines, according to a January 5 statement from the District Attorney of New York County's office.

The case was reportedly a continuation of the District Attorney's campaign targeting Manhattan-based jewelers and art galleries which have colluded with wealthy customers to allow these customers to evade payment of New York state and New York City sales tax on millions of dollars worth of purchases. Fred Leighton Ltd allegedly created false shipping records showing millions of dollars of taxable items having been shipped to customers at out-of-state addresses when in fact the customers took delivery in New York City.

The District Attorney's statement says $29 million of sales and use tax has been collected from jewelers, art dealers, and galleries in the campaign. For more information on these cases, see Feature story "New York targets sales tax schemes by art galleries," October 2004.

Return to main page

## ALABAMA BANK MANAGER PLEADS GUILTY TO BANK FRAUD

**By Stephanie Ayres**

**14 January 2005**
**Birmingham, Alabama**

A former savings account manager at Union State Bank in Pell City, Alabama, Rebecca Lynn Proctor, pleaded guilty in federal court to one count of bank fraud on December 29, according to a statement from the US Attorney's office in Birmingham. Proctor allegedly transferred bank money to her personal accounts and tried to conceal the embezzlement by transferring funds

Financial Crime News January 2005-2

among customer accounts. The thefts reportedly cost the bank a loss of over $491,000.

Return to main page

## EXTRADITED DRUG KINGPIN FACES $1 BILLION MONEY LAUNDERING CHARGE

**By Stephanie Ayres**

**14 January 2005**
**New York, New York**

In a major development in the United States' decades-long battle against the cartels operating the illegal narcotics trade, the President of Colombia signed extradition orders for one of the most highly-sought fugitives, Gilberto Rodriguez-Orejuela, the reputed head of the notorious Cali Cartel, which US authorities claimed was responsible at its peak for as much as 80% of the cocaine smuggled into the United States. In December Rodriguez Orejuela arrived in Miami, where he faces a four-count superseding indictment alleging narcotics trafficking and money laundering.

The Miami charges were the result of a multi-year investigation called Operation Cornerstone, which resulted in seizures of some 50,000 kilograms of cocaine and about $15 million in currency, according to a December 3 statement from the US Attorney's office in Miami. The statement added that about 100 other defendants have already been prosecuted as a result of the investigation.

The superseding indictment of July 2002 charged Rodriguez Orejuela and ten other defendants with conspiracy to import over 200,000 kilograms of cocaine into the United States concealed in such diverse legitimate imported products as frozen vegetables, pumpkins, lumber, coffee, ceramic tiles, and concrete posts.

In addition to the charges in Florida, Rodriguez Orejuela faces a federal indictment in New York charging him with laundering over $1 billion of narcotics proceeds through manufacturing companies and other business enterprises in Colombia.

In October 1995 President Clinton signed Executive Order 12978 which declared the threat from certain narcotics traffickers as a national emergency to the United States. As a result of this order, the Treasury Department's Office of Foreign Asset Control instituted a series of sanctions against certain reputed Colombian narcotics traffickers including Gilberto Rodriguez Orejuela and some of his associates involved in running the businesses he allegedly financed with the proceeds of narcotics traffic.

According to a statement of December 3, 2004 from the US Attorney's office in Manhattan, Rodriguez Orejuela sought to evade the effects of the 1995 Executive Order and the sanctions by transferring the ownership of his businesses to the names of relatives and other associates not named in the US sanctions. The indictment against him in New York reportedly alleges that through these businesses and manoeuvres, Rodriguez Orejuela laundered over $1 billion of drug proceeds.

US Department of Justice statements say that Rodriguez Orejuela will be tried in the Florida

drug trafficking and money laundering case first before facing trial over the money laundering charges in New York.

Rordriguez Orejuela was not the only money laundering suspect to be extradited recently from Colombia. Former Colombian congressman Fermin Ovalle Osaza arrived in New Jersey in September 2004 and pleaded guilty December 10 in federal court in Newark to conspiracy to launder over $800,000 of narcotics proceeds.

The charges against Ovalle Osaza resulted from another multi-year law enforcement investigation called Operation Southern Approach which resulted in federal criminal charges in December 2002 against 26 individuals over a large-scale money laundering operation in which the proceeds of drug sales form other parts of the United States were allegedly directed by the defendants to a group of bank accounts controlled by other defendants with the key money transmitting facility being located in Union City, New Jersey, according to a December 16, 2002 statement from the US Attorney's office in New Jersey announcing the indictments.

Ovalle Isaza's role in this arrangement was as one of the individuals who instructed others where to deposit and transfer over $800,000 of drug proceeds. Several other Colombians were also charged in the case, including alleged trafficker Salomon Camacho Mora and Manual Ramon del Risco Torrente, who was described as being the leader of the money laundering scheme, which he ran from Colombia.

Earlier in 2004 two Colombians were arrested in Bogota as a result of money laundering charges lodged in federal court in Mobile, Alabama. A December 2003 16-count indictment alleged that Miguel Borda Soto and Luz Elena Duque de Castano laundered over $1 million of narcotics proceeds through banks and other financial outlets in Alabama in mid 2003, according to a statement from the US Attorney's office in Mobile, which says that the United States has requested extradition of the two suspects.

Return to main page

## TEXAS AMERICAN GROUP PROMOTERS SETTLE SEC CASE

**By Stephanie Ayres**

**15 January 2005**
**Washington, D.C.**

The SEC announced a final judgment entered on November 16 in federal court in the District of Columbia on two defendants in its civil case against the defunct Texas American Group and its owners and promoters. The case reportedly had alleged that in 1995 and 1996 the defendants had made wildly exaggerated claims about the assets and prospects of Texas American Group.

Texas American reportedly claimed ownership of the Amarilla Golf and Country Club, said to be a $148 million resort in the Canary Islands and claimed to have a total of about $300 million of assets, including interests in companies that operate internet lottery games, develop and manage hotels, and one that runs a "pathology testing service" in England.

The SEC case alleged that these claims were all false, but were used by Texas American

Group promoters as a pretext to issue some 170 million unregistered shares of the company's stock to offshore invididuals and entities in the guise of so-called Regulation S offerings, a federal securities provision that allowed US-based companies to issue stock to foreigners without having to comply with registration and reporting requirements that would otherwise apply if the company issued the stock within the United States. The foreign stockholders would have to hold the stock for the legally specified period before the Regulation S shares could legally be traded in the United States.

The SEC alleged that the Texas American Group offshore stock issues were simply a sham which didn't qualify for the Regulation S exemption because, among other things, many of the offshore "shareholders" turned out to be associates of the Texas American promoters or entities controlled by them.

As part of the November 16 settlement, defendants Alan E. Humphrey and Richard E. Lee will be subject to a permanent injunction against future securities law violations. Both are to pay a $50,000 civil penalty. In February 2003 default judgments were reportedly entered against Texas American Group itself and another defendant, William Grosvenor. Both are subject to the permanent injunction against future securities law violations.

In 2001 the SEC issued a Cease and Desist Order against an investment marketing company which had allegedly assisted Texas American Group in propagating its false claims. Michael Anthony Calderone of Las Vegas, Nevada and his company, Marketing Direct Concepts Inc. allegedly failed to specifically disclose cash and stock Calderone received from Texas American for arranging advertisements of the company's securities in "in-flight" airline magazines.

<u>Return to main page</u>

## AUSTRALIAN SENTENCED IN MULTI-MILLION-DOLLAR BANK FRAUD

**By Stephanie Ayres**

**17 January 2005**
**Melbourne, Australia**

The Australian Securities and Investments Commission (ASIC) announced on January 5 the sentencing of Travis David Campbell for his role in a late 1990s scheme to defraud banks and other lenders of some 30 million Australian dollars (A$).

Campbell was an alleged accomplice of the scheme's mastermind, Lakhoui Daswani, also called Lux Daswani, an immigrant to Australia from Bombay, India. Daswani's family had a history in the jewelry business, and he operated a group of luxury goods stores in Australia's Gold Coast region. According to a March 2004 report in the newspaper "The Australian," Daswani enjoyed a prosperous lifestyle until he allegedly attempted to resolve a cash flow problem by securing large bank loans with forged documents.

ASIC alleged that Campbell had assisted Daswani in preparing fake invoices and contracts for computer equipment to be used as the pretext for loans from several banks. Daswani reportedly ended up owing A$30 million to National Australia Bank, State Bank of New South Wales, ANZ Bank, and others. As Australian regulators closed in, Daswani fled in late 2000 to

Hawaii, where he had transferred some of the proceeds of the bank loans. He reportedly lived quietly in Hawaii until his arrest there by the FBI when he tried to renew a passport.

Daswani pleaded guilty on March 25, 2004 in Brisbane District Court to fifteen felony counts of abusing his position as company director. He was sentenced to 12 years in prison. Campbell pleaded guilty to three counts of fraud in District Court of Southport and was sentenced to 12 months in jail.

Return to main page

## THREE CHARGED OVER $10 MILLION FRAUD AT UNIVERSAL FEDERAL SAVINGS BANK

**By Stephanie Ayres**

**17 January 2005**
**Chicago, Illinois**

Over two years after the closure of Chicago-based Universal Federal Savings Bank by regulators, three individuals have been indicted for a fraud scheme that caused losses of about $10 million resulting in the bank's failure in June 2002.

The scheme allegedly involved a conspiracy by a Chicago-area CPA, Terrence M. Navarro and his client, businessman Adam B. Resnick, to kite millions of dollars of checks through Universal with the help of Navarro's sister, Antonette M. Navarro, who was at the time chief operations officer at Universal.

According to a January 6 statement from the US Attorney's office in Chicago, Terrence Navarro and Resnick were signatories on Navarro's business account at Universal. Over a period of about six months in 2001 and 2002 Resnick allegedly caused about 138 checks written on the Navarro account to be deposited into Universal's correspondent account with America National Bank and Trust, its clearing bank.

Antonette Navarro allegedly helped Resnick access these funds immediately without regard to the bank's policies by making a journal entry on the bank's books. Resnick withdrew cash and "covered" his bad checks with more bad checks in even larger amounts, according to the US Attorney's January 6 statement.

The federal case alleged that when the bank's board instructed the chairman to look into the activity in Terrence Navarro's account, Antonette Navarro lied to the chairman about the account activity and conspired with Resnick to make false entries on the bank's books and to alter copies of checks sought in the course of the internal inquiry. Resnick had allegedly induced Antonette Navarro to participate in the scheme by giving her a BMW car which he paid for with a $37,000 worthless check on the Navarro account and by agreeing to pay her $80,000 for a purported consulting contract with his business.

When the check kiting scheme was halted by the bank, it was found to have caused losses of about $10 million. The US Attorney's January 6 statement says the indictment alleged that Resnick spent about $9 million of these funds on gambling at casinos and on the internet.

According to the US Attorney's statement, the case also alleged that, in addition to the bank fraud, Resnick operated a ponzi investment scheme, in which he raised about $500,000 for a nonexistent medical equipment business.

Return to main page

## SPECTRUM BRANDS DEFENDANT SETTLES SEC CASE

**By Stephanie Ayres**

**18 January 2005
Brooklyn, New York**

Robert J. Cassandro, a defendant in the SEC's civil case against promoters of Spectrum Brands Corporation, who allegedly played on fears of bio-terrorism in marketing the company's shares, settled with SEC on December 10, according to a December 28 statement from the SEC. The settlement includes a permanent injunction against future securities law violations, disgorgement and interest totalling about $1,000, payment of a $25,000 civil penalty, and permanent disqualification from practicing law before the SEC.

For more information on the Spectrum Brands case, see News story, "SEC case alleges stock promoters exploited bio-terror fears," October 14, 2004.

Return to main page

## GUILTY PLEA IN MARYLAND REAL ESTATE SCAM

**By Stephanie Ayres**

**18 January 2005
Baltimore, Maryland**

Robert Franklin Miller, who operated companies called American Funding and Investment Corporation and Greater Washington Legal Services, has pleaded guilty to four counts of felony theft in Baltimore County Circuit Court, according to a January 12 statement from the Maryland Attorney General's office.

In 2001 and 2002 Miller's companies ran ads in local newspapers claiming that Miller could help any mortgage seeker obtain a loan with a downpayment of $2,500. According to the Attorney General's January 12 statement, Miller falsely claimed to be an attorney and a real estate broker, but was neither. He allegedly showed properties to people who responded to his ads, signed real estate contracts with them, and accepted "downpayments" on the properties which he promised to hold in escrow until the sale closed. Miller allegedly never completed any sales and used the victims' money for personal purposes.

Return to main page

## FLORIDA BROKERS PLEAD GUILTY OVER MARKET TIMING

**By Stephanie Ayres**

**18 January 2005**
**Albany, New York**

Two executives of Kaplan and Company Securities, a broker-dealer based in Boca Raton, Florida, pleaded guilty to state criminal charges in New York over allegedly illegal practices in trading of mutual fund shares by Kaplan clients, according to a January 11 statement from the New York Attorney General's office.

The two brokers, Delano N. Sta. Ana and Lawrence S. Powell, were also named in SEC administrative orders which were settled with an agreement to pay a $750,000 fine and a permanent ban from the securities industry as a result of allegations that their role in helping a client engage in late trading of mutual fund shares constituted securities fraud.

According to the New York Attorney General's statement, Canary Capital Partners, reputedly one of the biggest mutual fund market-timers, was a Kaplan client.

For more information on mutual fund market timing and the role of Canary Capital Partners, see Feature story "A matter of timing: Hedge funds vs Mutual funds," September 2004.

Return to main page

## UNITED STATES MINT REGULATION TARGETS FRAUDULENT COIN PROMOTERS

**By Stephanie Ayres**

**19 January 2005**
**Washington, D.C.**

The United States Mint announced on January 12 that the Secretary of the Treasury has authorized a new regulation allowing the Mint to look into cases where private companies promoting commemorative-type coins use the names of the US Treasury or the US Mint in ways that are "confusing, misleading, and deceptive" in advertising. If an ad is found to falsely convey an impression that the Treasury or the Mint is associated with or approves a private issue of coins, the Mint would be authorized to impose a fine on the company offering the coins and the advertising, subject to provisions for notice and opportunity for hearing.

The new regulation is published in the Federal Register and on the US Mint's website. Its stated purpose is to protect consumers and collectors from misrepresentations in advertising which give a false impression that coins are legal tender when they are not.

For more information on cases brought by states on behalf of consumers in 2004, see News story "New York and Michigan get court action on coin sellers," November 12, 2004; on rare coin scams, see Feature story "Rare coin scams not a rarity," August 2004.

Return to main page

**FINANCIAL CRIME NEWS January 2005**
**© STEPHANIE AYRES 2005 ALL RIGHTS RESERVED**