EXHIBIT 7

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 54954 / December 18, 2006

INVESTMENT ADVISERS ACT OF 1940
Release No. 2572 / December 18, 2006

INVESTMENT COMPANY ACT OF 1940
Release No. 27601 / December 18, 2006

ADMINISTRATIVE PROCEEDING
File No. 3-12509

| | |
|---|---|
| In the Matter of<br><br>KAPLAN & CO.<br>SECURITIES, INC. AND<br>JED P. KAPLAN,<br><br>Respondents. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTIONS 203(e) AND 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTIONS 9(b) AND 9(f) OF THE INVESTMENT COMPANY ACT OF 1940 |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Section 203(e) of the Investment Advisers Act of 1940 ("Advisers Act"), and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Investment Company Act") against Kaplan & Co. Securities, Inc. ("Kaplan & Co.") and pursuant to Sections 15(b) and 21C of the Exchange Act, Section 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act against Jed P. Kaplan ("Kaplan"), (collectively referred to as "Respondents").

II.

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the

Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Sections 203(e) and 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offer, the Commission finds that:

### Respondents

1.      Kaplan & Co., located in Boca Raton, Florida, has been registered with the Commission as a broker-dealer since September 15, 1995 and as an investment adviser since March 21, 2003.  As a broker-dealer, Kaplan & Co. conducts retail brokerage business.  During the relevant period, Kaplan & Co., through its institutional timing group, assisted institutional investors, mainly hedge funds, in purchasing and redeeming shares of third party mutual funds.

2.      Kaplan is, and has been since September 15, 1995, the chief executive officer and control person of Kaplan & Co.  Kaplan, 41 years old, is a resident of Boca Raton, Florida.

### Overview

3.      These proceedings arise out of Respondents' failure reasonably to supervise two former Kaplan & Co. registered representatives, Lawrence S. Powell and Delano N. Sta.Ana, with a view to preventing their violations of the federal securities laws during a three-year period from January 2000 through early September 2003.  During that period, Powell and Sta.Ana established and co-headed Kaplan & Co.'s institutional timing group, and defrauded hundreds of mutual funds and their shareholders by engaging in deceptive practices designed to mislead funds as to the identity of Kaplan & Co.'s customers so that Powell and Sta.Ana could circumvent the funds' restrictions on market timing on behalf of Kaplan & Co. institutional customers.  Powell and Sta.Ana employed a variety of deceptive acts and practices, including misrepresenting the nature of the trades to mutual funds by using multiple clearing firms, multiple account numbers, multiple representative numbers, and multiple office codes, to hide their customers' identities from the funds to avoid the funds' restrictions on market timing.  In addition, Powell and Sta.Ana also engaged in a late-trading scheme that allowed their customers to enter mutual fund share trades based on post-market close news.  Through these activities, Powell and Sta.Ana violated the antifraud provisions of the federal securities laws and aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 promulgated under Section 22(c) of the Investment Company Act.[1]

---

[1]      On January 11, 2005, the Commission instituted and simultaneously settled public administrative and cease-and-desist proceedings against Powell and Sta.Ana finding violations of Section 10(b) of the Exchange Act

2

4.    Kaplan & Co. failed reasonably to supervise Powell and Sta.Ana with a view to preventing and detecting their violations of the federal securities laws. Kaplan & Co. failed to adopt adequate policies and procedures to monitor market timing and late trading so as to prevent and detect the fraudulent conduct described herein. In addition, Kaplan & Co. failed to have a system in place for implementing the limited policies and procedures that did exist.

5. .    Kaplan, the firm's principal, failed reasonably to supervise Powell and Sta.Ana with a view to preventing and detecting their violations of the federal securities laws. Kaplan delegated supervision of Powell and Sta.Ana to Powell, who held a Series 24 license, but Kaplan did not provide Powell with any specific instructions on how to fulfill the delegated responsibilities, failed to instruct Powell on any compliance or supervisory procedures, failed to train Powell on how to detect or avoid trading abuses, and did not follow-up on his supervisory delegation to Powell. Additionally, Kaplan did not develop adequate policies and procedures, and failed to follow existing policies and procedures to monitor Powell and Sta.Ana's activities. Further, Kaplan was aware that the institutional timing group submitted mutual fund trading orders that were sometimes rejected by mutual funds, and of other events that warranted inquiry, and failed to follow up and investigate these red flags.

6.    Kaplan & Co. also violated Rule 22c-1 under the Investment Company Act in its capacity as a dealer in certain mutual fund shares, receiving and executing orders for the purchase of those shares after the 4:00 p.m. ET stock market close.

7.    Kaplan & Co. also failed properly to maintain its brokerage business books and records by not maintaining records reflecting the time of entry and execution of mutual fund orders. Kaplan, as the firm's principal, failed to take steps so that Kaplan & Co. made and kept current certain brokerage business books and records that it was required to make and keep current, and was therefore responsible for the firm's failure.

## Powell and Sta.Ana's Misconduct

### Market Timing

8.    Powell and Sta.Ana implemented a fraudulent market timing scheme by effecting timing transactions in mutual funds on behalf of Kaplan & Co.'s institutional timing customers using, as part of the overall scheme, four strategies intended to deceive the mutual funds as to the customers' identities: multiple clearing firms, multiple account numbers, multiple registered representative numbers, and multiple office branch codes. Utilizing multiple clearing firms enabled Kaplan & Co.'s customers to hide their identities from the mutual funds by using the new clearing firm identifiers and account numbers associated with each new clearing firm, thus allowing continued market timing to go undetected. Multiple account numbers allowed the customers to use new accounts to continue their market timing activities after existing accounts had

---

and Rule 10b-5 thereunder, causing violations of Section 15(c)(1) of the Exchange Act, and causing violations of Rule 22c-1 of the Investment Company Act. <u>Lawrence S. Powell and Delano N. Sta.Ana</u>, Exch. Act Rel. No. 51017 (Jan. 11, 2005).

3

been banned for market timing because the mutual funds were misled into believing that the transactions did not originate from banned customers. Multiple registered representative numbers ("rep numbers") concealed the identities of the Kaplan & Co. registered representatives from mutual funds so that the funds could not identify a specific Kaplan & Co. rep number as a known market timer and ban further transactions effected by the registered representative associated with that rep number. Finally, multiple branch codes concealed the identity of the Kaplan & Co. Florida branch as the originating branch of the transactions to allow Kaplan & Co.'s customers to continue market timing in those funds that had previously banned them and Kaplan & Co.'s Florida branch.

## Late Trading

9.     Powell and Sta.Ana engaged in a fraudulent scheme to late trade mutual fund shares by effecting mutual fund trades for orders received after 4:00 p.m. ET, allowing their customers to receive the same-day net asset value ("NAV") pricing on those trades (as though the orders were received prior to the close of the stock market at 4:00 p.m. ET, the time as of which the funds calculated their NAV). This system allowed Kaplan & Co.'s customers to capitalize on news events or market changes occurring after the 4:00 p.m. ET stock market close. Kaplan & Co. was a dealer in certain mutual fund shares. Powell and Sta.Ana also engaged in the "next-day busting" of orders. On numerous occasions, the institutional timing group effected trades for customers and then called or e-mailed the clearing firm the following morning requesting that they contact the mutual fund and cancel or "bust" the trade. In some instances, the institutional timing group told the clearing firm that the order had been "erroneously entered," when in fact, the customer had simply changed its mind about placing the order.

## Kaplan & Co. and Kaplan Failed Reasonably to Supervise Powell and Sta.Ana

10.     Kaplan & Co. failed reasonably to supervise Powell and Sta.Ana with a view to preventing their violations of the federal securities laws. In particular, Kaplan & Co. failed to adopt, implement or follow adequate supervisory and compliance policies, procedures or systems which could have detected or prevented Powell and Sta.Ana's securities laws violations.

11.     Kaplan & Co. had insufficient systems in place to detect and prevent Powell and Sta.Ana from using fraudulent and deceptive practices to circumvent mutual fund restrictions on market timing. Kaplan & Co.'s Supervisory Procedures Manual ("Procedures Manual") contained policies and procedures concerning the review of customer accounts and firm correspondence; however, Kaplan & Co. had no systems to implement and enforce these policies and procedures. In addition, Kaplan & Co. had insufficient procedures and systems in place to detect and adequately respond to red flags and warnings of improper conduct, namely the numerous communications from mutual funds objecting to or questioning market timing trades. The only language in the Procedures Manual arguably related to mutual fund market timing was a section noting that trading in mutual fund shares, particularly on a short term basis, may raise the question of a rule violation. Notwithstanding this warning, the Procedures Manual contained no procedures for preventing and detecting this activity. Finally, Kaplan & Co. had no procedures to detect and prevent late trading by its employees.

4

12.     Kaplan failed reasonably to supervise Powell and Sta.Ana with a view to preventing their violations of the federal securities laws. During the relevant period, Kaplan was the firm's senior officer with supervisory responsibility over Powell and Sta.Ana. Kaplan did not reasonably delegate his supervisory responsibilities to Powell. Kaplan did not provide Powell with any specific instructions on how to fulfill the delegated responsibilities, failed to instruct Powell on any compliance or supervisory procedures and failed to train Powell on how to detect or avoid trading abuses. Additionally, Kaplan did not follow-up on his supervisory delegation to Powell, and, instead, improperly allowed Powell to supervise himself. Kaplan also failed to develop adequate policies and procedures designed to detect fraudulent market timing and late trading activities and did not follow what few policies and procedures did exist regarding review of correspondence and account statements, which may have detected Powell and Sta.Ana's market timing activities. He failed to periodically review Powell and Sta.Ana's correspondence, including e-mail correspondence, never reviewed the institutional timing group's business and failed to review the firm's mutual fund timing customers' account statements as delineated in the Procedures Manual.

13.     In addition, Kaplan knew that some mutual funds had rejected trades from the firm's institutional timing group, and knew that Powell and Sta.Ana had negotiated trading agreements with some mutual funds. He also knew that Powell and Sta.Ana obtained the ability to enter trades after 4:00 p.m. ET. Kaplan failed to adequately respond to these red flags. He did not investigate the reasons for or frequency of the numerous rejected trades and failed to investigate the negotiated agreements. Further, Kaplan never questioned the mutual fund trades that were entered after 4:00 p.m. ET.

14.     Kaplan also signed at least one dealer agreement with a distributor of various funds of a mutual fund family, under which Powell and Sta.Ana accepted and executed mutual fund share orders after 4:00 p.m. ET. Kaplan & Co. was a "dealer" under Rule 22c-1 of the Investment Company Act based on the direct agreement between a distributor of various funds of a mutual fund family and Kaplan & Co.

15.     Kaplan profited from Powell and Sta.Ana's fraudulent late trading and market timing. The profit was in the form of monies Powell and Sta.Ana's customers paid Kaplan & Co. in asset-based fees.

## Kaplan & Co. Violated Rule 22c-1 of the Investment Company Act

16.     Kaplan & Co. violated Rule 22c-1 of the Investment company Act because it received and executed orders for the purchase of mutual fund shares after the 4:00 p.m. ET close of the market, and those orders received the pre-4:00 p.m. ET price. Kaplan signed at least one dealer agreement under which Powell and Sta.Ana received and executed mutual fund share orders after 4:00 p.m. ET.

## Kaplan & Co. Failed to Properly Maintain
## Its Books and Records and Kaplan Aided and Abetted in that Failure

17.     Kaplan & Co. failed to properly maintain its brokerage business books and

5

records because the institutional timing group did not create and maintain a memorandum of each brokerage order and other instruction given or received for the purchase or sale of a security for each mutual fund trade, in the format of trade blotters, order tickets, or otherwise. For the time period May 2, 2003 through September 2003, Kaplan & Co. failed to maintain the time of receipt of its institutional mutual fund orders. Kaplan did nothing to ensure that the firm properly maintained its books and records.

## Powell and Sta.Ana's Violations

18.     As a result of the conduct described above, Powell and Sta.Ana willfully violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in connection with the purchase or sale of securities, willfully aided and abetted and caused violations of Section 15(c)(1) of the Exchange Act, which prohibits a broker-dealer from using interstate facilities or the mails to effect or induce transactions in securities "by means of any manipulative, deceptive, or other fraudulent device or contrivance," and willfully aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 of the Investment Company Act, which prohibits dealers in a fund's securities from effecting a trade in that mutual fund's shares at the current day's NAV if they received the order after the mutual fund calculated that day's NAV.

## Kaplan & Co.'s and Kaplan's Violations

### Failure to Supervise

19.     Section 15(b)(4)(E) of the Exchange Act requires broker-dealers reasonably to supervise persons subject to their supervision, with a view toward preventing violations of the federal securities laws. See e.g., Dean Witter Reynolds, Inc., Exchange Act Rel. No. 46578 (October 1, 2002). The Commission has emphasized that the "responsibility of broker-dealers to supervise their employees by means of effective, established procedures is a critical component in the federal investor protection scheme regulating the securities markets." Id. Section 15(b)(4)(E) of the Exchange Act provides for the imposition of a sanction against a broker or dealer who "has failed reasonably to supervise, with a view to preventing violations of the securities laws, another person who commits such a violation, if such other person is subject to his supervision." Section 15(b)(6)(A)(i) parallels Section 15(b)(4)(E) and provides for the imposition of sanctions against persons associated with a broker or dealer.

20.     As a result of the conduct described above, Kaplan & Co. and Kaplan failed reasonably to supervise Powell and Sta.Ana with a view to detecting and preventing their violations of the federal securities laws.

### Rule 22c-1 of the Investment Company Act

21.     Rule 22c-1 of the Investment Company Act provides that "[n]o registered investment company issuing any redeemable security, no person designated in such issuer's prospectus as authorized to consummate transactions in any such security, and no principal

underwriter of, or dealer in any such security shall sell, redeem, or repurchase any such security except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security."

22.    As a result of the conduct described above, Kaplan & Co. willfully violated Rule 22c-1 promulgated under Section 22 of the Investment Company Act.

### Books and Records

23.    Section 17(a)(1) of the Exchange Act provides that each member of a national securities exchange, broker, or dealer "shall make and keep for prescribed periods such records, furnish copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this title." Rule 17a-3(a)(6) requires all registered brokers and dealers to maintain a memorandum, such as a trade blotter, of each brokerage order and other instruction given or received for the purchase or sale of a security. Effective May 2, 2003, the rule specifically requires the broker or dealer to note on the memorandum the time at which it received the order.

24.    As a result of the conduct described above, Kaplan & Co. willfully violated, and Kaplan willfully aided and abetted and caused Kaplan & Co.'s violations of, Section 17(a) of the Exchange Act and Rule 17a-3 thereunder.

### <u>Undertakings</u>

25.    <u>Ongoing Cooperation by Kaplan & Co.</u>  Kaplan & Co. undertakes to cooperate fully with the Commission in any and all investigations, litigations or other proceedings relating to or arising from the matters described in this Order.  In connection with such cooperation, Kaplan & Co. has undertaken:

A.    To produce, without service of a notice or subpoena, any and all documents and other information reasonably requested by the Commission's staff;

B.    To use its best efforts to cause its employees to be interviewed by the Commission's staff at such times as the staff reasonably may direct;

C.    To use its best efforts to cause its employees to appear and testify truthfully and completely without service of a notice or subpoena in such investigations, depositions, hearings or trials as may be requested by the Commission's staff; and

D.    That in connection with any testimony of Kaplan & Co. to be conducted at deposition, hearing or trial pursuant to a notice or subpoena, Kaplan & Co.:

i.    Agrees that any such notice or subpoena for Kaplan & Co.'s appearance and testimony may be served by regular mail on its counsel, Ira Lee Sorkin, Esq.,

7

Dickstein Shapiro Morin & Oshinsky LLP, 1177 Avenue of the Americas, New York, New York 10036-2714; and

        ii.     Agrees that any such notice or subpoena for Kaplan & Co.'s appearance and testimony in an action pending in a United States District Court may be served, and may require testimony, beyond the territorial limits imposed by the Federal Rules of Civil Procedure.

        26.     <u>Ongoing Cooperation by Kaplan</u>.  Kaplan undertakes to cooperate fully with the Commission in any and all investigations, litigations or other proceedings relating to or arising from the matters described in this Order.  In connection with such cooperation, Kaplan has undertaken:

        A.     To produce, without service of a notice or subpoena, any and all documents and other information reasonably requested by the Commission's staff;

        B.     To be interviewed by the Commission's staff at such times as the staff reasonably may request and to appear and testify truthfully and completely without service of a notice or subpoena in such investigations, depositions, hearings or trials as may be requested by the Commission's staff; and

        C.     That in connection with any testimony of Kaplan to be conducted at deposition, hearing or trial pursuant to a notice or subpoena, Kaplan:

        i.     Agrees that any such notice or subpoena for his appearance and testimony may be served by regular mail on his counsel, Ira Lee Sorkin, Esq., Dickstein Shapiro Morin & Oshinsky LLP, 1177 Avenue of the Americas, New York, New York 10036-2714; and

        ii.     Agrees that any such notice or subpoena for his appearance and testimony in an action pending in a United States District Court may be served, and may require testimony, beyond the territorial limits imposed by the Federal Rules of Civil Procedure.

        27.     <u>Independent Compliance Consultant.</u>  Kaplan & Co. undertakes to, within 30 days of the issuance of the Order, hire an independent compliance consultant ("Consultant"), not unacceptable to the Commission staff, to review and evaluate the effectiveness of Kaplan & Co.'s supervisory and compliance systems, policies and procedures designed to detect and prevent violations of the federal securities laws concerning: (1) review of incoming and outgoing correspondence, including electronic correspondence such as e-mail; (2) mutual fund market timing activity; (3) mutual fund late trading activity; and (4) supervision of branch offices.  In connection with the hiring of the Consultant, Kaplan & Co. undertakes the following:

        A.     The Consultant's expenses shall be borne exclusively by Kaplan & Co. Kaplan & Co. shall cooperate fully with the Consultant and shall provide the Consultant with access to its files, books, records, and personnel as reasonably requested for the review. Kaplan & Co. shall cause the review to begin no later than 60 days after the issuance of this Order.

B.    At the conclusion of the review, which in no event shall be more than 120 days after the date of this Order, Kaplan & Co. shall cause the Consultant to submit to Kaplan & Co. and to the Commission's staff a written Initial Report. The Initial Report shall describe the review performed and the conclusions reached, and will include any recommendations deemed necessary to make the policies, procedures, and system of supervision and compliance adequate.

C.    Within 30 days of receipt of the Initial Report, Kaplan & Co. shall in writing respond to the Initial Report. In such response, Kaplan & Co. shall advise the Consultant and the Commission's staff of the recommendations from the Initial Report that it has determined to accept and the recommendations that it considers to be unduly burdensome. With respect to any recommendation that Kaplan & Co. deems unduly burdensome, Kaplan & Co. may propose an alternative policy, procedure or system designed to achieve the same objective or purpose.

D.    Kaplan & Co. and the Consultant shall attempt in good faith to reach agreement within 180 days of the date of this Order with respect to any recommendation that Kaplan & Co. deems unduly burdensome. If the Consultant and Kaplan & Co. are unable to agree on an alternative proposal, Kaplan & Co. shall abide by the recommendation of the Consultant.

E.    Within 200 days of the date of this Order, Kaplan & Co. shall, in writing, advise the Consultant and the Commission's staff of the recommendations and proposals that it is adopting.

F.    Kaplan & Co. shall cause the Consultant to complete the aforementioned review and submit a written Final Report to Kaplan & Co. and to the Commission's staff within 230 days of the date of this Order. The Final Report shall recite the efforts the Consultant undertook to review Kaplan & Co.'s supervisory and compliance policies, procedures, and systems as set forth in paragraph 27; set forth its conclusions and recommendations; and describe how Kaplan & Co. is implementing those recommendations.

G.    Kaplan & Co. shall take all necessary and appropriate steps to adopt and implement all recommendations contained in the Consultant's Final Report.

H.    No later than one year after the date of the Consultant's Final Report, Kaplan & Co. shall cause the Consultant to conduct a follow-up review of Kaplan & Co.'s efforts to implement the recommendations contained in the Final Report, and Kaplan & Co. shall cause the Consultant to submit a follow-up report to the Commission's staff. The follow-up report shall set forth the details of Kaplan & Co.'s efforts to implement the recommendations contained in the Final Report, and shall state whether Kaplan & Co. has fully complied with the recommendations in the Final Report.

I.    For good cause shown, and upon receipt of a timely application from the Consultant or Kaplan & Co., the Commission's staff may extend any of the procedural dates set forth above.

J.    To ensure the independence of the Consultant, Kaplan & Co.: (a) shall not

9

have the authority to terminate the Consultant without the prior written approval of the Commission's staff; (b) shall compensate the Consultant, and persons engaged to assist the Consultant, for services rendered pursuant to this Order at their reasonable and customary rates; (c) shall not be in and shall not have an attorney-client relationship with the Consultant and shall not seek to invoke the attorney-client or any other privilege or doctrine to prevent the Consultant from transmitting any information, reports, or documents to the Commission staff; and (d) during the period of engagement and for a period of two years after the engagement, shall not enter into any employment, customer, consultant, attorney-client, auditing, or other professional relationship with the Consultant.

K.    Kaplan & Co. shall cause the Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Kaplan & Co., or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Southeast Regional Office Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Kaplan & Co., or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

28.    <u>Kaplan's Agreement to Re-take the Series 24 License Examination.</u>
Kaplan shall re-take the Series 24 License Examination within nine months of the issuance of this Order.

29.    <u>Kaplan's Provision of Affidavit.</u>  Kaplan shall provide to the Commission, within 30 days after the end of the nine-month suspension period described below, an affidavit that he has complied fully with the sanctions described in Section IV.E. below.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents Kaplan & Co.'s and Kaplan's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, Sections 203(e) and 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act, it is hereby ORDERED that:

A.    Kaplan & Co. shall cease and desist from committing or causing any violations and any future violations of Rule 22c-1 under the Investment Company Act;

B.    Kaplan & Co. shall cease and desist from committing or causing any violations and any future violations of Section 17(a)(1) of the Exchange Act and Rule 17a-3 thereunder;

10

C.    Kaplan shall cease and desist from causing any violations and any future violations of Section 17(a)(1) of the Exchange Act and Rule 17a-3 thereunder;

D.  Kaplan & Co. and Kaplan are hereby censured;

E.  Kaplan shall be, and hereby is, suspended from association in a supervisory capacity with any broker, dealer or investment adviser for a period of nine months, effective on the second Monday following the entry of this Order;

F.  IT IS FURTHER ORDERED that Respondents Kaplan & Co. and Kaplan shall pay, jointly and severally, within 10 days of the entry of this Order, disgorgement of $46,521.60 and prejudgment interest of $3,478.40, for a total amount of $50,000, to the United States Treasury. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan & Co. and Kaplan as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131; and

G.  IT IS FURTHER ORDERED that Respondent Kaplan & Co. shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the United States Treasury.  Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan & Co. as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

H.  IT IS FURTHER ORDERED that Respondent Kaplan shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the United States Treasury.  Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement,

11

Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

    I.   Kaplan & Co. shall comply with the undertaking specified in Paragraph 27 above.

    J.   Kaplan shall comply with the undertaking specified in Paragraph 29 above.


By the Commission.


               Nancy M. Morris
               Secretary

EXHIBIT 8

SEC NEWS DIGEST

Issue 2006-242                                        December 18, 2006

RULES AND RELATED MATTERS

SEC JOINTLY ISSUES WITH THE BOARD OF GOVERNORS OF THE FEDERAL  RESERVE
SYSTEM RULES FOR COMMENT TO IMPLEMENT BANK BROKER PROVISIONS

SEC Issues Companion Proposal Concerning Bank  Dealer  Activities  and
Order Extending Temporary Exemption for Banks from the  Definition  of
"Broker"

The Commission issued for comment, jointly with the Board of Governors
of the Federal Reserve System (Board), rules  to  implement  the  bank
broker provisions of the Securities Exchange Act of  1934  as  Release
No. 34-54946. The  Commission  also  issued  a  companion   proposal
concerning certain bank dealer activities and other related matters as
Release No. 34-54947. In addition, the Commission issued the temporary
exemption of banks from the definition of "broker" until July 2,  2007
as Order Release No. 34-54948. (Press Rel. 2006-211)

ENFORCEMENT PROCEEDINGS

SEC DISCIPLINES AUDITOR FOR IMPROPER PROFESSIONAL  CONDUCT  IN  MUTUAL
FUND AUDITS

On December 15, the Commission issued an  Order  Making  Findings  and
Imposing  Remedial  Sanctions  Pursuant  to  Rule  102(e)  of   the
Commission's Rules of Practice (Order) against James T.  McCurdy,  CPA
(McCurdy). In the Order, the Commission found that  McCurdy,  formerly
the Managing Partner of McCurdy & Associates CPAs, Inc. in  Cleveland,
Ohio, engaged in  improper  professional  conduct  during  his  firm's
audits of the financial statements of the Liquid  Green  Money  Market
Fund (Liquid Green) for the fiscal year ended Sept. 30, 2001, and  the
financial statements of the Florida Street Bond Fund (Florida  Street)
for the fiscal years ended Oct. 31, 1999 and Oct.  31,  2000.  Without
admitting or denying the  Commission's  findings,  McCurdy  agreed  to
settle the proceedings by consenting to a finding that he  engaged  in
improper professional conduct and a  prohibition  from  appearing  or
practicing before the Commission as an accountant, with  a  right  to
apply for  reinstatement  after  three  years.  In  the  Order,  the
Commission found that during the 2001 Liquid Green audit, McCurdy, who
was the concurring review partner, became aware that more than half of
the securities in the  fund's  portfolio  had  stated  maturity  dates
exceeding the 397  day  period  set  forth  in  Rule  2a-7  under  the
Investment Company Act of 1940, but nevertheless  he  did  not  ensure
that the engagement partner performed audit  procedures  to  determine
whether the securities were in fact eligible for a money market  fund.
As a result, McCurdy  failed  to  detect  that  the  fund's  financial
statements and related notes  contained  material  misrepresentations,
including that Liquid Green was a "money market fund" and that it  was
proper for the fund to use the amortized  cost  method  to  value  its
portfolio securities.  Because  he  did  not  require  the  engagement

partner to audit Liquid Green's financial statements properly and did not do so himself, McCurdy allowed his firm to issue an audit report with an unqualified opinion falsely representing that Liquid Green's financial statements fairly presented the fund's financial position in conformity with generally accepted accounting principles (GAAP) and that McCurdy & Associates had conducted its audit in accordance with generally accepted auditing standards (GAAS).

In the Order, the Commission found that with respect to the 1999 and 2000 Florida Street audits, McCurdy assigned inexperienced auditors as engagement partners and designated himself as the concurring review partner. Because McCurdy did not require the engagement partner to audit Florida Street's 1999 financial statements properly, and did not do so himself, he failed to detect that the fund was accruing and carrying interest for bonds that had missed interest payments, were in default, or had previously been sold and were no longer held by the fund, that the fund's interest receivable balance was overstated, and that, as a result, Florida Street's financial statements were not fairly presented in conformity with GAAP. After Florida Street's interest accounting problems came to light during the 2000 Florida Street audit, McCurdy allowed his firm to issue an audit report with an unqualified audit opinion on Florida Street's financial statements even though they failed to disclose the overstated interest receivable and the resulting repricing, interest write-offs and return of capital to shareholders. Furthermore, despite knowing that a portion of the interest Florida Street wrote off during the fiscal year ended Oct. 31, 2000, related to the prior fiscal year ended Oct. 31, 1999, McCurdy did not require the recording of a prior period adjustment or take any steps to determine whether Florida Street should restate its financial statements for prior periods. (Rel. 34-54945; AAE Rel. No. 2525; File No. 3-12322)

IN THE MATTER OF CALNEVA CAPITAL CORP.

An Administrative Law Judge has issued an Order Making Findings and Revoking Registrations by Default as to Casino Casino, Inc., FDN, Inc., and Unique Video Products, Inc. (Default Order) in the matter of Calneva Capital Corp. The Order Instituting Proceedings (OIP) alleged that these Respondents failed to comply with Section 13(a) of the Securities Exchange Act of 1934 (Exchange Act) and Exchange Act Rules 13a-1 and 13a-13 by failing to file required periodic reports for several years. The Default Order finds the allegations in the OIP to be true and revokes the registration of each class of securities that these Respondents have registered with the Commission, pursuant to Section 12(j) of the Exchange Act. (Rel. 34-54950; File No. 3-12474)

SEC ORDERS THAT TONINO LABELLA BE BARRED FROM ASSOCIATION WITH ANY BROKER OR DEALER

On December 18, the Commission ordered Tonino Labella to be barred from associating with any broker or dealer. From February 1999 to February 2002, Labella owned 75 percent of Bryn Mawr Investment Group, Inc., a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act, which later was known as Valley Forge Securities, Inc. (Valley Forge), and acted as its Chairman and Chief Executive Officer. Labella was also a registered representative associated with Valley Forge. On Oct. 26, 2006, Labella pled guilty to one count of conspiracy to commit securities fraud and wire fraud and one count of wire fraud. United States v. Labella, 05 Cr. 87 (D.N.J.). The counts of the criminal indictment to which Labella pled guilty

alleged that Labella, using various instrumentalities of interstate commerce, defrauded investors while working at Valley Forge by recruiting and paying certain registered representatives and unregistered individuals undisclosed, excessive cash commissions for selling stock.

Based upon Labella's criminal conviction, the Commission instituted, and simultaneously settled, an administrative proceeding pursuant to Section 15(b) of the Securities Exchange Act of 1934. Labella consented, without admitting or denying the Commission's findings, except the finding concerning his criminal conviction, to an order barring him from association with any broker or dealer. (Rel. 34-54951; File No. 3-12507)

IN THE MATTER OF KAPLAN & CO. SECURITIES, INC. AND JED KAPLAN

KAPLAN & CO. SECURITIES, INC., BROKER-DEALER/INVESTMENT ADVISER, AND ITS PRINCIPAL, SETTLE FAILURE TO SUPERVISE CHARGES RELATED TO MUTUAL FUND MARKET TIMING AND LATE TRADING ACTIVITIES BY FORMER REGISTERED REPRESENTATIVES

On December 18, the Commission issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Sections 203(e) and 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 (Order) against Kaplan & Co. Securities, Inc. (Kaplan & Co.), a Boca Raton-based broker-dealer and investment adviser, and its chief executive officer, Jed P. Kaplan. The Order finds that from 2000 through early September 2003, Kaplan & Co. and Kaplan failed reasonably to supervise two former Kaplan & Co. brokers, that Kaplan & Co. violated Rule 22c-1 promulgated under the Investment Company Act, which prohibits late trading, and failed to properly maintain its books and records by failing to maintain records reflecting the time of receipt of mutual fund orders, and that Kaplan aided and abetted in the firm's books and records violations.

Based on the above, the Order suspends Kaplan from association in a supervisory capacity with any broker, dealer or investment adviser for nine months, and requires Kaplan & Co. to cease and desist from committing or causing violations or future violations of Rule 22c-1 under the Investment Company Act, Kaplan & Co. to cease and desist from committing or causing, and Kaplan to cease and desist from causing, violations or future violations of Section 17(a)(1) of the Securities Exchange Act of 1934 and Rule 17a-3 thereunder. The Order also censures the firm and Kaplan and requires them to comply with certain specified undertakings, including Kaplan & Co.'s retention of an independent compliance consultant to conduct a comprehensive review of Kaplan & Co.'s policies and procedures related to correspondence, market timing, late trading, and branch office supervision. Additionally, Kaplan & Co. and Kaplan will pay $46,521.60, jointly and severally, in disgorgement, plus $3,478.40 in prejudgment interest, and $50,000 each in penalties. Kaplan & Co. and Kaplan consented to the issuance of the Order without admitting or denying any of its findings. (Rel. 34-54954; IA-2572; IC-27601; File No. 3-12509)

COMMISSION SETTLES CHARGES AGAINST JAMES SMITH

The Commission announced that it has settled its previously filed

# EXHIBIT 9

15 of 55 DOCUMENTS

Copyright 2006 Associated Press
All Rights Reserved
Associated Press Financial Wire

December 20, 2006 Wednesday 10:58 PM GMT

**SECTION:** BUSINESS NEWS

**LENGTH:** 353 words

**HEADLINE:** Kaplan & Co and CEO to pay total $150,000 in SEC settlement over mutual fund trading

**BYLINE:** By SIOBHAN HUGHES, Dow Jones Newswires

**DATELINE:** WASHINGTON

**BODY:**

Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual fund trades.

The Securities and Exchange Commission late Monday imposed a $50,000 civil penalty on Kaplan and ordered the Boca Rata, Fla.-based firm to pay another $50,000 civil penalty. Together, both must also pay $50,000 in disgorgement, representing the return of improperly earned money.

The settlement represents an effort to follow through on a broader three-year-old regulatory probe of market timing and late trading. Market timing involves frequent buying and selling of mutual fund shares, a practice that mutual funds have discouraged in part because it distorts investment strategies. Late trading involves trading fund shares after the close of trading while receiving that day's price in effect placing bets without the risks of betting incorrectly.

"When enforcement actions continue to be warranted, we're still going to bring them," said Glenn Gordon, associate regional director in the SEC's Miami office.

The SEC found that Kaplan had failed to respond to red flags involving Lawrence Powell and Delano Sta. Ana, two brokers who previously headed Kaplan's institutional timing group. The SEC said that Kaplan knew that the timing group submitted trades that were rejected by mutual funds, but didn't follow up to investigate. Powell and Sta. Ana in early 2005 agreed to pay a combined $750,000 to settle SEC charges that they had schemed to defraud mutual-fund investors.

"It was a failure to supervise two individuals who unbeknownst to him were engaged in market timing and late trading, and he consented without admitting or denying wrongdoing," said Kaplan's attorney, Ira Lee Sorkin. Powell and Sta. Ana had also settled without admitting or denying wrongdoing.

Kaplan had cleared the trades through Bear Stearns & Co., which earlier this year agreed to pay $250 million to settle with the SEC. Kaplan no longer processes trades through Bear Stearns, according to Sorkin.

**LOAD-DATE:** December 21, 2006

Fund Operations Executive



# The Financial Portal

Financial Portal > News : Finance Jobs

## FINANCIAL NEWS

- Stock Investing
- Stock Advices
- Company news
- World business headlines
- Economic news and numbers
- Market news from Wall Street
- Bonds
- IPOs
- Technology
- Personal Finance
- Funds
- Insurance
- Taxes
- Finance Jobs

- Senior Product Analyst
- Consumer Reports
- Best used-car programs
- Commodity accountant
- Middle Office Equity
- Derivatives Manager
- Prime Broking Client Relations
- European stock trading platform
- Reader's Digest
- Vietnam trade
- Energy & Power Analyst

## Fund Operations Executive

Read more about :

▶ Fund Operations Executive

The Macquarie Bank Group ("Macquarie") provides specialist investment, advisory and financial services in select markets around

(Investment Banking Jobs: eFinancialCareers.co.uk)

▶ Related Folks : Discover financial services | Investment Manager | Investment Manager, Chief Investment | Directors and Senior Executive fund | Directors and Senior | Investment Manager |

▶ Director of Hedge Fund Operations to $$175,000 + Bonus - Robert Half Finance & Accounting - Newark, NJ USA Position Type: Full Time. A global financial service leader is seeking an experienced director of Hedge Fund Operations. The perfect... (Yahoo! HotJobs: Accounting/Finance)

▶ Related Folks : Hedge Fund Operations... | Hedge Fund Administration | Hedge Fund |

▶ Operations / Middle Office Exec (Hedge Fund)

YAHOO! HotJobs!

eFINANCIALCAREERS

Fund Operations Executive

Are you currently in an operations environment in an investment bank / asset manager / custodian and looking for the chance to de
*(Investment Banking Jobs: eFinancialCareers.co.uk)*

▶ Related Folks : [redacted]

**Buy-Side Investment Executive - ACAs wanted** [redacted]
**Principal Investments Team**

Major investment with substantial assets under management [redacted]
*(Investment Banking Jobs: eFinancialCareers* [redacted]

▶ Related Folks : [redacted]

▶ **Fund Accounting Operations Manager, Large Inv Bank, 55k**

A rapidly expanding Investment Bank is looking for a Fund Accounting (NAV) Manager to come into their hugely successful UK
Fund Ac
*(Investment Banking Jobs: eFinancialCareers.co.uk)*

▶ Related Folks : [redacted]

**Fund Accounting Operations Manager, Large Inv Bank** [redacted]

A rapidly expanding Investment Bank is looking [redacted]
Fund Ac
*(Investment Banking Jobs: eFinancialCareers* [redacted]

▶ Related Folks : [redacted]

▶ **Kaplan, CEO to Pay Total $150,000 to SEC (AP)**

Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to
supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual fund trades.
*(Yahoo! Finance: Mutual Fund News)*

▶ Related Folks : [redacted]

Kaplan & Co., CEO to pay total $150,000 in SEC settlement - MarketWatch        Page 1 of 1



HOME        **MARKETS**

Global Markets        Emerging Markets        Earnings Watch

# Kaplan & Co., CEO to pay total $150,000 in SEC settlement

*By Siobhan Hughes*
*Last Update: 5:38 PM ET Dec 20, 2006*

**WASHINGTON (MarketWatch) -- Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual-fund trades.**

The Securities and Exchange Commission late Monday imposed a $50,000 civil penalty on Kaplan and ordered the firm to pay another $50,000 civil penalty. Together, both must also pay $50,000 in disgorgement, representing the return of improperly earned money.

The settlement represents an effort to follow through on a broader three-year-old regulatory probe of market timing and late trading. Market timing involves frequent buying and selling of mutual fund shares, a practice that mutual funds have discouraged in part because it distorts investment strategies. Late trading involves trading fund shares after the close of trading while receiving that day's price - in effect placing bets without the risks of betting incorrectly.

"When enforcement actions continue to be warranted, we're still going to bring them," said Glenn Gordon, associate regional director in the SEC's Miami office.

The SEC found that Kaplan had failed to respond to red flags involving Lawrence Powell and Delano Sta. Ana, two brokers who previously headed Kaplan's institutional timing group. The SEC said that Kaplan knew that the timing group submitted trades that were rejected by mutual funds, but didn't follow up to investigate. Powell and Sta. Ana in early 2005 agreed to pay a combined $750,000 to settle SEC charges that they had schemed to defraud mutual-fund investors.

"It was a failure to supervise two individuals who unbeknownst to him were engaged in market timing and late trading and he consented without admitting or denying wrongdoing," said Kaplan's attorney, Ira Lee Sorkin. Powell and Sta. Ana had also settled without admitting or denying wrongdoing.

Kaplan had cleared the trades through Bear Stearns & Co. (BSC), which earlier this year agreed to pay $250 million to settle with the SEC. Kaplan no longer processes trades through Bear Stearns, according to Sorkin.

-Contact: 201-938-5400 ■

Site Index  |  Archive  |  Help  |  Feedback  |  Membership  |  Premium Products  |  RSS  |  Podcasts  |  Company Info  |  A
Dow Jones Online Network:
WSJ.com  |  Barron's Online  |  BigCharts  |  Virtual Stock Exchange  |  All Things Digital  |  MarketWatch Sync
CareerJournal.com  |  CollegeJournal.com  |  OpinionJournal.com  |  RealEstateJournal.com  |  StartupJournal.com

MarketWatch

Copyright © 2007 MarketWatch, Inc. All rights reserved.
By using this site, you agree to the Terms of Service and Privacy Policy (updated 4/3/03). A
revised Privacy Policy will be effective 06/26/07. Click here for more information.
Kaplan & Co., CEO to pay total $150,000 in SEC settlement - MarketWatch

Intraday data provided by Comstock, a division of
end current end-of-day data provided by FT Intera
current financial status. Intraday data delayed 15 :
IndexesSM from Dow Jones & Company, Inc. SEI
delayed. All quotes are in local exchange time.



International
Fund
Investment

Home | News | Magazine | Subscriptions | Podcasts

**News**

Commodities
Exchange Traded Funds
Exotic Alternatives
Fund Servicing
Hedge Funds
Mutual Funds
People Moves
Private Equity
Real Estate

Subscribe to
newsletter

Magazine

**News**

Date Published: 26 Dec 2006

### Kaplan & Co Pays $150,000 To Settle SEC Mutual Fund Allegations

Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 in fines levied by the Securities and Exchange Commission (SEC) to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge fund clients to make inappropriate mutual fund trades.

The SEC imposed a $50,000 civil penalty on Kaplan and ordered the firm to pay another $50,000 civil penalty. Together, both must also pay $50,000 in disgorgement, which represents the return of improperly earned money.

The settlement is the latest in a series of regulatory probes of market timing and late trading going back three years.

The SEC found in this case that Kaplan had failed to respond to warning signs about two brokers who previously headed Kaplan's institutional timing group. The two brokers in early 2005 agreed to pay a combined $750,000 to settle SEC charges.

All parties settled without admitting or denying wrongdoing.

send to a friend        comment        print        bookmark



IFI Magazine

June 2007

IAI Magazine



April - May 2007

**Magazine Archive**

Media Kit



Hedgefunder - Everything Hedge Fund - Kaplan, CEO to Pay Total $150,000 to SEC - Ev...    Page 1 of 2

**HedgeFunder - All about Hedge Funds :**   home | news | `RSS`

## Kaplan, CEO to Pay Total $150,000 to SEC

### Hedge Fund Ticker

»3i Builds on Financial Services Track Recor Investment in Leading Hedge Fund Administr (PR Newswire via Yahoo! Finance)

»BBVA Plans to Hire 240 Derivatives Banke (Update1) (Bloomberg.com)

»BBVA Plans to Hire 240 Derivatives Banke (Update2) (Bloomberg.com)

»Riskdata Research Shows That 30% of Func Illiquid Securities ...

»The Bank of New York Ranked Number On Magazine's Tri-party ...

»Storm clouds gather around a surging LSE

»Milan shares slightly lower midday; Alitalia market

»Shareholders Approve Metrologic Buyout

»Hedge Fund, Manager, to Pay Almost $500, Case

»Easy listening and easy buying make easy pi Tesco and Asda

»Albemarle Announces Senior Leadership Ch

»Enron: Beyond the Verdicts

»House panel opposes new derivatives

»Super-sub Drogba sends Chelsea through

»Newcastle report US takeover interest

»FBR Paying $7.7 Million in Settlement

»FBR paying $7.7 million in settlement

»FBR Paying $7.7 Million in Settlement

»FBR Paying $7.7 Million in Settlement

»FBR paying $7.7 Million in settlement

»FBR paying $7.7 million in settlement

»FBR agrees to pay $7.7 million to settle insi charges

»FBR paying $7.7 million in settlement

»Spinoff Set by Summer for Discover

»BofA buys stake in Brazilian airline

»Drogba Gets Winner as Chelsea Advances ii Spurs Win

»Goldman chief?s $53.4m windfall

»Yanks in move to net Toon

»Further Innovation From VCs: FF Class Sto

»Love and Marriage, Hedge-Fund Style

»Hedge Fund Investing

»C# Developer/ Hedge Fund - Eric Robert As Stamford, CT

»Hedge Funds of Funds: Lousy Deal for Inve Deal for I-Banks (SeekingAlpha via Yahoo! F

»Activist Hedge Fund Manager Ackman Acc Ceridian (CEN) Stake (SeekingAlpha via Yah

»26 more stocks in F&O list (The Hindu)

»Foreign Bank Derivatives Booming (donga.

---

### Kaplan, CEO to Pay Total $150,000 to SEC

Published in: MSN Search: hedge fund December 20th, 2006

Kaplan, CEO to Pay Total $150,000 to SEC

Forbes - Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual fund trades. The ...

---

Related Content

## UPDATE 1-Bankruptcy filing said possible for Refco LLC

Published in: MSN Search: hedge fund November 9th, 2005

UPDATE 1-Bankruptcy filing said possible for Refco LLC

Reuters - ... believed to still be in the process

are Man Financial, the brokerage arm of British hedge fund firm Man Group Plc ...

---

### Tipster exposes mutual fund scandal

Published in: MSN Search: hedge fund July 24th, 2006

Tipster exposes mutual fund scandal

Malaysia Sun, Malaysia - 3 hours ago
Whistleblower Noreen Harrington tipped off investigators to the scandal, which involved **hedge** funds making improper mutual **fund** trades and ripping off small ...

---

### NFL Seeks Dismissal of Hedge Fund Suit

Published in: MSN Search: hedge fund August 22nd, 2006

NFL Seeks Dismissal of Hedge Fund Suit

Quad-Cities Times - ATLANTA - The NFL and its union say a lawsuit filed by six current and former players seeking to recoup $20 million they lost in an alleged fraud scheme should be dismissed, arguing in part that league players are solely responsible for their own ...

---

»House panel opposes new derivatives (The I Times)
»First rapeseed oil derivatives contract (Finan
»FBR to Pay Regulators $7.7 Million to Reso Related to ...
»Metrologic Shareholders Approve Merger A

General Contractor
Identity Theft
Investment Fraud
401(k) Retirement Planning
Forex
Financing

 **easy**BOURSE

● inscrivez vous, c'est gratuit

| | OK | ACCUEIL | LE CLUB DES PROS | FORUMS | |



# Kaplan & Co., CEO To Pay Total $150,000 In SEC Settlement

Wednesday December 20th, 2006 / 23h13



ional

a - Deals
iews

s - Taux - Synthèse

Etude graphique
ier - International

marchés
placements
les réglementations

- mais d'où ca vient ?
nots - finance fiction
jeu Bull & Bear
& Bear, la rencontre

finance - formations
uteurs - offres
s - international



By Siobhan Hughes Of DOW JONES NEWSWIRES WASHINGTON -(Dow Jones)- Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual-fund trades.

The Securities and Exchange Commission late Monday imposed a $50,000 civil penalty on Kaplan and ordered the firm to pay another $50,000 civil penalty. Together, both must also pay $50,000 in disgorgement, representing the return of improperly earned money.

The settlement represents an effort to follow through on a broader three-year-old regulatory probe of market timing and late trading. Market timing involves frequent buying and selling of mutual fund shares, a practice that mutual funds have discouraged in part because it distorts investment strategies. Late trading involves trading fund shares after the close of trading while receiving that day's price - in effect placing bets without the risks of betting incorrectly.

"When enforcement actions continue to be warranted, we're still going to bring them," said Glenn Gordon, associate regional director in the SEC's Miami office.

The SEC found that Kaplan had failed to respond to red flags involving Lawrence Powell and Delano Sta. Ana, two brokers who previously headed Kaplan's institutional timing group. The SEC said that Kaplan knew that the timing group submitted trades that were rejected by mutual funds, but didn't follow up to investigate. Powell and Sta. Ana in early 2005 agreed to pay a combined $750,000 to settle SEC charges that they had schemed to defraud mutual-fund investors.

"It was a failure to supervise two individuals who unbeknownst to him were engaged in market timing and late trading, and he consented without admitting or denying wrongdoing," said Kaplan's attorney, Ira Lee Sorkin. Powell and Sta. Ana had also settled without admitting or denying wrongdoing.

Kaplan had cleared the trades through Bear Stearns & Co. (BSC), which earlier this year agreed to pay $250 million to settle with the SEC. Kaplan no longer processes trades through Bear Stearns, according to Sorkin.

- By Siobhan Hughes, Dow Jones Newswires; 202-862-6654; Siobhan.Hughes@dowjones.com

Wednesday December 20th, 2006 / 23h13

provided by: DowJones Business News



| Enter Symbol(s) or Keyword(s) | GO | Advanced Se |

HOME    **MARKETS**

Global Markets    Emerging Markets    Earnings Watch

# Kaplan & Co., CEO to pay total $150,000 in SEC settlement

*By Siobhan Hughes*
*Last Update: 5:38 PM ET Dec 20, 2006*

**WASHINGTON (MarketWatch) -- Kaplan & Co. Securities Inc. and its chief executive, Jed Kaplan, have agreed to pay $150,000 to settle allegations of failing to supervise two former brokers who allegedly arranged for hedge-fund clients to make abusive mutual-fund trades.**

The Securities and Exchange Commission late Monday imposed a $50,000 civil penalty on Kaplan and ordered the firm to pay another $50,000 civil penalty. Together, both must also pay $50,000 in disgorgement, representing the return of improperly earned money.

The settlement represents an effort to follow through on a broader three-year-old regulatory probe of market timing and late trading. Market timing involves frequent buying and selling of mutual fund shares, a practice that mutual funds have discouraged in part because it distorts investment strategies. Late trading involves trading fund shares after the close of trading while receiving that day's price - in effect placing bets without the risks of betting incorrectly.

"When enforcement actions continue to be warranted, we're still going to bring them," said Glenn Gordon, associate regional director in the SEC's Miami office.

The SEC found that Kaplan had failed to respond to red flags involving Lawrence Powell and Delano Sta. Ana, two brokers who previously headed Kaplan's institutional timing group. The SEC said that Kaplan knew that the timing group submitted trades that were rejected by mutual funds, but didn't follow up to investigate. Powell and Sta. Ana in early 2005 agreed to pay a combined $750,000 to settle SEC charges that they had schemed to defraud mutual-fund investors.

"It was a failure to supervise two individuals who unbeknownst to him were engaged in market timing and late trading and he consented without admitting or denying wrongdoing," said Kaplan's attorney, Ira Lee Sorkin. Powell and Sta. Ana had also settled without admitting or denying wrongdoing.

Kaplan had cleared the trades through Bear Stearns & Co. (BSC), which earlier this year agreed to pay $250 million to settle with the SEC. Kaplan no longer processes trades through Bear Stearns, according to Sorkin.

-Contact: 201-938-5400 ■

Site Index  |  Archive  |  Help  |  Feedback  |  Membership  |  Premium Products  |  RSS  |  Podcasts  |  Company Info  |  A
Dow Jones Online Network:
WSJ.com  |  Barron's Online  |  BigCharts  |  Virtual Stock Exchange  |  All Things Digital  |  MarketWatch Sync
CareerJournal.com  |  CollegeJournal.com  |  OpinionJournal.com  |  RealEstateJournal.com  |  StartupJournal.com

**MarketWatch**

Copyright © 2007 MarketWatch, Inc. All rights reserved.
By using this site, you agree to the Terms of Service and Privacy Policy (updated 4/3/03). A
revised Privacy Policy will be effective 08/26/07. Click here for more information.
Kaplan & Co., CEO to pay total $150,000 in SEC settlement - MarketWatch

Intraday data provided by Comstock, a division of
and current end-of-day data provided by FT Intera
current financial status. Intraday data delayed 15 i
IndexesSM from Dow Jones & Company, Inc. SEI
delayed. All quotes are in local exchange time.

EXHIBIT 10

# Trademark/Service Mark Application, Principal Register

Serial Number: 78620791
Filing Date: 05/02/2005

The table below presents the data as entered.

| | |
|---|---|
| **MARK SECTION** | |
| MARK | L.F. Rothschild & Company |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | L.F. Rothschild & Company |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **OWNER SECTION** | |
| NAME | KAPLAN, JED,P. |
| STREET | 17729 MIDDLEBROOK WAY |
| CITY | BOCA RATON |
| STATE | Florida |
| ZIP/POSTAL CODE | 33496 |
| COUNTRY | United States |
| PHONE | 561-414-6050 |
| FAX | 561-613-4728 |
| EMAIL | KAPLANSEC@AOL.COM |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **LEGAL ENTITY SECTION** | |
| TYPE | INDIVIDUAL |
| COUNTRY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES SECTION** | |
| DESCRIPTION | FINANCIAL |
| FILING BASIS | Section 1(b) |
| **SIGNATURE SECTION** | |
| SIGNATURE | /JED KAPLAN/ |
| SIGNATORY NAME | JED KAPLAN/ |
| SIGNATORY DATE | 05/02/2005 |

| SIGNATORY POSITION | OWNER |
|---|---|
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 325 |
| TOTAL AMOUNT | 325 |
| **CORRESPONDENCE SECTION** | |
| NAME | KAPLAN, JED,P. |
| STREET | 17729 MIDDLEBROOK WAY |
| CITY | BOCA RATON |
| STATE | Florida |
| ZIP/POSTAL CODE | 33496 |
| COUNTRY | United States |
| EMAIL | KAPLANSEC@AOL.COM |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **FILING INFORMATION** | |
| SUBMIT DATE | Mon May 02 12:26:56 EDT 2005 |
| TEAS STAMP | USPTO/BAS-205188117132-20 050502122656401192-786207 91-20032f9c0b7c259ee13673 17da64118fd9-CC-1076-2005 0502122458743307 |

PTO Form 1879 (Rev 6/2005)
OMB No. 0651 0009 (Exp xx-xx-xxxx)

## Trademark/Service Mark Application, Principal Register

### Serial Number: 78620791
### Filing Date: 05/02/2005

### To the Commissioner for Trademarks:

**MARK:** (Standard Characters, see mark)
The mark consists of standard characters, without claim to any particular font, style, size, or color.
The literal element of the mark consists of L.F. Rothschild & Company.
The applicant, JED,P. KAPLAN, a citizen of United States, residing at 17729 MIDDLEBROOK WAY, BOCA RATON, Florida, United States, 33496, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).
      International Class _____: FINANCIAL
The USPTO is authorized to communicate with the applicant or its representative at the following email address: KAPLANSEC@AOL.COM.
A fee payment in the amount of $325 will be submitted with the application, representing payment for 1 class(es).

### Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /JED KAPLAN/  Date: 05/02/2005
Signatory's Name: JED KAPLAN
Signatory's Position: OWNER
Mailing Address:
    KAPLAN, JED,P.
    17729 MIDDLEBROOK WAY
    BOCA RATON, Florida 33496
RAM Sale Number: 1076
RAM Accounting Date: 05/02/2005
Serial Number: 78620791
Internet Transmission Date: Mon May 02 12:26:56 EDT 2005
TEAS Stamp: USPTO/BAS-205188117132-2005050212265640I
192-78620791-20032f9c0b7c259ce1367317da6
41f8fd9-CC-1076-20050502122458743307

# L.F. Rothschild & Company

EXHIBIT 11

# Trademark/Service Mark Application, Principal Register

**Serial Number: 78871037**
**Filing Date: 04/27/2006**

**The table below presents the data as entered.**

| | |
|---|---|
| **MARK SECTION** | |
| MARK | L.F. ROTHSCHILD |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | L.F. ROTHSCHILD |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **OWNER SECTION** | |
| NAME | Jed P. Kaplan |
| STREET | 17729 Middlebrook Way |
| CITY | Boca Raton |
| STATE | FL |
| ZIP/POSTAL CODE | 33496 |
| COUNTRY | United States |
| PHONE | (561) 613-4728 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **LEGAL ENTITY SECTION** | |
| TYPE | INDIVIDUAL |
| COUNTRY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 036 |
| DESCRIPTION | FINANCIAL SERVICES |
| FILING BASIS | Section 1(b) |
| **SIGNATURE SECTION** | |
| SIGNATURE | /Bruce H. Sales/ |
| SIGNATORY NAME | Bruce H. Sales |
| SIGNATORY DATE | 04/27/2006 |

| SIGNATORY POSITION | Attorney of Record |
|---|---|
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 325 |
| TOTAL AMOUNT | 325 |
| PAYMENT METHOD | DA |
| **ATTORNEY** | |
| NAME | Bruce H. Sales |
| FIRM NAME | Lerner, David, Littenberg, Krumholz & Mentlik, LLP |
| STREET | 600 South Avenue West |
| CITY | Westfield |
| STATE | NJ |
| ZIP/POSTAL CODE | 07090 |
| COUNTRY | United States |
| PHONE | (908) 518-6311 |
| FAX | (908) 654-0415 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| ATTORNEY DOCKET NUMBER | KAPLAN 10.0-001 |
| OTHER APPOINTED ATTORNEY(S) | Raymond W. Augustin, Joseph F. Bender-Zanoni, Daniel H. Bobis, Frank J. Borchetta, Richard J. Botos, Michael D. Braunstein, April M. Capati, Scott E. Charney, Raymond B. Churchill, Jr., Orville R. Cockings, David L. Cohen, Harvey L. Cohen, Robert B. Cohen, Jonathan A. David, Sidney David, Jeffrey S. Dickey, Mayankkumar M. Dixit, Michael J. Doherty, Arnold B. Dompiert, Kelly I. Dunham, Russell W. Faegenburg, Thomas M. Finetti, Shawn P. Foley, Raymond Garguilo, Jr., Gregory S. Gewirtz, Keith E. Gilman, Stephen B. Goldman, Michael T. Hages, Matthew B. Hanley, Douglas T. Hudson, Kelly Y. Hwang, Andrea Jo Kamage, Samantha M. Kameros, Charles P. Kennedy, Paul H. Kochanski, Kevin M. Kocun, Arnold H. Krumholz, Andrew T. Lane, Lawrence I. Lerner, Joseph S. Littenberg, William L. Mentlik, Marcus J. Millet, Daryl K. Neff, John R. Nelson, George K. Ng, Thomas M. Palisi, Gregg A. Paradise, Bruno Polito, Steven L. Procaccini, Stacie L. Ropka, Stephen F. Roth, Lawrence E. Russ, Bruce H. Sales, Dennis M. Smid, Michael H. Teschner, Roy H. Wepner, Daniel J. Woods, Andrew T. Zidel |
| **CORRESPONDENCE SECTION** | |
| NAME | Bruce H. Sales |
| FIRM NAME | Lerner, David, Littenberg, Krumholz & Mentlik, LLP |
| STREET | 600 South Avenue West |
| CITY | Westfield |
| STATE | NJ |
| ZIP/POST AL CODE | 07090 |

| COUNTRY | United States |
|---|---|
| PHONE | (908) 518-6311 |
| FAX | (908) 654-0415 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **FILING INFORMATION** | |
| SUBMIT DATE | Thu Apr 27 13:59:07 EDT 2006 |
| TEAS STAMP | USPTO/BAS-20799950-200604 27135907363609-78871037-2 00a4d39762e5e3da1bbac5b49 5f2ae53f6-DA-1594-2006042 7135736888542 |

PTO Form 1478 (Rev. 4-2005)
OMB No. 0651-0009 (Exp 10-31-xxxx)

## Trademark/Service Mark Application, Principal Register

Serial Number: 78871037
Filing Date: 04/27/2006

## To the Commissioner for Trademarks:

**MARK:** (Standard Characters, see mark)
The mark consists of standard characters, without claim to any particular font, style, size, or color.
The literal element of the mark consists of L.F. ROTHSCHILD.
The applicant, Jed P. Kaplan, a citizen of United States, residing at 17729 Middlebrook Way, Boca Raton, FL, United States, 33496, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).
    International Class 036: FINANCIAL SERVICES
The applicant hereby appoints Bruce H. Sales and Raymond W. Augustin, Joseph F. Bender-Zanoni, Daniel H. Bobis, Frank J. Borchetta, Richard J. Botos, Michael D. Braunstein, April M. Capati, Scott E. Charney, Raymond B. Churchill, Jr., Orville R. Cockings, David L. Cohen, Harvey L. Cohen, Robert B. Cohen, Jonathan A. David, Sidney David, Jeffrey S. Dickey, Mayankkumar M. Dixit, Michael J. Doherty, Arnold B. Dompieri, Kelly I. Dunham, Russell W. Faegenburg, Thomas M. Finetti, Shawn P. Foley, Raymond Garguilo, Jr., Gregory S. Gewirtz, Keith E. Gilman, Stephen B. Goldman, Michael T. Hages, Matthew E. Hanley, Douglas T. Hudson, Kelly Y. Hwang, Andrea Jo Kamage, Samantha H. Kameros, Charles P. Kennedy, Paul H. Kochanski, Kevin M. Kocun, Arnold H. Krumholz, Andrew T. Lane, Lawrence I. Lerner, Joseph S. Littenberg, William L. Mentlik, Marcus J. Millet, Daryl K. Neff, John R. Nelson, George K. Ng, Thomas M. Palisi, Gregg A. Paradise, Bruno Polito, Steven L. Procaccini, Stacie L. Ropka, Stephen F. Roth, Lawrence E. Russ, Bruce H. Sales, Dennis M. Smid, Michael H. Teschner, Roy H. Wepner, Daniel J. Woods, Andrew T. Zidel of Lerner, David, Littenberg, Krumholz & Mentlik, LLP, 600 South Avenue West, Westfield, NJ, United States, 07090 to submit this application on behalf of the applicant. The attorney docket/reference number is KAPLAN 10.0-001.
The USPTO is authorized to communicate with the applicant or its representative at the following email address: trademarkadmin@ldlkm.com.
A fee payment in the amount of $325 will be submitted with the application, representing payment for 1 class(es).
### Declaration
The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to

use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /Bruce H. Sales/   Date: 04/27/2006
Signatory's Name: Bruce H. Sales
Signatory's Position: Attorney of Record
Mailing Address:
   Bruce H. Sales
   600 South Avenue West
   Westfield, NJ 07090
RAM Sale Number: 1594
RAM Accounting Date: 04/27/2006
Serial Number: 78871037
Internet Transmission Date: Thu Apr 27 13:59:07 EDT 2006
TEAS Stamp: USPTO/BAS-20799950-20060427135907363609-
78871037-200a4d39762e5e3da1bbac5b495f2ae
53f6-DA-1594-20060427135736888542

# L.F. ROTHSCHILD

# EXHIBIT 12

# Trademark/Service Mark Application, Principal Register

**Serial Number: 78876788**
**Filing Date: 05/04/2006**

### The table below presents the data as entered.

| | |
|---|---|
| **MARK SECTION** | |
| MARK | L.F. ROTHSCHILD & COMPANY |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | L.F. ROTHSCHILD & COMPANY |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **OWNER SECTION** | |
| NAME | Jed P. Kaplan |
| STREET | 17729 Middlebrook Way |
| CITY | Boca Raton |
| STATE | FL |
| ZIP/POSTAL CODE | 33496 |
| COUNTRY | United States |
| PHONE | (561) 414-6050 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **LEGAL ENTITY SECTION** | |
| TYPE | INDIVIDUAL |
| COUNTRY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 036 |
| DESCRIPTION | FINANCIAL SERVICES |
| FILING BASIS | Section 1(b) |
| **SIGNATURE SECTION** | |
| SIGNATURE | /Bruce H. Sales/ |
| SIGNATORY NAME | Bruce H. Sales |
| SIGNATORY DATE | 05/04/2006 |

| SIGNATORY POSITION | Attorney of Record |
|---|---|
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 325 |
| TOTAL AMOUNT | 325 |
| PAYMENT METHOD | DA |
| **ATTORNEY** | |
| NAME | Bruce H. Sales |
| FIRM NAME | Lerner, David, Littenberg, Krumholz & Mentlik, LLP |
| STREET | 600 South Avenue West |
| CITY | Westfield |
| STATE | NJ |
| ZIP/POSTAL CODE | 07090 |
| COUNTRY | United States |
| PHONE | 908-654-5000 |
| FAX | 908-654-7866 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| ATTORNEY DOCKET NUMBER | KAPLAN 10.0-002 |
| OTHER APPOINTED ATTORNEY(S) | Raymond W. Augustin, Joseph F. Bender-Zanoni, Daniel H. Bobis, Frank J. Borchetta, Richard J. Botos, Michael D. Braunstein, April M. Capati, Scott E. Charney, Raymond B. Churchill, Jr., Orville R. Cockings, David L. Cohen, Harvey L. Cohen, Robert B. Cohen, Jonathan A. David, Sidney David, Jeffrey S. Dickey, Mayankkumar M. Dixit, Michael J. Doherty, Arnold B. Dompieri, Kelly I. Dunham, Russell W. Faegenburg, Thomas M. Finetti, Shawn P. Foley, Raymond Garguilo, Jr., Gregory S. Gewirtz, Keith E. Gilman, Stephen B. Goldman, Michael T. Hages, Matthew E. Hanley, Douglas T. Hudson, Kelly Y. Hwang, Andrea Jo Kamage, Samantha M. Kameros, Charles P. Kennedy, Paul H. Kochanski, Kevin M. Kocun, Arnold H. Krumholz, Andrew T. Lane, Lawrence I. Lerner, Joseph S. Littenberg, William L. Mentlik, Marcus J. Millet, Daryl K. Neff, John R. Nelson, George K. Ng, Thomas M. Palisi, Gregg A. Paradise, Bruno Polito, Steven L. Procaccini, Stacie L. Ropka, Stephen F. Roth, Lawrence E. Russ, Bruce H. Sales, Dennis M. Smid, Michael H. Teschner, Roy H. Wepner, Daniel J. Woods, Andrew T. Zidel |
| **CORRESPONDENCE SECTION** | |
| NAME | Bruce H. Sales |
| FIRM NAME | Lerner, David, Littenberg, Krumholz & Mentlik, LLP |
| STREET | 600 South Avenue West |
| CITY | Westfield |
| STATE | NJ |
| ZIP/POSTAL CODE | 07090 |

| COUNTRY | United States |
| --- | --- |
| PHONE | 908-654-5000 |
| FAX | 908-654-7866 |
| EMAIL | trademarkadmin@ldlkm.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **FILING INFORMATION** | |
| SUBMIT DATE | Thu May 04 16:57:25 EDT 2006 |
| TEAS STAMP | USPTO/BAS-20799964-200605 04165725947308-78876788-2 003c7fd7fe16ebc46b8b8a967 c211aa6fe-DA-383-20060504 165641597040 |

## Trademark/Service Mark Application, Principal Register

### Serial Number: 78876788
### Filing Date: 05/04/2006

## To the Commissioner for Trademarks:

**MARK:** (Standard Characters, see mark)
The mark consists of standard characters, without claim to any particular font, style, size, or color.
The literal element of the mark consists of L.F. ROTHSCHILD & COMPANY.
The applicant, Jed P. Kaplan, a citizen of United States, residing at 17729 Middlebrook Way, Boca Raton, FL, United States, 33496, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).
    International Class 036: FINANCIAL SERVICES
The applicant hereby appoints Bruce H. Sales and Raymond W. Augustin, Joseph F. Bender-Zanoni, Daniel H. Bobis, Frank J. Borchetta, Richard J. Botos, Michael D. Braunstein, April M. Capati, Scott E. Charney, Raymond B. Churchill, Jr., Orville R. Cockings, David L. Cohen, Harvey L. Cohen, Robert B. Cohen, Jonathan A. David, Sidney David, Jeffrey S. Dickey, Mayankkumar M. Dixit, Michael J. Doherty, Arnold B. Dompieri, Kelly I. Dunham, Russell W. Faegenburg, Thomas M. Finetti, Shawn P. Foley, Raymond Garguilo, Jr., Gregory S. Gewirtz, Keith E. Gilman, Stephen B. Goldman, Michael T. Hages, Matthew E. Hanley, Douglas T. Hudson, Kelly Y. Hwang, Andrea Jo Kamage, Samantha M. Kameros, Charles P. Kennedy, Paul H. Kochanski, Kevin M. Kocun, Arnold H. Krumholz, Andrew T. Lane, Lawrence I. Lerner, Joseph S. Littenberg, William L. Mentlik, Marcus J. Millet, Daryl K. Neff, John R. Nelson, George K. Ng, Thomas M. Palisi, Gregg A. Paradise, Bruno Polito, Steven L. Procaccini, Stacie L. Ropka, Stephen F. Roth, Lawrence E. Russ, Bruce H. Sales, Dennis M. Smid, Michael H. Teschner, Roy H. Wepner, Daniel J. Woods, Andrew T. Zidel of Lerner, David, Littenberg, Krumholz & Mentlik, LLP, 600 South Avenue West, Westfield, NJ, United States, 07090 to submit this application on behalf of the applicant. The attorney docket/reference number is KAPLAN 10.0-002.
The USPTO is authorized to communicate with the applicant or its representative at the following email address: trademarkadmin@ldlkm.com.
A fee payment in the amount of $325 will be submitted with the application, representing payment for 1 class(es).
### Declaration
The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to

use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /Bruce H. Sales/   Date: 05/04/2006

Signatory's Name: Bruce H. Sales

Signatory's Position: Attorney of Record

Mailing Address:
   Bruce H. Sales
   600 South Avenue West
   Westfield, NJ 07090

RAM Sale Number: 383

RAM Accounting Date: 05/05/2006

Serial Number: 78876788

Internet Transmission Date: Thu May 04 16:57:25 EDT 2006

TEAS Stamp: USPTO/BAS-20799964-20060504165725947308-78876788-2003c7fd7fe16ebc46b8b8a967c211a a6fe-DA-383-20060504165641597040

# L.F. ROTHSCHILD & COMPANY

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

Dec 20, 2006

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   78/876,788

2. Mark:
   L.F. ROTHSCHILD & COMPANY
   Standard Character Mark

3. International Class(es):
   36

4. Publication Date:
   Jan 9, 2007

5. Applicant:
   Kaplan, Jed P.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA 15250-7954
Phone: 202-512-1800

By direction of the Commissioner.

Correspondence Address:

BRUCE H. SALES
LERNER, DAVID, LITTENBERG, KRUMHOLZ & ME
600 SOUTH AVE W
WESTFIELD, NJ 07090-1404

TMP&I

# EXHIBIT 13



Welcome!

Login / New Account    Order
PRODUCTS        MY ACCOUNT        RENEW        PROGRAMS        WHOIS        HELP        ABOUT

Domain Names    Email Services    Website Hosting    Website Design    Website Marketing    Website Security

Home > Find Domain Holder

# Find Domain Name Holder



## Request This Name

No Upfront Fees! Express your interest in obtaining lfrothschild.com if it becomes available on a no-obligation basis.

## Whois Result for lfrothschild.com @ whois.melbourneit.com

**Registrant**

| | |
|---|---|
| Name | Kaplan & Co. Securities Inc. |
| Address | 150 E Palmeto Park Road Ste 450 |
| Address | Boca Raton |
| Address | 33432-4083 |
| Address | FL |
| Address | UNITED STATES |

**Domain**

| | |
|---|---|
| Name | lfrothschild.com |
| CreatedDate | 2005-04-29 |
| UpdatedDate | 2007-02-20 |
| ExpiresDate | 2008-04-29 |
| NameServer | NS1.SECURE.NET |
| NameServer | NS2.SECURE.NET |
| Status | clientTransferProhibited |

**AdminContact**

| | |
|---|---|
| Name | Steven Grossman |
| Address | 150 E Palmeto Park Road Ste 450 |
| Address | Boca Raton |
| Address | 33432-4083 |
| Address | FL |
| Address | UNITED STATES |
| Email | Sgrossman@kaplansecurities.com |
| Phone | 561-613-4727 |

Find the holder of a Domain Name

Melbourne IT

**TechContact**

| | |
|---|---|
| *Name* | Domain Administrator |
| *Address* | PO Box 3895 |
| *Address* | Englewood |
| *Address* | 80155 |
| *Address* | CO |
| *Address* | UNITED STATES |
| *Email* | verioiservercp@domainservices.com |
| *Phone* | +180.14370220 |

© 2007 Melbourne IT Ltd    Contact us | Site Map | Site Feedback | Policies | Privacy Policy | Careers

Domain Name Registration | Melbourne IT Corporate | Online Business Guide | Domain Name Renewals | Corporate Brand Services Management |
searchzone.com.au | Software as a Service

EXHIBIT 14



**LF ROTHSCHILD**

- HOME
- CONTACT US
- SEC RULE 606 REPORT
- CONTINUITY PLANNING

OUR COMPANY
INVESTING WITH IN
FIXED INCOME
IMPORTANT LINKS
EMPLOYMENT OPPOR

French | Espanol

*"Providing Full Service Financial Expertise to Retail and Institutional Clients"*

CLIENT LOGIN

**Mission Statement**

LF Rothschild is a value oriented investment firm focusing on a broad range of securities and insurance products. Our approach in seeking value is comprehensive, with an emphasis on risk aversion being a primary focus. For all investments we independently value each security before concluding our investment decisions. As a general rule for our bond accounts, broad diversification is primary. We invest only in investment grade instruments. For our equity accounts we focus on a limited number of securities that we believe have a compelling value. We employ fundamental and technical reviews of these positions on a regular basis. Our non-proprietary products and services represent what we consider to be core, fundamental strategies for serious investors. We seek to mitigate risk by adhering to independent, disciplined investment strategies, which we believe will be less volatile over time than those offered by other financial institutions.

LF Rothschild



# LF ROTHSCHILD

- ⋈ HOME
- ⊠ CONTACT US
- ⋈ SEC RULE 606 REPORT
- ⋈ CONTINUITY PLANNING

OUR COMPANY

INVESTING WITH IN

FIXED INCOME

IMPORTANT LINKS

EMPLOYMENT OPPOR

French | Español

"Innovation, Integrity, Implementation"

CLIENT LOGIN

THE LF ROTHSCHILD

**Jed Kaplan President**
email: jkaplan@lfrothschild.com

Specialty: U.S Government and Agency Bonds, Collateralized Mortgage Obligations; bond portfolio evaluation; expert witness
Years of experience in the financial industry: 20

A former institutional bond trader in New York for JP Morgan, Lehman Brothers, Nikko, and Prudential Securities, Jed has gained such respect in the financial arena that he is consulted by many of the largest banking and brokerage institutions in the world on corporate and government bonds. He has consulted for the FBI, SEC, NASD, and major financial institutions. Jed's vision and high standards have driven the firm to success in its unique team approach.

**Mark Scheinbaum Managing Director**
email: mscheinbaum@lfrothschild.com

Specialty: Investment strategy; asset allocation

previous | next



**LF ROTHSCHILD**

- HOME
- CONTACT US
- SEC RULE 606 REPORT
- CONTINUITY PLANNING

OUR COMPANY
INVESTING WITH IN
FIXED INCOME
IMPORTANT LINKS
EMPLOYMENT OPPOR

French | Espanol

"Innovation, Integrity, Implementation"

CLIENT LOGIN

THE LF ROTHSCHILD

**Services for the Individual or Corporation**
- Investment Strategy
- Portfolio Management
- Retirement Planning
- Asset Allocation
- Financial Planning
- Brokerage
- Estate Settlement

**Non-Proprietary Products**
- Bonds
- Mutual Funds
- Municipal Bonds
- Stocks
- Trusts
- CDs
- Annuities
- Insurance



EXHIBIT 15



**PIPER RUDNICK GRAY CARY**

**DLA Piper Rudnick Gray Cary US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
T 212.835.6000
F 212.835.6001
W www.dlapiper.com

ANDREW L. DEUTSCH
andrew.deutsch@dlapiper.com
T 212.835.6080  F 212.835.6001

July 21, 2005

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Jed P. Kaplan
17729 Middlebrook Way
Boca Raton, Florida 33496

Re:    L.F. ROTHSCHILD & COMPANY

Dear Mr. Kaplan:

We are counsel to N.M. Rothschild & Sons Limited of London, England, the well-known merchant banking firm, Rothschild & Compagnie Banque, which runs a banking business in Paris, and Rothschild North America, Inc. and its wholly-owned subsidiaries, including Rothschild, Inc., which conducts an investment and merchant banking business in New York and elsewhere in the United States. We also represent various other companies affiliated with the clients listed above. Our clients and their affiliates conduct merchant banking and other financial services businesses throughout the United States and the world. As you are no doubt aware, the "Rothschild" name and mark for banking and financial services is world-famous and has been used by our clients for many years. It is one of the strongest and most respected names in the financial and investment industries. Our clients have taken and will continue to take all necessary measures to protect the "Rothschild" name and mark and the goodwill and public association attached to it.

You should further be aware that in April 1993, one of our clients purchased all right, title and interest in the L.F. Rothschild mark from L.F. Rothschild & Co., Incorporated.

We have learned that on or about May 2, 2005, you filed an intent-to-use application in the United States Patent and Trademark Office to register the term L.F. ROTHSCHILD & COMPANY for use in International Class 36 for financial services, under Application Serial No. 78620791. Please be advised that our clients view this application, and any proposed use of the L.F. ROTHSCHILD mark, as a clear attempt to deceive the public and unfairly trade on the public recognition of the "Rothschild" name and mark. Such use would constitute trademark and infringement and dilution under federal and state trademark law, and deceptive trade practices and unfair competition under state law.

Serving clients globally



Mr. Jed P. Kaplan
July 21, 2005
Page 2

In the event of such use, our client may be entitled to preliminary and permanent injunctive relief, as well as damages and/or a recovery of your profits, which may, in the discretion of the court, be trebled or otherwise enhanced. Our client may also be entitled, in such circumstances, to recover attorney's fees. In addition, our clients will oppose any registration of the L.F. ROTHSCHILD mark, should it be published for opposition by the USPTO.

Accordingly, we demand that you immediately cease and desist from any use of the name or mark L.F. ROTHSCHILD, or any combination of that name or mark with other words, and that you provide us with written confirmation that you have ceased use of that mark and have withdrawn your trademark application with the USPTO. Please be advised that if, after receiving this notice, you use the mark in commerce, we will regard such use as willful infringement and will seek the enhanced damages that are available under law.

Please understand that our clients attach the highest significance to protection of their name and marks and will undertake any and all legal steps to prevent violation of their rights.

Sincerely yours,

Andrew L. Deutsch

/ald

~NEWY1:3939344.v1

EXHIBIT 16

UNITED STATES POSTAGE

$ 04.42⁰
PITNEY BOWES
02 1A
0004396594   JUL 21 2005
MAILED FROM ZIP CODE 10020

FIRST CLASS

CERTIFIED MAIL

7002 0860 0000 1

CERTIFIED MAIL, RETURN
RECEIPT REQUESTED

Mr. Jed P. Kaplan
17729 Middlebrook Way
Boca Raton, Florida 33496

DLA PIPER RUDNICK
GRAY CARY



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Andrew L. Deutsch
DLA Piper@udnick Gray Cary US LP
1251 Avenue of the Americas
New York, New York 10021

# EXHIBIT 17





# ROTHSCHILD

*Rothschild is a pre-eminent global investment bank* with a 200 year old history of providing innovative financial advice and the highest quality of execution for its clients. Rothschild is one of the few remaining privately-held investment banks giving the firm an unique long-term perspective on its clients, business and career development.  Rothschild consistently ranks in the top tier of financial advisors globally.  Year-to-date, Rothschild ranked 8th in Worldwide M&A[1].

Rothschild North America is a leading financial advisor to top tier clients, specializing in Mergers & Acquisitions, Restructuring and Private Placements of Debt and Equity.  In all its product areas, Rothschild concentrates on providing a diverse range of financial solutions for its clients.   In the U.S. the firm has over 100 investment banking professionals focused on providing trusted, independent advice in a broad range of industries as well as those who focus specifically on industries such as telecommunications, financial institutions, natural resources, media, chemicals, and utilities.  Rothschild North America is rapidly growing its U.S. business while at the same time taking advantage of the firm's strong international presence to execute large, complex cross-border transactions.

Rothschild strives to attract the best talent based on ability, qualifications and the needs of our business.

## Rothschild On-Campus Events:

| Event | Date | Location |
|---|---|---|
| 2nd Year Presentation & Case Study | Tuesday, September 21 12:00 PM | Huntsman Hall Room 260 |
| 2d Year Resume Submission | Friday, October 1 | |
| 2nd Year Interviews | Friday, October 22 | On-Campus |

[1] Dealogic July 1, 2004.  Announced deals by value

www.rothschild.com

 ROTHSCHILD

※ℝ ROTHSCHILD

1251 Avenue of the Americas
New York, New York 10020

Telephone (212) 403-3500
www.rothschild.com

**※ R ROTHSCHILD**

With compliments

Rothschild Inc
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Telephone (212) 403-3500
Facsimile (212) 403-3501

**※R ROTHSCHILD**

# EXHIBIT 18



