# EXHIBIT 3



Home | Previous Page

**U.S. Securities and Exchange Commission**

**UNITED STATES OF AMERICA**
Before the
**SECURITIES AND EXCHANGE COMMISSION**

SECURITIES EXCHANGE ACT OF 1934
Release No. 51017 / January 11, 2005

INVESTMENT ADVISERS ACT OF 1940
Release No. 2342 / January 11, 2005

INVESTMENT COMPANY ACT OF 1940
Release No. 26722 / January 11, 2005

ADMINISTRATIVE PROCEEDING
File No. 3-11794

| | |
|---|---|
| In the Matter of<br><br>LAWRENCE S. POWELL AND DELANO N. STA.ANA,<br><br>Respondents. | CORRECTED<br><br>ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTION 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTIONS 9(b) AND 9(f) OF THE INVESTMENT COMPANY ACT OF 1940 |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Section 203(f) of the Investment Advisers Act of 1940 ("Advisers Act"), and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Investment Company Act") against Lawrence S. Powell and Delano N. Sta.Ana ("Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have each submitted an Offer of Settlement ("Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which

Lawrence S. Powell and Delano N. Sta.Ana: Admin. Proc. Rel. No. 34-51017 / January 1... Page 2 of 6

Case 1:07-cv-06261-AKH   Document 7-4   Filed 07/18/2007   Page 3 of 7

the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, Respondents consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Section 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

### Summary

1. Over the course of three and a half years, Respondents engaged in a course of business that operated as a fraud and deceit in connection with the market timing and late trading of mutual fund shares on behalf of institutional customers. Respondents engaged in this misconduct, from early 2000 through approximately September 2003, while they established and co-headed the (now defunct) institutional mutual fund group of Kaplan & Co. Securities, Inc. ("Kaplan & Co.").

### Respondents

2. Respondents were registered representatives associated with Kaplan & Co., a Florida-based broker-dealer and an investment adviser registered with the Commission, from approximately January 2000 through October 2003. Respondent Powell, 40 years old, is a resident of Palm Beach Gardens, Florida. Respondent Sta.Ana, 31 years old, is a resident of Boca Raton, Florida.

### Other Relevant Entities

3. Kaplan & Co., located in Boca Raton, Florida, has been registered with the Commission as a broker-dealer since September 15, 1995 and as an investment adviser since March 21, 2003. As a broker-dealer, Kaplan & Co. assisted institutional investors, mainly hedge funds, in purchasing and redeeming shares of third party mutual funds.

### Respondents' Misconduct

### Market Timing

4. From 2000 through approximately September 2003 (the "relevant period"), Respondents advised their customers that establishing multiple brokerage accounts would enhance the customers' ability to circumvent mutual fund restrictions concerning excessive trading. Kaplan & Co. routinely opened multiple accounts on behalf of its timing customers so that when a mutual fund prohibited further transactions by a specific customer's account due to market timing abuses, the customer could still continue to market time the fund through a different, already established, account. This

Lawrence S. Powell and Delano N. Sta.Ana: Admin. Proc. Rel. No. 34-51017 / January 1... Page 3 of 6

Case 1:07-cv-06261-AKH    Document 7-4    Filed 07/18/2007    Page 4 of 7

allowed Kaplan & Co.'s customers to use new accounts to continue their market timing activities after existing accounts had been banned for market timing because the mutual funds did not recognize the transactions as originating from banned customers.

5. During the relevant period, Respondents used multiple registered representative numbers ("rep numbers") to further evade detection by the mutual funds and fraudulently conceal the identities of the Kaplan & Co. registered representatives from mutual funds. In many cases, mutual funds would identify a specific Kaplan & Co. rep number as a known market timer and ban further transactions effected by the registered representative associated with that rep number. Since most mutual funds monitored registered representatives' transactions by their rep numbers, rather than by their names, Respondents used multiple rep numbers to fraudulently hide the identities of the Kaplan & Co. registered representatives from the mutual funds.

6. During the relevant period, Respondents also fraudulently used multiple branch codes to hide the identity of the Kaplan & Co. Florida branch as the originating branch of the transactions. Kaplan & Co. used two different branch codes to place trades through one clearing firm. Respondents devised this plan after mutual funds began to routinely recognize Kaplan & Co.'s Florida branch code and block trades originating from that branch. Respondents used Kaplan & Co.'s New York branch office to establish a second branch code, which was not immediately recognizable to the mutual funds. This strategy was implemented and the new branch code was utilized even though no market timing trades were actually effected from Kaplan & Co.'s New York branch. By using a new branch code, Kaplan & Co.'s customers could continue market timing in funds from which they and Kaplan & Co.'s Florida branch had previously been banned.

7. From 2000 through approximately September 2003, Respondents facilitated fraudulent market timing activities by their customers by establishing relationships with multiple clearing firms. Opening accounts at multiple clearing firms enabled Respondents' customers to further conceal their market timing activities from the mutual funds. Customers could hide their identities from the mutual funds by using the new clearing firm identifiers and account numbers associated with each new clearing firm. The use of additional clearing firms allowed Respondents' customers, once identified by a mutual fund as a market timer, to switch to a different clearing firm to continue market timing undetected. It also allowed the customers to simultaneously use accounts from multiple clearing firms to facilitate their market timing activities.

**Late Trading**

8. From 2000 through approximately September 2003, Respondents engaged in a fraudulent scheme to late trade mutual fund shares on behalf of their market timing customers. Respondents effected mutual fund trades for orders they received after 4:00 p.m. ET, allowing their customers to receive the same-day net asset value ("NAV") pricing on those trades (as though the orders were received prior to the close of the stock market at 4:00 p.m. ET, the time as of which the funds calculated their NAV). This system allowed Kaplan & Co.'s customers to capitalize on news events or market changes occurring after the 4:00 p.m. ET close of the stock market.

Lawrence S. Powell and Delano N. Sta.Ana: Admin. Proc. Rel. No. 34-51017 / January 1... Page 4 of 6

Case 1:07-cv-06261-AKH    Document 7-4    Filed 07/18/2007    Page 5 of 7

Generally, Respondents' customers sent Kaplan & Co. a list of their proposed trades before 2:30 p.m. each day. These proposed trades reflected only tentative trading instructions. Kaplan & Co. did not execute the proposed trades until the customer subsequently approved the order, orally or via e-mail or facsimile. These approvals were almost uniformly received after 4:00 p.m. ET. Respondents were aware that their customers were taking advantage of post-4:00 p.m. market news in determining whether to effect transactions.

9. During the relevant time period, Respondents also engaged in the "next-day busting" of orders. On numerous occasions, the mutual fund group effected trades for customers and then called or e-mailed the clearing firm the following morning requesting that they contact the mutual fund and cancel or "bust" the trade. In some instances, the mutual fund group falsely told the clearing firm that the order had been "erroneously entered," when in fact, the timing customer had simply changed its mind about placing the order.

**Conclusions**

10. As a result of the conduct described above, Respondents willfully violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit the use of any device, scheme, or artifice to defraud in connection with the purchase or sale of securities.

11. As a result of the conduct described above, Respondents willfully aided and abetted and caused Kaplan & Co.'s violations of Section 15(c)(1) of the Exchange Act, which prohibits a broker-dealer from using interstate facilities or the mails to effect or induce transactions in securities by means of any manipulative, deceptive or other fraudulent device or contrivance.

12. As a result of the conduct described above, Respondents willfully aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 promulgated under Section 22(c) of the Investment Company Act, which provides that "[n]o registered investment company issuing any redeemable security, no person designated in such issuer's prospectus as authorized to consummate transactions in any such security, and no principal underwriter of, or dealer in any such security shall sell, redeem, or repurchase any such security except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security."

**Respondents' Cooperation**

In determining to accept the Offers, the Commission considered Respondents' cooperation with the Commission staff.

IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents Powell and Sta.Ana's Offers.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act,

Lawrence S. Powell and Delano N. Sta.Ana: Admin. Proc. Rel. No. 34-51017 / January 1... Page 5 of 6

Case 1:07-cv-06261-AKH   Document 7-4   Filed 07/18/2007   Page 6 of 7

Section 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act, it is hereby ORDERED that:

A. Respondents Powell and Sta.Ana cease and desist from committing or causing any violations and any future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B. Respondents Powell and Sta.Ana cease and desist from causing any violations and any future violations of Section 15(c)(1) of the Exchange Act;

C. Respondents Powell and Sta.Ana cease and desist from causing any violations of Section Rule 22c-1 of the Investment Company Act;

D. Respondents Powell and Sta.Ana be, and hereby are barred from association with any broker, dealer or investment adviser, and are prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter;

E. Any reapplication for association by either of the Respondents will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against the Respondents, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission Order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission Order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission Order;

F. IT IS FURTHER ORDERED that Respondents shall each, within 180 days of the entry of this order, pay disgorgement and prejudgment interest in the amount of $255,000 into the United States Treasury, provided that each Respondent pay at least $85,000 of his $255,000 within 90 days of the entry of this Order. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Alexandria, Stop 0-3, VA 22312; and (D) submitted under cover letter that identifies Powell and Sta.Ana, respectively, as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131; and

G. IT IS FURTHER ORDERED that Respondents shall each, within 180 days of the entry of this Order, pay a civil money penalty in the amount of $120,000 to the United States Treasury, provided that each Respondent pay at least $40,000 of his $120,000 within 90 days of the entry of this

Lawrence S. Powell and Delano N. Sta.Ana: Admin. Proc. Rel. No. 34-51017 / January 1... Page 6 of 6

Case 1:07-cv-06261-AKH   Document 7-4   Filed 07/18/2007   Page 7 of 7

Order. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Powell and Sta.Ana, respectively, as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

By the Commission.

Jonathan G. Katz
Secretary

**Endnotes**

[1] The findings herein are made pursuant to Respondents' Offers and are not binding on any other person or entity in this or any other proceeding.

http://www.sec.gov/litigation/admin/34-51017.htm

Home | Previous Page                                   Modified: 01/11/2005