# EXHIBIT 7

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 54954 / December 18, 2006

INVESTMENT ADVISERS ACT OF 1940
Release No. 2572 / December 18, 2006

INVESTMENT COMPANY ACT OF 1940
Release No. 27601 / December 18, 2006

ADMINISTRATIVE PROCEEDING
File No. 3-12509

| In the Matter of<br><br>KAPLAN & CO.<br>SECURITIES, INC. AND<br>JED P. KAPLAN,<br><br>Respondents. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTIONS 203(e) AND 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTIONS 9(b) AND 9(f) OF THE INVESTMENT COMPANY ACT OF 1940 |
|---|---|

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Section 203(e) of the Investment Advisers Act of 1940 ("Advisers Act"), and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Investment Company Act") against Kaplan & Co. Securities, Inc. ("Kaplan & Co.") and pursuant to Sections 15(b) and 21C of the Exchange Act, Section 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act against Jed P. Kaplan ("Kaplan"), (collectively referred to as "Respondents").

II.

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the

Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Sections 203(e) and 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offer, the Commission finds that:

#### Respondents

1. Kaplan & Co., located in Boca Raton, Florida, has been registered with the Commission as a broker-dealer since September 15, 1995 and as an investment adviser since March 21, 2003. As a broker-dealer, Kaplan & Co. conducts retail brokerage business. During the relevant period, Kaplan & Co., through its institutional timing group, assisted institutional investors, mainly hedge funds, in purchasing and redeeming shares of third party mutual funds.

2. Kaplan is, and has been since September 15, 1995, the chief executive officer and control person of Kaplan & Co. Kaplan, 41 years old, is a resident of Boca Raton, Florida.

#### Overview

3. These proceedings arise out of Respondents' failure reasonably to supervise two former Kaplan & Co. registered representatives, Lawrence S. Powell and Delano N. Sta.Ana, with a view to preventing their violations of the federal securities laws during a three-year period from January 2000 through early September 2003. During that period, Powell and Sta.Ana established and co-headed Kaplan & Co.'s institutional timing group, and defrauded hundreds of mutual funds and their shareholders by engaging in deceptive practices designed to mislead funds as to the identity of Kaplan & Co.'s customers so that Powell and Sta.Ana could circumvent the funds' restrictions on market timing on behalf of Kaplan & Co. institutional customers. Powell and Sta.Ana employed a variety of deceptive acts and practices, including misrepresenting the nature of the trades to mutual funds by using multiple clearing firms, multiple account numbers, multiple representative numbers, and multiple office codes, to hide their customers' identities from the funds to avoid the funds' restrictions on market timing. In addition, Powell and Sta.Ana also engaged in a late-trading scheme that allowed their customers to enter mutual fund share trades based on post-market close news. Through these activities, Powell and Sta.Ana violated the antifraud provisions of the federal securities laws and aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 promulgated under Section 22(c) of the Investment Company Act.[1]

---

[1] On January 11, 2005, the Commission instituted and simultaneously settled public administrative and cease-and-desist proceedings against Powell and Sta.Ana finding violations of Section 10(b) of the Exchange Act

2

4. Kaplan & Co. failed reasonably to supervise Powell and Sta.Ana with a view to preventing and detecting their violations of the federal securities laws. Kaplan & Co. failed to adopt adequate policies and procedures to monitor market timing and late trading so as to prevent and detect the fraudulent conduct described herein. In addition, Kaplan & Co. failed to have a system in place for implementing the limited policies and procedures that did exist.

5. Kaplan, the firm's principal, failed reasonably to supervise Powell and Sta.Ana with a view to preventing and detecting their violations of the federal securities laws. Kaplan delegated supervision of Powell and Sta.Ana to Powell, who held a Series 24 license, but Kaplan did not provide Powell with any specific instructions on how to fulfill the delegated responsibilities, failed to instruct Powell on any compliance or supervisory procedures, failed to train Powell on how to detect or avoid trading abuses, and did not follow-up on his supervisory delegation to Powell. Additionally, Kaplan did not develop adequate policies and procedures, and failed to follow existing policies and procedures to monitor Powell and Sta.Ana's activities. Further, Kaplan was aware that the institutional timing group submitted mutual fund trading orders that were sometimes rejected by mutual funds, and of other events that warranted inquiry, and failed to follow up and investigate these red flags.

6. Kaplan & Co. also violated Rule 22c-1 under the Investment Company Act in its capacity as a dealer in certain mutual fund shares, receiving and executing orders for the purchase of those shares after the 4:00 p.m. ET stock market close.

7. Kaplan & Co. also failed properly to maintain its brokerage business books and records by not maintaining records reflecting the time of entry and execution of mutual fund orders. Kaplan, as the firm's principal, failed to take steps so that Kaplan & Co. made and kept current certain brokerage business books and records that it was required to make and keep current, and was therefore responsible for the firm's failure.

## Powell and Sta.Ana's Misconduct

### Market Timing

8. Powell and Sta.Ana implemented a fraudulent market timing scheme by effecting timing transactions in mutual funds on behalf of Kaplan & Co.'s institutional timing customers using, as part of the overall scheme, four strategies intended to deceive the mutual funds as to the customers' identities: multiple clearing firms, multiple account numbers, multiple registered representative numbers, and multiple office branch codes. Utilizing multiple clearing firms enabled Kaplan & Co.'s customers to hide their identities from the mutual funds by using the new clearing firm identifiers and account numbers associated with each new clearing firm, thus allowing continued market timing to go undetected. Multiple account numbers allowed the customers to use new accounts to continue their market timing activities after existing accounts had

---

and Rule 10b-5 thereunder, causing violations of Section 15(c)(1) of the Exchange Act, and causing violations of Rule 22c-1 of the Investment Company Act. Lawrence S. Powell and Delano N. Sta.Ana, Exch. Act Rel. No. 51017 (Jan. 11, 2005).

3

been banned for market timing because the mutual funds were misled into believing that the transactions did not originate from banned customers. Multiple registered representative numbers ("rep numbers") concealed the identities of the Kaplan & Co. registered representatives from mutual funds so that the funds could not identify a specific Kaplan & Co. rep number as a known market timer and ban further transactions effected by the registered representative associated with that rep number. Finally, multiple branch codes concealed the identity of the Kaplan & Co. Florida branch as the originating branch of the transactions to allow Kaplan & Co.'s customers to continue market timing in those funds that had previously banned them and Kaplan & Co.'s Florida branch.

### Late Trading

9. Powell and Sta.Ana engaged in a fraudulent scheme to late trade mutual fund shares by effecting mutual fund trades for orders received after 4:00 p.m. ET, allowing their customers to receive the same-day net asset value ("NAV") pricing on those trades (as though the orders were received prior to the close of the stock market at 4:00 p.m. ET, the time as of which the funds calculated their NAV). This system allowed Kaplan & Co.'s customers to capitalize on news events or market changes occurring after the 4:00 p.m. ET stock market close. Kaplan & Co. was a dealer in certain mutual fund shares. Powell and Sta.Ana also engaged in the "next-day busting" of orders. On numerous occasions, the institutional timing group effected trades for customers and then called or e-mailed the clearing firm the following morning requesting that they contact the mutual fund and cancel or "bust" the trade. In some instances, the institutional timing group told the clearing firm that the order had been "erroneously entered," when in fact, the customer had simply changed its mind about placing the order.

### Kaplan & Co. and Kaplan Failed Reasonably to Supervise Powell and Sta.Ana

10. Kaplan & Co. failed reasonably to supervise Powell and Sta.Ana with a view to preventing their violations of the federal securities laws. In particular, Kaplan & Co. failed to adopt, implement or follow adequate supervisory and compliance policies, procedures or systems which could have detected or prevented Powell and Sta.Ana's securities laws violations.

11. Kaplan & Co. had insufficient systems in place to detect and prevent Powell and Sta.Ana from using fraudulent and deceptive practices to circumvent mutual fund restrictions on market timing. Kaplan & Co.'s Supervisory Procedures Manual ("Procedures Manual") contained policies and procedures concerning the review of customer accounts and firm correspondence; however, Kaplan & Co. had no systems to implement and enforce these policies and procedures. In addition, Kaplan & Co. had insufficient procedures and systems in place to detect and adequately respond to red flags and warnings of improper conduct, namely the numerous communications from mutual funds objecting to or questioning market timing trades. The only language in the Procedures Manual arguably related to mutual fund market timing was a section noting that trading in mutual fund shares, particularly on a short term basis, may raise the question of a rule violation. Notwithstanding this warning, the Procedures Manual contained no procedures for preventing and detecting this activity. Finally, Kaplan & Co. had no procedures to detect and prevent late trading by its employees.

12. Kaplan failed reasonably to supervise Powell and Sta.Ana with a view to preventing their violations of the federal securities laws. During the relevant period, Kaplan was the firm's senior officer with supervisory responsibility over Powell and Sta.Ana. Kaplan did not reasonably delegate his supervisory responsibilities to Powell. Kaplan did not provide Powell with any specific instructions on how to fulfill the delegated responsibilities, failed to instruct Powell on any compliance or supervisory procedures and failed to train Powell on how to detect or avoid trading abuses. Additionally, Kaplan did not follow-up on his supervisory delegation to Powell, and, instead, improperly allowed Powell to supervise himself. Kaplan also failed to develop adequate policies and procedures designed to detect fraudulent market timing and late trading activities and did not follow what few policies and procedures did exist regarding review of correspondence and account statements, which may have detected Powell and Sta.Ana's market timing activities. He failed to periodically review Powell and Sta.Ana's correspondence, including e-mail correspondence, never reviewed the institutional timing group's business and failed to review the firm's mutual fund timing customers' account statements as delineated in the Procedures Manual.

13. In addition, Kaplan knew that some mutual funds had rejected trades from the firm's institutional timing group, and knew that Powell and Sta.Ana had negotiated trading agreements with some mutual funds. He also knew that Powell and Sta.Ana obtained the ability to enter trades after 4:00 p.m. ET. Kaplan failed to adequately respond to these red flags. He did not investigate the reasons for or frequency of the numerous rejected trades and failed to investigate the negotiated agreements. Further, Kaplan never questioned the mutual fund trades that were entered after 4:00 p.m. ET.

14. Kaplan also signed at least one dealer agreement with a distributor of various funds of a mutual fund family, under which Powell and Sta.Ana accepted and executed mutual fund share orders after 4:00 p.m. ET. Kaplan & Co. was a "dealer" under Rule 22c-1 of the Investment Company Act based on the direct agreement between a distributor of various funds of a mutual fund family and Kaplan & Co.

15. Kaplan profited from Powell and Sta.Ana's fraudulent late trading and market timing. The profit was in the form of monies Powell and Sta.Ana's customers paid Kaplan & Co. in asset-based fees.

### Kaplan & Co. Violated Rule 22c-1 of the Investment Company Act

16. Kaplan & Co. violated Rule 22c-1 of the Investment company Act because it received and executed orders for the purchase of mutual fund shares after the 4:00 p.m. ET close of the market, and those orders received the pre-4:00 p.m. ET price. Kaplan signed at least one dealer agreement under which Powell and Sta.Ana received and executed mutual fund share orders after 4:00 p.m. ET.

### Kaplan & Co. Failed to Properly Maintain
### Its Books and Records and Kaplan Aided and Abetted in that Failure

17. Kaplan & Co. failed to properly maintain its brokerage business books and

5

records because the institutional timing group did not create and maintain a memorandum of each brokerage order and other instruction given or received for the purchase or sale of a security for each mutual fund trade, in the format of trade blotters, order tickets, or otherwise. For the time period May 2, 2003 through September 2003, Kaplan & Co. failed to maintain the time of receipt of its institutional mutual fund orders. Kaplan did nothing to ensure that the firm properly maintained its books and records.

### Powell and Sta.Ana's Violations

18. As a result of the conduct described above, Powell and Sta.Ana willfully violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in connection with the purchase or sale of securities, willfully aided and abetted and caused violations of Section 15(c)(1) of the Exchange Act, which prohibits a broker-dealer from using interstate facilities or the mails to effect or induce transactions in securities "by means of any manipulative, deceptive, or other fraudulent device or contrivance," and willfully aided and abetted and caused Kaplan & Co.'s violations of Rule 22c-1 of the Investment Company Act, which prohibits dealers in a fund's securities from effecting a trade in that mutual fund's shares at the current day's NAV if they received the order after the mutual fund calculated that day's NAV.

### Kaplan & Co.'s and Kaplan's Violations

### Failure to Supervise

19. Section 15(b)(4)(E) of the Exchange Act requires broker-dealers reasonably to supervise persons subject to their supervision, with a view toward preventing violations of the federal securities laws. See e.g., Dean Witter Reynolds, Inc., Exchange Act Rel. No. 46578 (October 1, 2002). The Commission has emphasized that the "responsibility of broker-dealers to supervise their employees by means of effective, established procedures is a critical component in the federal investor protection scheme regulating the securities markets." Id. Section 15(b)(4)(E) of the Exchange Act provides for the imposition of a sanction against a broker or dealer who "has failed reasonably to supervise, with a view to preventing violations of the securities laws, another person who commits such a violation, if such other person is subject to his supervision." Section 15(b)(6)(A)(i) parallels Section 15(b)(4)(E) and provides for the imposition of sanctions against persons associated with a broker or dealer.

20. As a result of the conduct described above, Kaplan & Co. and Kaplan failed reasonably to supervise Powell and Sta.Ana with a view to detecting and preventing their violations of the federal securities laws.

### Rule 22c-1 of the Investment Company Act

21. Rule 22c-1 of the Investment Company Act provides that "[n]o registered investment company issuing any redeemable security, no person designated in such issuer's prospectus as authorized to consummate transactions in any such security, and no principal

6

underwriter of, or dealer in any such security shall sell, redeem, or repurchase any such security except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security."

22. As a result of the conduct described above, Kaplan & Co. willfully violated Rule 22c-1 promulgated under Section 22 of the Investment Company Act.

### Books and Records

23. Section 17(a)(1) of the Exchange Act provides that each member of a national securities exchange, broker, or dealer "shall make and keep for prescribed periods such records, furnish copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this title." Rule 17a-3(a)(6) requires all registered brokers and dealers to maintain a memorandum, such as a trade blotter, of each brokerage order and other instruction given or received for the purchase or sale of a security. Effective May 2, 2003, the rule specifically requires the broker or dealer to note on the memorandum the time at which it received the order.

24. As a result of the conduct described above, Kaplan & Co. willfully violated, and Kaplan willfully aided and abetted and caused Kaplan & Co.'s violations of, Section 17(a) of the Exchange Act and Rule 17a-3 thereunder.

### Undertakings

25. <u>Ongoing Cooperation by Kaplan & Co.</u> Kaplan & Co. undertakes to cooperate fully with the Commission in any and all investigations, litigations or other proceedings relating to or arising from the matters described in this Order. In connection with such cooperation, Kaplan & Co. has undertaken:

    A. To produce, without service of a notice or subpoena, any and all documents and other information reasonably requested by the Commission's staff;

    B. To use its best efforts to cause its employees to be interviewed by the Commission's staff at such times as the staff reasonably may direct;

    C. To use its best efforts to cause its employees to appear and testify truthfully and completely without service of a notice or subpoena in such investigations, depositions, hearings or trials as may be requested by the Commission's staff; and

    D. That in connection with any testimony of Kaplan & Co. to be conducted at deposition, hearing or trial pursuant to a notice or subpoena, Kaplan & Co.:

        i. Agrees that any such notice or subpoena for Kaplan & Co.'s appearance and testimony may be served by regular mail on its counsel, Ira Lee Sorkin, Esq.,

7

Dickstein Shapiro Morin & Oshinsky LLP, 1177 Avenue of the Americas, New York, New York 10036-2714; and

    ii.    Agrees that any such notice or subpoena for Kaplan & Co.'s appearance and testimony in an action pending in a United States District Court may be served, and may require testimony, beyond the territorial limits imposed by the Federal Rules of Civil Procedure.

26.    <u>Ongoing Cooperation by Kaplan.</u>  Kaplan undertakes to cooperate fully with the Commission in any and all investigations, litigations or other proceedings relating to or arising from the matters described in this Order. In connection with such cooperation, Kaplan has undertaken:

    A.    To produce, without service of a notice or subpoena, any and all documents and other information reasonably requested by the Commission's staff;

    B.    To be interviewed by the Commission's staff at such times as the staff reasonably may request and to appear and testify truthfully and completely without service of a notice or subpoena in such investigations, depositions, hearings or trials as may be requested by the Commission's staff; and

    C.    That in connection with any testimony of Kaplan to be conducted at deposition, hearing or trial pursuant to a notice or subpoena, Kaplan:

    i.    Agrees that any such notice or subpoena for his appearance and testimony may be served by regular mail on his counsel, Ira Lee Sorkin, Esq., Dickstein Shapiro Morin & Oshinsky LLP, 1177 Avenue of the Americas, New York, New York 10036-2714; and

    ii.    Agrees that any such notice or subpoena for his appearance and testimony in an action pending in a United States District Court may be served, and may require testimony, beyond the territorial limits imposed by the Federal Rules of Civil Procedure.

27.    <u>Independent Compliance Consultant.</u>  Kaplan & Co. undertakes to, within 30 days of the issuance of the Order, hire an independent compliance consultant ("Consultant"), not unacceptable to the Commission staff, to review and evaluate the effectiveness of Kaplan & Co.'s supervisory and compliance systems, policies and procedures designed to detect and prevent violations of the federal securities laws concerning: (1) review of incoming and outgoing correspondence, including electronic correspondence such as e-mail; (2) mutual fund market timing activity; (3) mutual fund late trading activity; and (4) supervision of branch offices. In connection with the hiring of the Consultant, Kaplan & Co. undertakes the following:

    A.    The Consultant's expenses shall be borne exclusively by Kaplan & Co. Kaplan & Co. shall cooperate fully with the Consultant and shall provide the Consultant with access to its files, books, records, and personnel as reasonably requested for the review. Kaplan & Co. shall cause the review to begin no later than 60 days after the issuance of this Order.

B. At the conclusion of the review, which in no event shall be more than 120 days after the date of this Order, Kaplan & Co. shall cause the Consultant to submit to Kaplan & Co. and to the Commission's staff a written Initial Report. The Initial Report shall describe the review performed and the conclusions reached, and will include any recommendations deemed necessary to make the policies, procedures, and system of supervision and compliance adequate.

C. Within 30 days of receipt of the Initial Report, Kaplan & Co. shall in writing respond to the Initial Report. In such response, Kaplan & Co. shall advise the Consultant and the Commission's staff of the recommendations from the Initial Report that it has determined to accept and the recommendations that it considers to be unduly burdensome. With respect to any recommendation that Kaplan & Co. deems unduly burdensome, Kaplan & Co. may propose an alternative policy, procedure or system designed to achieve the same objective or purpose.

D. Kaplan & Co. and the Consultant shall attempt in good faith to reach agreement within 180 days of the date of this Order with respect to any recommendation that Kaplan & Co. deems unduly burdensome. If the Consultant and Kaplan & Co. are unable to agree on an alternative proposal, Kaplan & Co. shall abide by the recommendation of the Consultant.

E. Within 200 days of the date of this Order, Kaplan & Co. shall, in writing, advise the Consultant and the Commission's staff of the recommendations and proposals that it is adopting.

F. Kaplan & Co. shall cause the Consultant to complete the aforementioned review and submit a written Final Report to Kaplan & Co. and to the Commission's staff within 230 days of the date of this Order. The Final Report shall recite the efforts the Consultant undertook to review Kaplan & Co.'s supervisory and compliance policies, procedures, and systems as set forth in paragraph 27; set forth its conclusions and recommendations; and describe how Kaplan & Co. is implementing those recommendations.

G. Kaplan & Co. shall take all necessary and appropriate steps to adopt and implement all recommendations contained in the Consultant's Final Report.

H. No later than one year after the date of the Consultant's Final Report, Kaplan & Co. shall cause the Consultant to conduct a follow-up review of Kaplan & Co.'s efforts to implement the recommendations contained in the Final Report, and Kaplan & Co. shall cause the Consultant to submit a follow-up report to the Commission's staff. The follow-up report shall set forth the details of Kaplan & Co.'s efforts to implement the recommendations contained in the Final Report, and shall state whether Kaplan & Co. has fully complied with the recommendations in the Final Report.

I. For good cause shown, and upon receipt of a timely application from the Consultant or Kaplan & Co., the Commission's staff may extend any of the procedural dates set forth above.

J. To ensure the independence of the Consultant, Kaplan & Co.: (a) shall not

9

have the authority to terminate the Consultant without the prior written approval of the Commission's staff; (b) shall compensate the Consultant, and persons engaged to assist the Consultant, for services rendered pursuant to this Order at their reasonable and customary rates; (c) shall not be in and shall not have an attorney-client relationship with the Consultant and shall not seek to invoke the attorney-client or any other privilege or doctrine to prevent the Consultant from transmitting any information, reports, or documents to the Commission staff; and (d) during the period of engagement and for a period of two years after the engagement, shall not enter into any employment, customer, consultant, attorney-client, auditing, or other professional relationship with the Consultant.

K. Kaplan & Co. shall cause the Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Kaplan & Co., or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Southeast Regional Office Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Kaplan & Co., or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

28. <u>Kaplan's Agreement to Re-take the Series 24 License Examination.</u>
Kaplan shall re-take the Series 24 License Examination within nine months of the issuance of this Order.

29. <u>Kaplan's Provision of Affidavit.</u> Kaplan shall provide to the Commission, within 30 days after the end of the nine-month suspension period described below, an affidavit that he has complied fully with the sanctions described in Section IV.E. below.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents Kaplan & Co.'s and Kaplan's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, Sections 203(e) and 203(f) of the Advisers Act, and Sections 9(b) and 9(f) of the Investment Company Act, it is hereby ORDERED that:

A. Kaplan & Co. shall cease and desist from committing or causing any violations and any future violations of Rule 22c-1 under the Investment Company Act;

B. Kaplan & Co. shall cease and desist from committing or causing any violations and any future violations of Section 17(a)(1) of the Exchange Act and Rule 17a-3 thereunder;

10

    C.    Kaplan shall cease and desist from causing any violations and any future violations of Section 17(a)(1) of the Exchange Act and Rule 17a-3 thereunder;

    D.  Kaplan & Co. and Kaplan are hereby censured;

    E.  Kaplan shall be, and hereby is, suspended from association in a supervisory capacity with any broker, dealer or investment adviser for a period of nine months, effective on the second Monday following the entry of this Order;

    F.  IT IS FURTHER ORDERED that Respondents Kaplan & Co. and Kaplan shall pay, jointly and severally, within 10 days of the entry of this Order, disgorgement of $46,521.60 and prejudgment interest of $3,478.40, for a total amount of $50,000, to the United States Treasury. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan & Co. and Kaplan as Respondents in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131; and

    G.  IT IS FURTHER ORDERED that Respondent Kaplan & Co. shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the United States Treasury. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan & Co. as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

    H.  IT IS FURTHER ORDERED that Respondent Kaplan shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the United States Treasury. Such payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Kaplan as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Glenn S. Gordon, Associate Regional Director, Division of Enforcement,

Securities and Exchange Commission, Southeast Regional Office, 801 Brickell Avenue, 18th Floor, Miami, Florida 33131.

    I.    Kaplan & Co. shall comply with the undertaking specified in Paragraph 27 above.

    J.    Kaplan shall comply with the undertaking specified in Paragraph 29 above.


By the Commission.


                                    Nancy M. Morris
                                    Secretary