# EXHIBIT 8

SEC NEWS DIGEST

Issue 2006-242                                          December 18, 2006

RULES AND RELATED MATTERS

SEC JOINTLY ISSUES WITH THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM RULES FOR COMMENT TO IMPLEMENT BANK BROKER PROVISIONS

SEC Issues Companion Proposal Concerning Bank Dealer Activities and Order Extending Temporary Exemption for Banks from the Definition of "Broker"

The Commission issued for comment, jointly with the Board of Governors of the Federal Reserve System (Board), rules to implement the bank broker provisions of the Securities Exchange Act of 1934 as Release No. 34-54946. The Commission also issued a companion proposal concerning certain bank dealer activities and other related matters as Release No. 34-54947. In addition, the Commission issued the temporary exemption of banks from the definition of "broker" until July 2, 2007 as Order Release No. 34-54948. (Press Rel. 2006-211)

ENFORCEMENT PROCEEDINGS

SEC DISCIPLINES AUDITOR FOR IMPROPER PROFESSIONAL CONDUCT IN MUTUAL FUND AUDITS

On December 15, the Commission issued an Order Making Findings and Imposing Remedial Sanctions Pursuant to Rule 102(e) of the Commission's Rules of Practice (Order) against James T. McCurdy, CPA (McCurdy). In the Order, the Commission found that McCurdy, formerly the Managing Partner of McCurdy & Associates CPAs, Inc. in Cleveland, Ohio, engaged in improper professional conduct during his firm's audits of the financial statements of the Liquid Green Money Market Fund (Liquid Green) for the fiscal year ended Sept. 30, 2001, and the financial statements of the Florida Street Bond Fund (Florida Street) for the fiscal years ended Oct. 31, 1999 and Oct. 31, 2000. Without admitting or denying the Commission's findings, McCurdy agreed to settle the proceedings by consenting to a finding that he engaged in improper professional conduct and a prohibition from appearing or practicing before the Commission as an accountant, with a right to apply for reinstatement after three years. In the Order, the Commission found that during the 2001 Liquid Green audit, McCurdy, who was the concurring review partner, became aware that more than half of the securities in the fund's portfolio had stated maturity dates exceeding the 397 day period set forth in Rule 2a-7 under the Investment Company Act of 1940, but nevertheless he did not ensure that the engagement partner performed audit procedures to determine whether the securities were in fact eligible for a money market fund. As a result, McCurdy failed to detect that the fund's financial statements and related notes contained material misrepresentations, including that Liquid Green was a "money market fund" and that it was proper for the fund to use the amortized cost method to value its portfolio securities. Because he did not require the engagement

partner to audit Liquid Green's financial statements properly and did not do so himself, McCurdy allowed his firm to issue an audit report with an unqualified opinion falsely representing that Liquid Green's financial statements fairly presented the fund's financial position in conformity with generally accepted accounting principles (GAAP) and that McCurdy & Associates had conducted its audit in accordance with generally accepted auditing standards (GAAS).

In the Order, the Commission found that with respect to the 1999 and 2000 Florida Street audits, McCurdy assigned inexperienced auditors as engagement partners and designated himself as the concurring review partner. Because McCurdy did not require the engagement partner to audit Florida Street's 1999 financial statements properly, and did not do so himself, he failed to detect that the fund was accruing and carrying interest for bonds that had missed interest payments, were in default, or had previously been sold and were no longer held by the fund, that the fund's interest receivable balance was overstated, and that, as a result, Florida Street's financial statements were not fairly presented in conformity with GAAP. After Florida Street's interest accounting problems came to light during the 2000 Florida Street audit, McCurdy allowed his firm to issue an audit report with an unqualified audit opinion on Florida Street's financial statements even though they failed to disclose the overstated interest receivable and the resulting repricing, interest write-offs and return of capital to shareholders. Furthermore, despite knowing that a portion of the interest Florida Street wrote off during the fiscal year ended Oct. 31, 2000, related to the prior fiscal year ended Oct. 31, 1999, McCurdy did not require the recording of a prior period adjustment or take any steps to determine whether Florida Street should restate its financial statements for prior periods. (Rel. 34-54945; AAE Rel. No. 2525; File No. 3-12322)

IN THE MATTER OF CALNEVA CAPITAL CORP.

An Administrative Law Judge has issued an Order Making Findings and Revoking Registrations by Default as to Casino Casino, Inc., FDN, Inc., and Unique Video Products, Inc. (Default Order) in the matter of Calneva Capital Corp. The Order Instituting Proceedings (OIP) alleged that these Respondents failed to comply with Section 13(a) of the Securities Exchange Act of 1934 (Exchange Act) and Exchange Act Rules 13a-1 and 13a-13 by failing to file required periodic reports for several years. The Default Order finds the allegations in the OIP to be true and revokes the registration of each class of securities that these Respondents have registered with the Commission, pursuant to Section 12(j) of the Exchange Act. (Rel. 34-54950; File No. 3-12474)

SEC ORDERS THAT TONINO LABELLA BE BARRED FROM ASSOCIATION WITH ANY BROKER OR DEALER

On December 18, the Commission ordered Tonino Labella to be barred from associating with any broker or dealer. From February 1999 to February 2002, Labella owned 75 percent of Bryn Mawr Investment Group, Inc., a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act, which later was known as Valley Forge Securities, Inc. (Valley Forge), and acted as its Chairman and Chief Executive Officer. Labella was also a registered representative associated with Valley Forge. On Oct. 26, 2006, Labella pled guilty to one count of conspiracy to commit securities fraud and wire fraud and one count of wire fraud. United States v. Labella, 05 Cr. 87 (D.N.J.). The counts of the criminal indictment to which Labella pled guilty

Case 1:07-cv-06261-AKH   Document 7-9   Filed 07/18/2007   Page 4 of 4

Page 3 of 25

alleged that Labella, using various instrumentalities of interstate commerce, defrauded investors while working at Valley Forge by recruiting and paying certain registered representatives and unregistered individuals undisclosed, excessive cash commissions for selling stock.

Based upon Labella's criminal conviction, the Commission instituted, and simultaneously settled, an administrative proceeding pursuant to Section 15(b) of the Securities Exchange Act of 1934. Labella consented, without admitting or denying the Commission's findings, except the finding concerning his criminal conviction, to an order barring him from association with any broker or dealer. (Rel. 34-54951; File No. 3-12507)

IN THE MATTER OF KAPLAN & CO. SECURITIES, INC. AND JED KAPLAN

KAPLAN & CO. SECURITIES, INC., BROKER-DEALER/INVESTMENT ADVISER, AND ITS PRINCIPAL, SETTLE FAILURE TO SUPERVISE CHARGES RELATED TO MUTUAL FUND MARKET TIMING AND LATE TRADING ACTIVITIES BY FORMER REGISTERED REPRESENTATIVES

On December 18, the Commission issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Sections 203(e) and 203(f) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940 (Order) against Kaplan & Co. Securities, Inc. (Kaplan & Co.), a Boca Raton-based broker-dealer and investment adviser, and its chief executive officer, Jed P. Kaplan. The Order finds that from 2000 through early September 2003, Kaplan & Co. and Kaplan failed reasonably to supervise two former Kaplan & Co. brokers, that Kaplan & Co. violated Rule 22c-1 promulgated under the Investment Company Act, which prohibits late trading, and failed to properly maintain its books and records by failing to maintain records reflecting the time of receipt of mutual fund orders, and that Kaplan aided and abetted in the firm's books and records violations.

Based on the above, the Order suspends Kaplan from association in a supervisory capacity with any broker, dealer or investment adviser for nine months, and requires Kaplan & Co. to cease and desist from committing or causing violations or future violations of Rule 22c-1 under the Investment Company Act, Kaplan & Co. to cease and desist from committing or causing, and Kaplan to cease and desist from causing, violations or future violations of Section 17(a)(1) of the Securities Exchange Act of 1934 and Rule 17a-3 thereunder. The Order also censures the firm and Kaplan and requires them to comply with certain specified undertakings, including Kaplan & Co.'s retention of an independent compliance consultant to conduct a comprehensive review of Kaplan & Co.'s policies and procedures related to correspondence, market timing, late trading, and branch office supervision. Additionally, Kaplan & Co. and Kaplan will pay $46,521.60, jointly and severally, in disgorgement, plus $3,478.40 in prejudgment interest, and $50,000 each in penalties. Kaplan & Co. and Kaplan consented to the issuance of the Order without admitting or denying any of its findings. (Rel. 34-54954; IA-2572; IC-27601; File No. 3-12509)

COMMISSION SETTLES CHARGES AGAINST JAMES SMITH

The Commission announced that it has settled its previously filed