Andrew L. Deutsch (AD 5782)
Monica Petraglia McCabe (MM 5853)
Christine M. Jaskiewicz (CJ 1477)
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ROTHSCHILDS CONTINUATION HOLDINGS
AG, ROTHSCHILD NORTH AMERICA INC.,
ROTHSCHILD INC., and ROTHSCHILD
ASSET MANAGEMENT INC.,

                             Plaintiffs,

        - v. -

JED P. KAPLAN, KAPLAN & CO.
SECURITIES LLC, and LF ROTHSCHILD,
LLC,

                           Defendants.

------------------------------------------------------------ x

07 Civ. 6261 (AKH)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR
PRELIMINARY INJUNCTION AND ORDER GRANTING EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 1

ARGUMENT ..................................................................................................... 4

I      PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
AGAINST THE KAPLAN DEFENDANTS' USE OF THE INFRINGING
MARKS ..................................................................................................... 4

     A.      Irreparable Injury Is Established By Proof Of Likely Infringement Or
Dilution. ............................................................................................. 5

     B.      The Rothschild Parties Are Likely To Succeed On The Merits Of Their
Infringement And Dilution Claims. .......................................................... 5

         1.      The Rothschild Parties Are Likely To Succeed On The Merits In
The Claim For Trademark Infringement Under The Lanham Act. ........... 5

             a.      ROTHSCHILD Has Secondary Meaning And Is Therefore
Protectible. ......................................................................... 6

             b.      The Kaplan Defendants' Use Of The Infringing Marks
Tends To Create A Likelihood Of Confusion................................ 9

                 i.      Strength of Trademark ...................................................... 9

                 ii.      Similarity of the Marks .................................................. 10

                 iii.      Proximity of the Services ............................................... 11

                 iv.      Actual Consumer Confusion............................................ 12

                 v.      Junior User's Bad Faith ................................................. 12

                 vi.      Quality of Defendant's Services ....................................... 15

                 vii.      Sophistication of the Buyers ........................................... 15

                 viii.      Likelihood that Plaintiff will Bridge the Gap and
Offer a Service Like Defendants' ..................................... 16

         2.      The Rothschild Parties Are Likely To Succeed On Their New York
Common Law Unfair Competition, Trademark Infringement, And
Trademark Dilution Claims. ................................................................ 17

     C.      The Balance Of Hardships Weighs Decidedly In Favor Of Plaintiffs................ 19

II      THE COURT SHOULD ORDER EXPEDITED DISCOVERY.................................... 20

CONCLUSION.................................................................................................... 22

## TABLE OF AUTHORITIES

*Cases*                                                                                    **Page(s)**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) ...........................................................................6

*Allied Maint. Corp. v. Allied Mech. Trades, Inc.*,
    42 N.Y.2d 538, 399 N.Y.S.2d 628 (1977) .......................................18

*AM Gen. Corp. v. Daimler Chrysler Corp.*,
    311 F.3d 796 (7th Cir. 2002) ..................................................................8

*Ayyash v. Bank Al-Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) ..........................................................21

*Blue Bell, Inc. v. Maverick Sportswear, Inc.*,
    No. 74 Civ. 1093, 1974 U.S. Dist. LEXIS 7797 (S.D.N.Y. July 1, 1974)..................20

*Brennan's Inc. v. Brennan's Rest.*,
    360 F.3d 125 (2d Cir. 2004)...........................................................6, 9

*Cadbury Beverages, Inc. v. Cott Corp.*,
    73 F.3d 474 (2d Cir. 1996)..............................................................11

*Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*,
    830 F.2d 1217 (2d Cir. 1987)........................................................9, 12

*Citigroup Inc. v. City Holding Co.*,
    171 F. Supp. 2d 333 (S.D.N.Y. 2001)..........................................11

*Deere & Co. v. MTD Prods., Inc.*,
    41 F.3d 39 (2d Cir. 1994)...............................................................19

*Don King Prods., Inc. v. Hopkins*,
    No. 04 Civ 9705 (PKL), 2004 U.S. Dist. LEXIS 25917
    (S.D.N.Y. Dec. 23, 2004)...............................................................21

*Fuentes-Argueta v. Immigration & Naturalization Serv.*,
    101 F.3d 867 (2d Cir. 1996)..........................................................14

*Gianni Versace, S.p.A. v. Versace*,
    No. 01 Civ. 9645 (PKL), 2003 U.S. Dist. LEXIS 14858
    (S.D.N.Y. Aug. 27, 2003) ..............................................................10

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993)................................................................7

*Gucci v. Gucci Shops*,
    688 F. Supp. 916 (S.D.N.Y. 1988) ....................................................10

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
    858 F.2d 70 (2d Cir. 1988)..................................................... passim

*Hormel Foods Corp. v. Jim Henson Prods.*,
    73 F.3d 497 (2d Cir. 1996).........................................................18, 19

*J&J Snack Foods Corp. v. McDonald's Corp.*,
    932 F.2d 1460 (Fed. Cir. 1991)..........................................................8

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979)................................................................4

*Jacob Siegel Co. v. Fed. Trade Comm'n*,
    327 U.S. 608 (1946)..........................................................................17

*Johnson & Johnson v. Quality Pure Mfg. Co.*,
    484 F. Supp. 975 (D.N.J. 1979) .......................................................14

*Lang v. Retirement Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991)............................................................12

*Les Ballets Trockadero De Monte Carlo v. Trevino*,
    945 F. Supp. 563 (S.D.N.Y. 1996) ..................................................15

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F. Supp. 2d 448 (S.D.N.Y. 2005)..............................................17

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    875 F.2d 1026 (2d Cir. 1989)..........................................................18

*Metlife, Inc., v. Metro. Nat'l Bank*,
    388 F. Supp. 2d 223 (S.D.N.Y. 2005)..............................................15

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
    818 F.2d 254 (2d Cir. 1987)................................................12, 15, 16

*Morningside Group, Ltd. v. Morningside Capital Group, LLC*,
    182 F.3d 133 (2d Cir. 1999)..............................10, 11, 12, 13, 15

*New York Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC,*
    293 F.3d 550 (2d Cir. 2002)................................................................18

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
    58 U.S.P.Q.2d 1048 (S.D.N.Y. 2001),
    *aff'd,* 317 F.3d 209 (2d Cir. 2003) ........................................................10

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,*
    317 F.3d 209 (2d Cir. 2003)................................................6, 7, 10, 11

*Polaroid Corp. v. Polarad Electronics Corp.,*
    287 F.2d 492, 495 (2d Cir. 1961)..........................................................9

*Power Test Petroleum Distrib. v. Calcu Gas,*
    754 F.2d 91 (2d Cir. 1985) ....................................................................5

*Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.,*
    926 F.2d 134 (2d Cir. 1991)................................................................13

*Saratoga Vichy Spring Co. v. Lehman,*
    625 F.2d 1037 (2d Cir. 1980)..............................................................17

*Standard & Poor's Corp. v. Commodity Exch., Inc.,*
    683 F.2d 704 (2d Cir. 1982)..........................................................5, 17

*Standard Inv., Inc. v. NASD,*
    No. 07 Civ. 2014 (SWK), 2007 U.S. Dist. LEXIS 27342,
    (S.D.N.Y. Apr. 11, 2007)....................................................................21

*Star Indus. v. Bacardi & Co.,* 412 F.3d 373 (2d Cir. 2005),
    *cert. denied,* 547 U.S. 1019 (2006)......................................................6

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.,*
    823 F. Supp. 1077 (S.D.N.Y. 1993)....................................................14

*Taylor Wine Co. v. Bully Hill Vineyards, Inc.,*
    569 F.2d 731 (2d Cir. 1978) ..................................................................6

*Virgin Enters. v. Nawab,*
    335 F.3d 141 (2d Cir. 2003)..................................................................5

*W.W.W. Pharm. Co. v. Gillette Co.,*
    984 F.2d 567 (2d Cir. 1993)................................................................15

*Wal-Mart Stores, Inc. v. Samara Bros.,*
    529 U.S. 205 (2000)..............................................................................6

*Warner Bros. v. Gay Toys, Inc.*,
 658 F.2d 76 (2d Cir. 1981)..................................................................................4

*Wyndham Co. v. Wyndham Hotel Co.*,
 176 Misc. 2d 116, 670 N.Y.S.2d 995 (Sup. Ct. N.Y. County 1997),
 *aff'd*, 261 A.D.2d 242, 691 N.Y.S.2d 34 (1st Dep't 1999).............................17

## Statutes

28 U.S.C. § 1657(a) (2007)................................................................................21

## Other Authorities

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
 §§ 23:42, 23:45 (4th ed. 1998).......................................................................11

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:47
 (4th ed. 1998)...................................................................................................5

Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note...............................21, 22

## PRELIMINARY STATEMENT

Plaintiffs, Rothschilds Continuation Holdings AG ("**RCH**"), Rothschild North America Inc. ("**RNA**"), Rothschild Inc. ("**RINC**"), and Rothschild Asset Management ("**RAM**") (collectively "**plaintiffs**" or the "**Rothschild Parties**"), respectfully submit this memorandum of law in support of their motions for (1) a preliminary injunction enjoining defendants, Jed P. Kaplan ("**Kaplan**"), Kaplan & Co. Securities, LLC ("**Kaplan & Co**."), and LF Rothschild, LLC ("**LF Rothschild**") (collectively the "**Kaplan Defendants**"), from any use of the marks L.F. ROTHSCHILD & COMPANY, LF ROTHSCHILD and any other mark containing ROTHSCHILD (the "**Infringing Marks**") pending trial of this action, and (2) an order granting expedited discovery prior to a preliminary injunction hearing.

## STATEMENT OF FACTS

This statement will summarize the facts contained in the accompanying Declaration of John Carroll ("**Carroll Decl.**") submitted in support of plaintiffs' motions, to which the Court is respectfully referred. The Rothschild Parties are entities controlled by the famous Rothschild Family who trace their ancestry to Mayer Amschel Rothschild (1744-1812). For more than two centuries, the Rothschild Family has been world renowned for its success and expertise in the financial services and banking industries. (Carroll Decl. ¶¶ 8-13). The mark ROTHSCHILD has come to be broadly associated with the financial institutions controlled by the Rothschild Family, and to represent high integrity and reliability in financial services. (Carroll Decl. ¶¶ 14-17). The plaintiffs in this case own or license, and have adopted and used, ROTHSCHILD, ROTHSCHILD NORTH AMERICA, ROTHSCHILD INC. and ROTHSCHILD ASSET MANAGEMENT for the Rothschild Family-controlled financial services businesses in the United States. (Carroll Decl. ¶¶ 19, 20, 26, 27, 31, 32). They have thereby benefited from and extended the goodwill and high reputation associated with these marks, and reinforced the public

belief that financial and banking services using "Rothschild" emanate from the plaintiffs. (Carroll Decl. ¶¶ 14-18).

Defendant Kaplan is the chief executive officer of LF Rothschild, an SEC-registered investment advisor and SEC-registered broker-dealer that until recent months was known as Kaplan & Co. Securities, LLC, but is now called LF Rothschild, LLC. (Carroll Decl., Ex. 19). Kaplan & Co./LF Rothschild, as a registered investment adviser servicing institutions and individuals, competes with RAM, which is also a registered investment adviser servicing institutions and high net worth individuals.

In 2005 and 2006, the SEC entered orders against two registered representatives of Kaplan & Co., Kaplan & Co., and Kaplan himself. These orders found that the Kaplan & Co. representatives had engaged in, and Kaplan and Kaplan & Co. had abetted, a fraudulent market timing and late trading scheme that violated federal securities laws and regulations. The orders imposed, among other sanctions, censure on both Kaplan & Co. and Kaplan, a suspension on Kaplan's association in a supervisory capacity with any broker, dealer, or investment adviser, and significant monetary penalties. As a result of publicity given to these orders and prosecution of the same scheme by the New York Attorney General, the reputation of Kaplan & Co. was severely damaged.

Kaplan, recognizing that his business would be imperiled as a result of the SEC investigation if it continued to do business as Kaplan & Co., embarked on an intentionally deceptive scheme to disguise Kaplan & Co. from the public and to misappropriate the goodwill and reputation of the name "Rothschild." He thus renamed his company "LF Rothschild LLC" and began to use the trademarks L.F. ROTHSCHILD & COMPANY and LF ROTHSCHILD despite the fact that no one involved in his business was named "Rothschild." He filed to register L.F. ROTHSCHILD & COMPANY as a trademark. He registered

www.lfrothschild.com as a domain name and opened a website under that name ("**Website**"). He adopted a graphic LF ROTHSCHILD logo that closely resembles plaintiffs' own graphic ROTHSCHILD mark. Moreover, he did all these acts after plaintiffs sent him a notice objecting to his registering or using L.F. ROTHSCHILD & COMPANY or any other mark containing "Rothschild."

The Court should grant a preliminary injunction restraining the Kaplan Defendants from trading on and injuring the goodwill and extraordinary reputation of the plaintiffs' ROTHSCHILD marks. Without an injunction, plaintiffs will risk losing control over their own reputation, which will be placed in the hands of a violator of securities laws and regulations. Potential users of broker-dealer and investment advisor services exposed to the Kaplan Defendants' use of the Infringing Marks will believe that plaintiffs stand behind the business using those marks. Worse still, members of the public who know about the Kaplan Defendants' sordid history are likely to believe that the plaintiffs knowingly associated themselves with a business that blatantly violated securities laws and regulations. This will greatly harm the high reputation and prestige of plaintiffs' well-known marks, in a way that money damages could not possibly repair.

Plaintiffs meet this Circuit's tests for a preliminary injunction: they own valid trademarks; they are likely to show at trial that the Kaplan Defendants' use of the Infringing Marks tends to cause consumer confusion and to both blur and tarnish and thereby dilute plaintiffs' marks; and the hardship arising from the irreparable injury that the Rothschild Parties will suffer if the Kaplan Defendants are allowed to continue use of the Infringing Marks far outweighs the inconvenience of Kaplan adopting a non-confusing name for his business pending trial.

## ARGUMENT

### I

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION AGAINST THE KAPLAN DEFENDANTS' USE OF THE INFRINGING MARKS

To obtain a preliminary injunction in this Circuit, a plaintiff must demonstrate:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) (preliminary injunction granted in trademark infringement case); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *see Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 78-79 (2d Cir. 1981) (*Jackson Dairy* standard applies in trademark infringement cases).

Both of the alternative standards for a preliminary injunction are satisfied here. Plaintiffs are likely to prove at trial that the Kaplan Defendants' use of the Infringing Marks for broker-dealer and investment advisor services, the same types of services that plaintiffs RINC and RAM respectively provide, is likely to cause confusion among potential investors, by causing them to believe that the Kaplan Defendants' services originate with the plaintiffs. It is also likely to blur and tarnish plaintiffs' ROTHSCHILD marks. As a matter of law, this threatened infringement and dilution is irreparable injury sufficient to support a preliminary injunction.

Alternatively, plaintiffs have unquestionably presented serious questions going to the merits, and they will suffer great hardship if the status quo is not preserved, whereas the Kaplan Defendants, who only recently began using the Infringing Marks, will suffer little hardship if required to select a new, non-infringing company name and trademark.

**A.     Irreparable Injury Is Established By Proof Of Likely Infringement Or Dilution.**

A plaintiff that owns a trademark is entitled to a preliminary injunction where it shows that the defendant's use of a similar mark will tend to confuse or mislead the public. Proof of probable confusion meets both the requirements of showing a likelihood of success on the merits on a trademark claim and irreparable injury. *Hasbro, Inc.*, 858 F.2d at 73 (*citing Home Box Office, Inc. v. Showtime/Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987)); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982). Irreparable injury exists where the trademark owner shows that it may lose control of its reputation pending trial as a result of trademark infringement. *Power Test Petroleum Distrib. v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985). Trademark infringement or dilution produces irreparable injury because the loss of intangible value to a mark caused by infringement or dilution "is real but difficult to measure in dollars and cents." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:47 at 30-111 (4th ed. 1998).

**B.     The Rothschild Parties Are Likely To Succeed On The Merits Of Their Infringement And Dilution Claims.**

**1.     The Rothschild Parties Are Likely To Succeed On The Merits In The Claim For Trademark Infringement Under The Lanham Act.**

To establish a likelihood of success on the merits for a trademark infringement claim, the Second Circuit applies a two-prong test. "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

a.  **ROTHSCHILD Has Secondary Meaning and Is Therefore Protectible.**

There can be no dispute that the marks used by plaintiffs for financial services, ROTHSCHILD, ROTHSCHILD NORTH AMERICA, ROTHSCHILD INC., and ROTHSCHILD ASSET MANAGEMENT, are capable of protection under trademark law. Although these marks have not yet been registered (there is a pending application by RCH to register ROTHSCHILD), "[a]n unregistered mark is entitled to protection under the Lanham Act if it would qualify for registration as a trademark." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005), *cert. denied*, 547 U.S. 1019 (2006).

"Rothschild" is a family name, and therefore deemed descriptive under the standard categorization of marks established in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Family names are protected as trademarks where they have acquired secondary meaning. *Brennan's Inc. v. Brennan's Rest.*, 360 F.3d 125, 131 (2d Cir. 2004); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003). Courts have been more solicitous of the junior user of a surname-based mark where the user in fact is making legitimate use of his or her own surname for products he or she actually produces. *See, e.g.*, *Brennan's Inc.*, 360 F.3d at 131; *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734-35 (2d Cir. 1978). But the Kaplan Defendants' use of a "Rothschild"-formative mark is illegitimate: no one named Rothschild is associated with the business, and the business is owned and run by someone named Kaplan.

ROTHSCHILD is a surname that has acquired secondary meaning and thus the distinctiveness needed for protection. "[A] mark . . . acquir[es 'secondary meaning' when] . . . 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205,

211 (2000); *see also Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). Courts typically consider such factors when determining whether a mark has developed secondary meaning as "advertising expenditures, consumer recognition studies, unsolicited media coverage, sales success, attempts to plagiarize the mark, and length and exclusivity of mark use." *Hasbro, Inc.*, 858 F.2d at 77. [1]

Here, ROTHSCHILD is one of history's best-known and longest-used trademarks: it has been used by the Rothschild Family and their financial services enterprises continuously for over 200 years. There are numerous unsolicited books, encyclopedia articles, magazine articles, and newspaper articles talking about the Rothschilds and their important role in finance. (Carroll Decl. ¶¶ 15-17). "Rothschild" is synonymous with wealth and preservation and increase of wealth. Plaintiffs do not need to extensively advertise: the world of investors already knows about the Rothschild Family and its international network of banks, brokerages, and investment houses. RINC and RAM are major national and international players in their fields and participate in many of the major United States investment and merger/acquisition deals in any given year. (Carroll Decl. ¶¶ 22, 25, 30). In addition, there have been past efforts by others to trade on the reputation of the plaintiffs' marks, which plaintiffs have successfully quashed. (Carroll Decl. ¶¶ 33-38). ROTHSCHILD has secondary meaning and thus qualifies for protection under the trademark laws.

In addition, ROTHSCHILD, ROTHSCHILD NORTH AMERICA, ROTHSCHILD INC., and ROTHSCHILD ASSET MANAGEMENT form a family of marks, which is "a group of

---

[1] Even where a surname is not sufficiently distinctive, its use "in a distinctive lettering style may be considered strong even without a showing of secondary meaning." *Patsy's Brands, Inc.*, 317 F.3d at 217 (distinctive rendering of "Patsy's" mark with initials and arbitrary design elements held strong and protectible). As shown below, the Kaplan Defendants have also infringed the graphic presentation of plaintiffs' ROTHSCHILD mark.

marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991) ("Mc" used as prefix to various McDonald's marks held to be formative of a family of marks). Each of the plaintiffs presents these marks in a similar graphic format which further suggest the joint origin of the services provided by the marks. *See AM Gen. Corp. v. Daimler Chrysler Corp.*, 311 F.3d 796, 815 (7th Cir. 2002).

Finally, the Rothschild Family has protected the secondary meaning attached to the ROTHSCHILD mark for financial services, by removing from the market the only other use that might have affected that secondary meaning. Prior to 1991, there was a prominent investment banking and broker-dealer business known as L.F. Rothschild & Company, Inc. (and, for a period of time, as L.F. Rothschild, Unterberg, Towbin). (Carroll Decl. ¶ 35). The use of the name was legitimate, as a founder of the company was apparently named L.F. Rothschild (although he was not a member of the Rothschild Family). (*Id.*) There was some incorrect belief, at least among less sophisticated investors, that this company had some association with the Rothschild Family. (*Id.*) When L.F. Rothschild filed for bankruptcy, a Rothschild family-controlled company, at great expense, acquired the rights to the L.F. ROTHSCHILD & COMPANY mark from the debtor and its parent. (Carroll Decl. ¶¶ 36-37). This was done in order to prevent an unscrupulous person or entity from buying the rights to the L.F. Rothschild name and using it to suggest to the public that a business using the name was connected with the Rothschild Family or one or more of the businesses controlled by the Rothschild Family. (*Id.*)

**b.    The Kaplan Defendants' Use Of The Infringing Marks Tends To Create A Likelihood Of Confusion.**

In determining the second consideration for an injunction – whether the defendant's use of its mark is likely to cause consumer confusion – our Circuit applies the eight-factor test developed in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). The *Polaroid* factors are (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that plaintiff will bridge the gap and offer a product like defendant's; (5) actual confusion between products; (6) good faith on defendant's part; (7) the quality of defendant's product; and (8) the sophistication of the buyers. *Id.* at 495. Each of the *Polaroid* factors weighs decidedly in favor of the Rothschild Parties.

i.    Strength of Trademark

The strength of a trademark is determined by its " 'tendency to identify the goods sold under the mark as emanating from a particular . . . . source.' " *Hasbro, Inc.*, 858 F.2d at 76 (*citing McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir. 1979)). The strength of a mark must be examined in its commercial context. *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1226 (2d Cir. 1987).

A mark can be inherently distinctive or acquire distinctiveness, and therefore strength, by earning it in the marketplace. *Brennan's, Inc. v. Brennan's Rest.*, 360 F.3d 125, 131 (2d Cir. 2004). Marks including family names are generally analyzed for acquired distinctiveness. While there are a number of individuals named "Rothschild" not connected with the Rothschild Family, to plaintiffs' knowledge no "Rothschild" unconnected to the Rothschild Family has both attained prominence in financial services and currently uses that name as part of a trademark in the United States.

The evidence outlined *supra*, pp. 6-8, as well as additional evidence to be developed in discovery and which will be presented at a hearing to supplement the showing herein, demonstrates that ROTHSCHILD has acquired great strength in connection with the field of financial services, and, more particularly, for broker-dealer and investment advisory services. The activities of plaintiffs have been widely reported nationally. Thus, plaintiffs' use of ROTHSCHILD, and the strong association between that mark and plaintiffs, would be known to the actual and potential customers of the Kaplan Defendants.

ii.    Similarity of the Marks

When evaluating the similarity of the marks, courts consider the overall impression created by a mark. Each mark must be compared against the other as a whole. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 58 U.S.P.Q.2d 1048, 1056 (S.D.N.Y. 2001), *aff'd*, 317 F.3d 209 (2d Cir. 2003). Further, "[w]here the two marks are nearly identical, the importance of the second *Polaroid* factor is great." *Id.*

The Infringing Marks LF ROTHSCHILD and L.F. ROTHSCHILD & COMPANY are virtually identical to plaintiffs' marks. The dominant feature or focal point of each of plaintiffs' trademarks is ROTHSCHILD. *See Gianni Versace, S.p.A. v. Versace*, No. 01 Civ. 9645 (PKL), 2003 U.S. Dist. LEXIS 14858, at *38 (S.D.N.Y. Aug. 27, 2003). Given the distinctiveness of ROTHSCHILD in financial services and the dominant position of ROTHSCHILD within the Infringing Marks, the Kaplan Defendants' use of the initials "L.F." do not serve to distinguish the Infringing Marks from plaintiffs' marks. *Id.* (use of "Alfredo" before "Versace" not distinguishing); *Gucci v. Gucci Shops,* 688 F. Supp. 916, 926 (S.D.N.Y. 1988) (use of "Paolo" before "Gucci" not distinguishing). In addition, the Kaplan Defendants' use of the generic term "& Company" after ROTHSCHILD is not a meaningful distinction to the public. *Morningside Group, Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 140 (2d Cir. 1999) ("LLC" not a

distinguishing feature); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §§ 23:42, 23:45 (4th ed. 1998).

A close similarity also exists between plaintiffs' graphic representation of ROTHSCHILD in a distinctive capital letter font, to the immediate left of which is the capital letter "R" in a different font encased in a square, and the Kaplan Defendants' graphic depiction of "LF Rothschild," on their Website, which depicts the name "ROTHSCHILD," in a capital letter font very similar to that used by the Rothschild Parties in their graphic ROTHSCHILD mark, and the letters "LF" in a different font in a square immediately to the left of the name "ROTHSCHILD." (Carroll Decl., Ex. 21). Given these strong resemblances, the similarity factor strongly weighs in favor of plaintiffs. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d at 218 (similarity found where the graphics of defendant's label were closely similar to elements of plaintiff's trademark).

### iii.    Proximity of the Services

This prong of the analysis asks to what extent the two products or services compete with each other. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). Here, the Rothschild Parties and the Kaplan Defendants both offer similar financial services. Kaplan & Co./LF Rothschild and plaintiff RAM are SEC-registered investment advisors that advise both institutional and individual clients; while Kaplan & Co./LF Rothschild and RINC are both SEC-registered broker-dealers that are members of the National Association of Securities Dealers. This satisfies the "similarity factor." *See Morningside Group, Ltd.,* 182 F.3d at 140 (financial services business provide similar services where they "'both seek out direct investment opportunities for themselves and others'"); *Citigroup Inc. v. City Holding Co.*, 171 F. Supp. 2d 333, 348 (S.D.N.Y. 2001) (plaintiff and defendant were both banks).

What the Second Circuit stated in *Morningside Group, Ltd.* is particularly relevant here: "the nature of the financial investment market renders the proximity of the two company's services particularly troubling in likelihood-of-confusion terms." 182 F.3d at 140. The business in which both plaintiffs and the Kaplan Defendants are engaged is "based on trust and personal relationships among individuals." *Id.* The Second Circuit recognized that "unfavorable publicity" attaching to the defendant's business activities would have "adverse consequences" for the plaintiff's business reputation. *Id.* This observation applies with particular force here: plaintiffs are likely to suffer damage to their reputation and business if investors discover that Kaplan is the principal of LF Rothschild, LF Rothschild is the old Kaplan & Co. renamed, or that both Kaplan and Kaplan & Co. are adjudicated violators of securities law and regulations who were censured and heavily fined by the SEC.

iv.    <u>Actual Consumer Confusion</u>

While plaintiffs do not currently have evidence of actual confusion, that does not weigh against a finding of likely confusion. The Kaplan Defendants have only been using the Infringing Marks for a few months. Thus, the absence of evidence of actual confusion does not weigh against a finding of likelihood of confusion. *Centaur Commc'ns, Ltd.*, 830 F.2d at 1227 ("The absence of such proof is not especially significant in the present case, particularly given the short time before trial – four months – in which the marks were 'competing.'").

v.    <u>Junior User's Bad Faith</u>

This element "looks to whether the defendant[s] adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991). Evidence of bad faith creates a presumption of likelihood of confusion, which then shifts the burden of proving the absence of confusion to the defendant. *Mobil Oil Corp. v. Pegasus*

*Petroleum Corp.*, 818 F.2d 254, 258-59 (2d Cir. 1987); *Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 140 (2d Cir. 1991) ("Once it is shown that a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public.").

The evidence that the Kaplan Defendants chose the Infringing Marks in bad faith and with intent to deceive is strong indeed. First and foremost, "L.F. Rothschild" is not the name of anyone connected with Kaplan's business.[2] Kaplan cannot credibly argue that the name is arbitrary or that he picked it randomly from a phone book.

Moreover, unauthorized use of somebody else's name in the trademark of a financial services business is *inherently* deceptive. Because investors put their own money at risk, the identity of their brokers and financial advisors is of great importance to them, and they view those relationships to be ones of personal trust. *Morningside Group, Ltd.*, 182 F.3d at 140. Investors assume that where a financial services business uses a personal name, someone by that name owns or controls (or at one time owned or controlled) the business. The use of the name is thus an important assurance of trustworthiness and a generator of customer interest. Kaplan certainly believes this: until he ran afoul of the law, he called his business "Kaplan & Co. Securities." Given his undoubted awareness of plaintiffs and the Rothschild Family, the following conclusion can be drawn from these facts: Kaplan adopted the L.F. Rothschild name and the Infringing Marks in anticipation that the actual and potential customers of his business would assume that the plaintiffs/Rothschild Family were connected to his business.

The Kaplan Defendants' bad faith is further confirmed by the fact that almost two years ago, in July 2005, plaintiffs, having been notified that Kaplan had applied to register L.F.

---

[2] In addition, Kaplan's NASD broker report, which shows his past employment history, does not indicate that he ever worked for the former L.F. Rothschild & Co., Inc. (Carroll Decl., Ex. 2).

ROTHSCHILD & COMPANY as a trademark, informed him of their trademark rights, and stated their objection to his use or registration of any mark containing ROTHSCHILD. (Carroll Decl., Ex. 22).[3] Kaplan's decision to not only persist in registration, but to begin using the mark, demonstrates an intention to deceive. *Stern's Miracle-Grow Prods., Inc. v. Shark Prods., Inc.,* 823 F. Supp. 1077, 1088 (S.D.N.Y. 1993); *Johnson & Johnson v. Quality Pure Mfg. Co.,* 484 F. Supp. 975, 979 (D.N.J. 1979) ("When a newcomer in the field adopts a trade dress confusingly similar to that of an established merchant, even innocently, or by chance, once the similarity is brought to his attention a failure or refusal to alter the trade dress to avoid the confusion is equivalent to an original and actual intention.").

Finally, as noted above and in the Carroll Declaration, the Court can properly determine that Kaplan had an intent and motive to deceive the public about who owns the former Kaplan & Co. Kaplan first sought registration of an Infringing Mark shortly after the SEC and Attorney General Spitzer found that Kaplan & Co. managers had participated in a criminal late trading/market timing scheme; he began using the Infringing Marks almost immediately after he and his company were found by the SEC to have abetted those violations of law and publicity was given to that SEC action. The Court can infer that Kaplan chose the Infringing Marks to disguise the real identity of his business from those who might have known or would find out about the SEC actions, as well as to replace the tarnished "Kaplan" mark with one that is synonymous with integrity in financial services.

---

[3] This notice was sent to Kaplan's home address by certified mail, return receipt requested. Kaplan apparently refused to claim it upon delivery or to accept it at his local post office. The delivery of the notice was nonetheless legally effective to place Kaplan on notice of plaintiffs' objections to his use of the Infringing Marks. *See, generally, Fuentes-Argueta v. Immigration & Naturalization Serv.,* 101 F.3d 867, 872 (2d Cir. 1996).

vi.    Quality of Defendant's Services

The next factor, the quality of the defendant's product, "'is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality.'" *Les Ballets Trockadero De Monte Carlo v. Trevino*, 945 F. Supp. 563, 572-73 (S.D.N.Y. 1996) (enjoining defendant's use of mark in connection with ballet troupe where defendant's ballet troupe of "inferior quality" due to less experience and rehearsal time). In the instant case, Kaplan & Co. and Kaplan committed serious SEC violations and were punished with sanctions, all of which were widely reported in the press. Plaintiffs, by contrast, have a high reputation and celebrated history within the financial services market. There is no doubt that the Kaplan Defendants' services and reputation are of "inferior quality" to that of the Rothschild Parties and that an association of the former with the latter would be injurious to the Rothschild Parties. *Morningside Group Ltd.*, 182 F.3d at 140.

vii.    Sophistication of the Buyers

Here, the Court evaluates "the general impression of the ordinary purchaser, buying under normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) (internal citation omitted). Although consumers of financial services may be more sophisticated than the average consumer, "[n]evertheless, the financial services industry is not immune from the Lanham Act because of the sophistication of its consumers." *Metlife, Inc., v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 235 (S.D.N.Y. 2005).

Sophistication does not necessarily eliminate confusion. The Lanham Act prohibits "initial interest confusion," in which a defendant gains a "foot in the door" it would not otherwise have had by using an infringing mark. In the leading case in this Circuit for initial interest confusion, *Mobil Oil Corp.*, 818 F.2d at 260, the base of potential customers (oil traders)

was deemed sophisticated. However, the defendant's use of a "Pegasus Petroleum" trademark, where Mobil had for many years used the image of a winged horse, was found actionable, since "potential purchasers would be misled into an initial interest in Pegasus Petroleum," even if they would find out that defendant was not connected with Mobil prior to culmination of a deal. *Id.*

The same is true here. By adopting the Infringing Marks that incorporate ROTHSCHILD, the Kaplan Defendants have acquired instant credibility and interest among even sophisticated investors that they never would have had by using of the name "Kaplan" (even if the latter name had not been irremediably tarnished). Whether or not these investors learn the truth about the Kaplan Defendants before they invest, the damage to plaintiffs' marks has already occurred. This initial interest confusion is unquestionably a deception covered by the Lanham Act.

viii.    Likelihood That Plaintiff Will Bridge
the Gap and Offer A Service Like Defendants'

This factor is irrelevant, since plaintiffs already provide broker-dealer and advisory services to individuals and institutions, just as the Kaplan Defendants do.

In summary, the plaintiffs' ROTHSCHILD marks are protectible, the *Polaroid* factors weigh heavily in support of a finding of likelihood of confusion, and likelihood of confusion is to be presumed here in view of the Kaplan Defendants' evident bad faith. The Court should therefore determine that the Rothschild Parties have shown both irreparable injury and a likelihood of success on the merits, and grant the requested preliminary injunction.

2.    **The Rothschild Parties Are Likely To Succeed On Their New York Common Law Unfair Competition, Trademark Infringement, And Trademark Dilution Claims.**

The Rothschild Parties are also likely to succeed on their New York common law unfair competition and trademark infringement claims.  Trademarks and trade names are "valuable business asset[s]" and property rights which, in New York, have had long-standing protection under the common law.  *See Jacob Siegel Co. v. Fed. Trade Comm'n*, 327 U.S. 608, 612 (1946); *Wyndham Co. v. Wyndham Hotel Co.*, 176 Misc. 2d 116, 127, 670 N.Y.S.2d 995, 1003 (Sup. Ct. N.Y. County 1997), *aff'd*, 261 A.D.2d 242, 691 N.Y.S.2d 34 (1st Dep't 1999).  The "essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of one person, a benefit or 'property' right belonging to another [person]."  *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448 (S.D.N.Y. 2005) (*quoting Volmar Distribs. v. New York Post Co.*, 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) and *Metro. Opera Ass'n v. Wagner-Nichols Recorder Co.*, 199 Misc. 786, 793, 101 N.Y.S.2d 483, 489 (Sup. Ct. N.Y. County 1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dep't 1951)) (internal quotations omitted).

The elements necessary to prevail on causes of action for unfair competition and trademark infringement under New York common law "mirror . . . Lanham Act claims." *Lorillard*, 378 F. Supp. 2d at 456 (citations and quotation omitted).  *See also Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon [both] the Lanham Act . . . and [the] common law [causes of action] is the showing of likelihood of confusion as to the source or sponsorship of defendant's products.").[4]

---

[4]  To the extent that a New York common law claim for unfair competition may require a showing of bad faith that the Lanham Act does not impose, *see Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980), there is more than ample evidence that the Kaplan Defendants have acted in bad faith.  *See supra*, pp. 12-14.

As set forth in detail above, the facts of this case suggest a strong likelihood of confusion between the marks at issue. Indeed, the facts of this case provide the highest level of likelihood of confusion, as closely similar trademarks are being used in connection with similar services (financial services). The Rothschild Parties are therefore likely to succeed on their state claims for trademark infringement and unfair competition.

New York General Business Law § 360-*l* requires the plaintiff to show initially that it owns "a strong mark – one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution." *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 633 (1977); *New York Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 557 (2d Cir. 2002). As shown above at pp. 9-10, plaintiffs have established that ROTHSCHILD and its family of ROTHSCHILD marks are strong marks. There is only one famous Rothschild Family, and only plaintiffs are well known in this country as the banking and finance businesses owned by that Family. Over time, the general public has come to associate financial services and banking businesses using those marks as originating with the plaintiffs, and no other source. Thus, ROTHSCHILD now "identifies the [services] sold by [plaintiffs] and distinguishes them from [services] sold by others." *Allied Maint. Corp.*, 42 N.Y.S. at 545, 399 N.Y.S.2d at 633.

The other requirements for likelihood of dilution are also satisfied here. Plaintiffs' marks and the Kaplan Defendants' Infringing Marks are, as shown above, substantially similar. *See Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026 (2d Cir. 1989). At this stage, plaintiffs must be able to show that they are likely to prove a likelihood of dilution caused by the Infringing Marks, either by blurring or tarnishment. *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996). "Blurring" refers to the situation where use of the plaintiff's mark on a plethora of different goods or services "rais[es] the possibility that the mark

will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994). "Tarnishment" occurs where a mark is "portrayed in an unwholesome or unsavory context," resulting in the "public . . . associat[ing] the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Id.* Tarnishment can occur where the mark is used in the context of "illegal activity. . . [but] is not limited to seamy conduct." *Hormel Foods Corp.*, 73 F.3d at 507.

The facts show that continued use of the Infringing Marks is likely to lead to both blurring and tarnishment. If the Kaplan Defendants – and by extension others who would like to profit from the favorable associations of a ROTHSCHILD mark – are permitted to do so, that mark would unquestionably lose its ability to uniquely identify products and services coming from the plaintiffs. The tarnishment that would come from allowing the Kaplan Defendants, whom the SEC has recently found to have engaged in illegal activity, to use a ROTHSCHILD-inclusive mark, is self-evident. *See* discussion *supra*, Section I(B)(1)(b)(vi), p. 15.

Plaintiffs are therefore entitled to a preliminary injunction under New York state law, as well as federal law.

### C.    The Balance Of Hardships Weighs Decidedly In Favor Of Plaintiffs.

The final prong of the preliminary injunction analysis considers whether the irreparable harm plaintiffs would suffer absent the injunction outweighs the harm defendants could suffer as a result of the injunction. Here, the balance strongly favors the plaintiffs. They have been using their marks for many years and the injury suffered to their good name and reputation were the Kaplan Defendants permitted to continue operations as "LF Rothschild" would be substantial and inevitable. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). They acted promptly as soon as they learned that the Kaplan Defendants were actually using the Infringing Marks. In contrast, the Defendants have only been using the Infringing Marks for a few months,

which suggests that the hardship from an injunction will be minor. *Blue Bell, Inc. v. Maverick Sportswear, Inc.*, No. 74 Civ. 1093, 1974 U.S. Dist. LEXIS 7797, at *8 (S.D.N.Y. July 1, 1974) (preliminary injunction against use of plaintiff's "Maverick" mark in defendant's tradename where defendant had only been incorporated and using the name for ten months). Any hardship to the Kaplan Defendants is ultimately their own fault: if they wanted to disguise the identity of the former Kaplan & Co. without attracting a lawsuit and injunction, they had only to search for a new, non-infringing tradename.

## II

## THE COURT SHOULD ORDER EXPEDITED DISCOVERY

To allow the Court to promptly decide whether to order preliminary relief, plaintiffs also seek an order granting leave to take expedited discovery. Such discovery is needed to fill in a few gaps in the factual record, primarily dealing with the range of uses of the Infringing Marks by the Kaplan Defendants in advertising, promotion, and otherwise, the Kaplan Defendants' decision to choose and use the Infringing Marks, evidence of actual confusion, and information concerning the client bases of the Kaplan Defendants. Unless unexpected issues arise, plaintiffs intend to limit their discovery to depositions of Kaplan and a few senior executives of LF Rothschild, and the production of documents by these defendants.

The Federal Rules of Civil Procedure give this Court broad powers to permit expedited discovery and hearings where a preliminary injunction is sought. 28 U.S.C. § 1657(a) provides that "the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief." In addition, Rule 26(d) of the Federal Rules of Civil Procedure authorizes the Court to allow discovery on an expedited basis. *See* Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note (order providing for expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction").

Historically, the courts of this Circuit reviewed applications for expedited discovery by applying a four-factor test.[5] Recent cases suggest that this rule is too rigid and that expedited discovery is instead to be granted in the sound discretion of the trial court where the movant demonstrates good cause for the discovery. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (granting expedited discovery); *Standard Inv., Inc. v. NASD*, No. 07 Civ. 2014 (SWK), 2007 U.S. Dist. LEXIS 27342, at *15 (S.D.N.Y. Apr. 11, 2007).

In the present case, there is certainly good cause for granting expedited discovery. Hearing plaintiffs' case at the earliest possible date, consistent with development of a full factual record, will minimize the irreparable harm that plaintiffs are currently suffering from the Kaplan Defendants' infringements.

Accordingly, plaintiffs respectfully request that the Court issue an order authorizing expedited discovery in this case, pursuant to Fed. R. Civ. P. 26(d), allowing any party to conduct discovery starting one week after the Court grants the order, and permitting any party to demand production of documents upon not less than seven days notice and to take depositions upon not less than seven days notice. Plaintiffs also respectfully request that the Court set the motion for preliminary injunction for a hearing within two months of the date of its decision on plaintiffs' motion for expedited discovery.

---

[5] Even if the Court were to apply the more stringent four-factor test, plaintiffs would still be entitled to expedited discovery. Under that test, the court looked at the following four factors: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without the expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Don King Prods., Inc. v. Hopkins*, No. 04 Civ. 9705 (PKL), 2004 U.S. Dist. LEXIS 25917, at *5-6 (S.D.N.Y. Dec. 23, 2004) (quoting *Gidatex, S.R.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998)). Plaintiffs have shown above that they meet the first two factors for expedited discovery. In addition, there is a clear connection between the expedited discovery plaintiffs seek and avoidance of irreparable injury: expedited discovery will allow plaintiffs' preliminary injunction motion to be heard at an earlier date and on a fuller record. Without the ability to take prompt discovery and obtain a prompt injunction, Kaplan Defendants' continued use of the Infringing Marks will also continue to cause irreparable injury to the reputation and goodwill attaching to plaintiffs' marks.

## CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction enjoining the Kaplan Defendants, pending trial, from using the Infringing Marks in any manner, and grant an order directing expedited discovery as requested by plaintiffs.

Dated:   New York, New York
         July 11, 2007

                                   Respectfully submitted,

                                   DLA PIPER US LLP

                                   By: _____
                                       Andrew L. Deutsch (AD 5782)
                                       Monica Petraglia McCabe (MM 5853)
                                       Christine M. Jaskiewicz (CJ 1477)
                                   1251 Avenue of the Americas, 38th Floor
                                   New York, New York 10020
                                   Telephone: (212) 335-4500
                                   Telecopier: (212) 335-4501
                                       Attorneys for Plaintiffs,
                                       ROTHSCHILDS CONTINUATION
                                       HOLDINGS AG, ROTHSCHILD NORTH
                                       AMERICA INC., ROTHSCHILD INC., and
                                       ROTHSCHILD ASSET MANAGEMENT INC.